FILED

2014 JAN -8 PM 2:56

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

1  WRIGHT, FINLAY & ZAK, LLP
2  T. Robert Finlay, Esq., SBN 167280
   Nicole S. Dunn, Esq., SBN 213550
3  4665 MacArthur Court, Suite 280
4  Newport Beach, CA 92660
   Tel: (949) 477-5050; Fax: (949) 477-9200
5  rfinlay@wrightlegal.net; ndunn@wrightlegal.net
6
7  Attorneys for Defendants, Specialized Loan Servicing LLC and U.S. Bank
   National Association, as Trustee Relating To Chevy Chase Funding, LLC
8  Mortgage Backed Certificates Series 2007-2
9
           UNITED STATES DISTRICT COURT
10
        FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
12  GARY KOLLER, an individual, and        ) Case No.:SACV14-00031 JVS (JPRx)
13  CYNTHIA KOLLER, an individual,         )
                                           )
14                                         ) NOTICE   OF   REMOVAL   OF
                     Plaintiffs,           ) ACTION PURSUANT TO 28
15                                         ) U.S.C. §1441(b)
16         vs.                             )
                                           ) [DIVERSITY OF CITIZENSHIP]
17  SPECIALIZED LOAN SERVICING, LLC)
18  a Delaware Limited Liability Company;  )
    B.F. SAUL MORTGAGE COMPANY, a )
19  Maryland Limited Liability Company;    )
20  U.S. BANK NATIONAL                     )
    ASSOCIATION, as Trustee RELATING       )
21  TO CHEVY CHASE FUNDING, LLC            )
22  MORTGAGE BACKED CERTIFICATES )
    SERIES 2007-2; LAW OFFICES OF LES )
23  ZIEVE; and all persons or entities     )
    unknown claiming any legal or equitable )
24  right, title, estate, lien or interest in the )
25  property described in this complaint    )
    adverse to Plaintiff's title thereto, and )
26  DOES 1 through 25, inclusive,          )
27                                         )
                                           )
28                   Defendants            )

-1-

NOTICE OF REMOVAL OF ACTION

1        **TO THE CLERK OF THE UNITED STATES DISTRICT COURT**

2  **FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

3        **PLEASE TAKE NOTICE** that Defendants SPECIALIZED LOAN

4  SERVICING LLC ("SLS") and U.S. BANK NATIONAL ASSOCIATION, as

5  Trustee RELATING TO CHEVY CHASE FUNDING, LLC MORTGAGE

6  BACKED CERTIFICATES SERIES 2007-2 ("U.S. Bank") (collectively referred

7  to herein as "Defendants") hereby remove to this Court, the state court action

8  described below:

9        1.    On November 7, 2013, Plaintiffs GARY KOLLER, an individual,

10  and CYNTHIA KOLLER, an individual ("Plaintiffs") filed a Summons and

11  Complaint in the Superior Court of the State of California, for the County of

12  Orange (the "State Court"), entitled: *Gary Koller, et al. v. Specialized Loan*

13  *Servicing LLC,* Case No. 30-2013-00686182-CU-CO-CJC (the "State Court

14  Action"). A true and correct copy of the documents filed in the State Court to

15  date are attached hereto as **Exhibit "1."**

16        2.    Plaintiffs' Complaint is the first pleading in the State Court Action

17  and was purportedly served on December 12, 2013. Upon information and belief,

18  Plaintiffs have not yet filed a Proof of Service with the Superior Court of

19  California, County of Orange in the State Court Action. Thus, Defendants are

20  unaware of the actual service date or whether service was proper. However,

21  Defendants acknowledge receipt of the Complaint on December 17, 2013. A true

22  and correct copy of the State Court Action Court Docket is attached hereto as

23  **Exhibit "2."** Accordingly, the removal of this action is timely as it occurred within

24  one year of the date of filing of the Complaint and within thirty days of receipt of

25  the Complaint. 28 *U.S.C.,* §1446(b); *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th

26  Cir., 2011) [holding that each defendant is entitled to thirty days to exercise his

27  removal rights after being served]. Therefore, Defendants timely file this Notice of

28  Removal. *See* 28 U.S.C. §1446(b).

**NOTICE OF REMOVAL OF ACTION**

1    3.    Upon information and belief, a Declaration of Non-Monetary Status
2  ("DNMS") by defendant LAW OFFICES OF LES ZIEVE was filed on December
3  23, 2013, in the Superior Court of California, County of Orange. A true and correct
4  copy of the DNMS is attached hereto as **Exhibit "3."**

5                    <u>**REMOVAL BASED ON DIVERSITY**</u>

6    4.    The State Court Action may be removed to the instant Court in
7  accordance with 28 U.S.C. §1441(b) since this Court has original jurisdiction,
8  pursuant to 12 U.S.C. §1332, on the basis of diversity jurisdiction. Specifically,
9  the State Court Action is a civil action between citizens of different states and the
10  amount in controversy exceeds the sum of $75,000.00.

11    **AMOUNT IN CONTROVERSY.** In the context of removal of an action
12  based on diversity jurisdiction, the removing defendant must show, by a
13  *preponderance of the evidence*, that the amount in controversy exceeds the
14  statutory minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th
15  Cir. 1996). In other words, "the defendant must provide evidence establishing that
16  it is 'more likely than not' that the amount in controversy exceeds that amount."
17  *Id.*, accord *Saulic v. Symantec Corp.*, 2007 WL 5074883 at * 2 (C.D.Cal., Dec. 26,
18  2007).

19    5.    Here, although Plaintiffs do not allege a specific amount of damages,
20  the Loan which is the subject of this litigation is in the amount of $1,350,000.00.
21  A true and correct copy of the Deed of Trust and Promissory Note which are
22  attached as Exhibit B to the Complaint and attached hereto as **Exhibit "1."**

23    6.    "In actions seeking declaratory or injunctive relief, it is well-
24  established that the amount in controversy is measured by the value of the object
25  of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347
26  (1977); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Here, Plaintiffs
27  are seeking to enjoin the trustee's sale, and have therefore placed the entire
28  amount of the Loan at issue. In addition, the total amount of the unpaid balance of

NOTICE OF REMOVAL OF ACTION

1  the obligation secured by the property to be sold plus reasonable estimated costs,

2  expenses and advances is approximately $1,172,345.72. A true and correct copy

3  of the Notice of Trustee's Sale is attached as Exhibit F to the Complaint, a copy of

4  which is attached hereto as **Exhibit "1."** Plaintiff also seeks to enjoin Defendants'

5  ability to sell or transfer the Property which effectively eliminates Defendants'

6  ability to exploit its interest in the Property. [See, Exhibit "1", ¶¶156-159, 166-

7  167, 172].   Thus, the amount in controversy far exceeds $75,000.00.

8      7.   **DIVERSITY OF CITIZENSHIP.** In order to obtain diversity

9  jurisdiction, Plaintiffs' citizenships must be completely diverse from all the

10  defendants' citizenships. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

11      A.   *Plaintiffs' citizenship.*

12      A natural person's citizenship is determined by his or her naturalization to

13  the United States and domicile state at the time of filing (which is the state he or

14  she resides in with the intention to remain or to which he or she intends to return).

15  *Kanter v. Warner–Lambert Co.*, 265 F3d 853, 857 (9th Cir. 2001).  In the present

16  matter, Plaintiffs are U.S. Citizens domiciled and residing in **California** with the

17  intention to remain at the time of filing. [Exhibit "1", ¶3 (Plaintiffs were

18  "residents of the State of California" and "were the owners of their primary

19  residence commonly known as 3811 River Ave., Newport Beach, CA 92663")].

20  Therefore, Plaintiffs are deemed citizens of the State of **California** for the

21  purposes of diversity citizenship jurisdiction

22      B.   *The named Defendants' citizenship.*

23      i.   **Specialized Loan Servicing LLC**

24      SLS is a Delaware limited liability company, headquartered in Highlands

25  Ranch, Colorado.  However, a limited liability company "is a citizen of every state

26  of which its owners/members are citizens." *Johnson v. Columbia Props.*

27  *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  SLS is wholly-owned by

28  Specialized Loan Servicing Holdings LLC, a company who itself is a wholly

NOTICE OF REMOVAL OF ACTION

owned subsidiary of Computershare Limited.  Computershare Limited is an Australia-based company with its principal place of business in Australia and its shares are publicly traded on the Australian Securities Exchange.  A "…corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  To that end, Computershare Ltd. was not incorporated in California and its principal place of business is not located in California. Accordingly, as it pertains to this action, SLS is only deemed a citizen of **Delaware** and **Colorado.**

        **ii.**    **US Bank National Association, As Trustee Relating To Chevy Chase Funding, LLC Mortgage Backed Certificates Series 2007-2 ("U.S. Bank")**

      U.S. Bank is a national banking association. Complaint para. 7. It is chartered by the Office of the Comptroller of the Currency, pursuant to the National Bank Act, 12 *U.S.C.* section 38 et. seq. U.S. Bank's headquarters are located in Cincinnati, Ohio.  Accordingly, U.S. Bank is a citizen of **Ohio** and is diverse from Plaintiffs. 28 U.S.C. §1348; *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312 (S.D.N.Y. 2006); *MBIA Ins. Corp. v. Royal Indem. Co.*, 294 F.Supp.2d 606 (D.Del. 2003).

        **iii.**    **Law Offices Of Les Zieve**

      LAW OFFICES OF LES ZIEVE ("ZIEVE") although a non-diverse party, is merely the foreclosure trustee. ZIEVE's citizenship is irrelevant to the diversity inquiry because it filed a declaration of non-monetary status pursuant to *California Civil Code* §2924l in the State Court Action on December 23, 2013. See, **Exhibit "3."**  No objections to ZIEVE's declaration of non-monetary status have been filed. As such, under the *Civil Code* §2924l(d), ZIEVE has transformed itself into a non-party to this action. *California Civil Code* section 2924l(d). It can no longer be held liable and need not participate in this action in any way. *Id.*

-5-

NOTICE OF REMOVAL OF ACTION

Federal courts have acknowledged that a party that invokes non-monetary status under *Civil Code* §2924l need not consent to removal and is not to be treated as a defendant to the action, thus, its *"citizenship is disregarded for purposes of assessing diversity jurisdiction."* *Cabriales v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 24726, at *6-7 (N.D. Cal. Mar. 2, 2010); *See also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[a] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"); *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556, pp. 710-711 (1971); *See also Amaro v. Option One Mortgage Corp.*, No. EDCV 08-1498-VAP (AJWx), 2009 U.S. Dist. LEXIS 2855, at *3 (C.D. Cal. Jan. 14, 2009) (party that declared non-monetary status did not need to consent to removal of the case to federal court).

### iv.  B.F. SAUL MORTGAGE COMPANY

Contrary to the allegation made in the Complaint at paragraph 5, Defendant, B.F. Saul Mortgage Company ("B.F. Saul") is a corporation organized under the laws of the State of Maryland and is headquartered in Bethesda, MD. A true and correct copy of the Maryland State Department of Assessments and Taxation, Department of Corporations webpage is attached hereto as **Exhibit "4."** As such, B.F. Saul is a citizen of **Maryland** for purposes of diversity of citizenship jurisdiction.

### v.  All persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto("All Persons")

There is no proof of service on the State Court Action docket showing service upon "All Persons." See, **Exhibit "2."** Thus, they are not required to join in or consent to this removal.

### vi.  DOES' 1 through 25's Citizenship

Upon information and belief, DOES 1 through 25 have not been named or served, and thus their consent is not required. *Emrich v. Touche Ross & Co.*, 846

F.2d 1190, 1193 n.1 (9th Cir. 1988) (the requirement for consent applies "only to defendants properly joined and served in the action."); *Salverson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1428 (9th Cir. 1984).

Because no defendant has the same citizenship as Plaintiffs, complete diversity of citizenship exists.

**WHEREFORE**, the State Court Action is removed from said state court to this Court, and removing Defendants pray that this Court proceed in this action pursuant to 28 U.S.C. §1441 and other relevant and applicable law, as if this action had been originally filed in this Court, and that further proceedings in the state court action be stayed in all respects.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: January ___, 2014        By: _____

T. Robert Finlay, Esq.,
Nicole S. Dunn, Esq.,
Attorneys for Defendants, SPECIALIZED
LOAN SERVICING LLC and U.S. BANK
NATIONAL ASSOCIATION, as Trustee
RELATING TO CHEVY CHASE
FUNDING, LLC MORTGAGE BACKED
CERTIFICATES SERIES 2007-2

-7-

EXHIBIT "1"

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SPECIALIZED LOAN SERVICING, LLC, a Delaware Limited Liability Company.; (Additional Party Summons Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

GARY KOLLER, an individual, and CYNTHIA KOLLER, an individual,

| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|
| **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**11/07/2013** at 09:27:17 AM<br>Clerk of the Superior Court<br>By Jaime Cordero,Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court | CASE NUMBER<br>30-2013-00686182-CU-CO-CJC |
|---|---|

Central Justice Center
700 Civic Center Drive West, Santa Ana, CA 92701                          Judge William M. Monroe

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
September J. Katje 100 N. Citrus Street Suite 408, West Covina, CA 91730  (800) 787-5616

| DATE: November 7 ,2013 | Alan Carlson | Clerk, by | *Jaime Cordero* | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*           Jaime Cordero
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* SPECIALIZED LOAN SERVICING , LLC

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Koller v. Specialized Loan Servicing, LLC, et al | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

B.F. SAUL MORTGAGE COMPANY, a Maryland Limited Liability Company; U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2; LAW OFFICES OF LES ZIEVE; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto, and DOES 1 through 25, inclusive,

Page  2  of  2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1   **CONSUMER LITIGATION LAW CENTER, APC**
    September J. Katje, Esq., State Bar No. 227896
2   100 North Citrus Ave., Suite 408
    West Covina, California 91791
3   (800) 787-5616.  Fax: (888) 909-7947
    Email: sk@consumerlitigationlawcenter.com
4
5   Attorney for Plaintiffs, GARY KOLLER and CYNTHIA KOLLER
6
7
8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9           **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**
10

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**11/07/2013** at 09:27:17 AM
Clerk of the Superior Court
By Jaime Cordero, Deputy Clerk

| | |
|---|---|
| 11  GARY KOLLER, an individual, and <br> 12  CYNTHIA KOLLER, an individual, <br><br> 13              Plaintiffs, <br><br> 14          v. <br><br> 15  SPECIALIZED LOAN SERVICING, LLC, a <br> 16  Delaware Limited Liability Company ;B.F. <br>      SAUL MORTGAGE COMPANY, a <br> 17  Maryland Limited Liability Company; U.S. <br> 18  BANK NATIONAL ASSOCIATION AS <br>      TRUSTEE RELATING TO CHEVY CHASE <br> 19  FUNDING LLC MORTGAGE BACKED <br>      CERTIFICATES SERIES 2007-2; LAW <br> 20  OFFICES OF LES ZIEVE; and all persons or <br> 21  entities unknown claiming any legal or <br>      equitable right, title, estate, lien or interest in <br> 22  the property described in this complaint <br>      adverse to Plaintiff's title thereto, and DOES <br> 23  1 through 25, inclusive, <br><br> 24 <br> 25              Defendants. <br> 26 <br> 27 <br> 28 | Case No.:  30-2013-00686182-CU-CO-CJC <br>                          Judge William M. Monroe <br> **Verified Complaint For:** <br><br> 1.  **Fraud in Loan Origination** <br> 2.  **Fraud in Loan Servicing** <br> 3.  **Violation of California Bus. &** <br>     **Prof. Code §§ 17200 et seq. in** <br>     **Loan Origination** <br> 4.  **Violation of Homeowners' Bill of** <br>     **Rights (Cal. *Civ. Code* § 2923.6)** <br> 5.  **Wrongful Foreclosure** <br> 6.  **Negligence in Loan Origination** <br> 7.  **Negligence in Loan Servicing** <br> 8.  **Unjust Enrichment** <br> 9.  **Intentional Interference with** <br>     **Prospective Economic** <br>     **Advantage** <br> 10. **Negligent Interference with** <br>     **Prospective Economic** <br>     **Advantage** <br> 11. **Reformation of a Fraudulent** <br>     **Contract and Restitution** <br> 12. **Quiet Title** <br> 13. **Declaratory Relief** <br><br> **And Demand For Jury Trial** <br> **Unlimited Jurisdiction** |

i

**VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6***

CONSUMER LITIGATION LAW CENTER, APC

1  NOW COMES the Plaintiffs, GARY KOLLER and CYNTHIA KOLLER ("Plaintiffs"),
2  complaining of the Defendants, and each of them, the following:

**I.**

**INTRODUCTION**

5  1.    This is an action filed for misconduct related to Plaintiffs' negative amortization,
6  adjustable rate mortgage ("ARM") loan that occurred in three distinct phases: (1) the loan
7  origination, (2) the loan servicing, and (3) the instituting of wrongful foreclosure proceedings.

8  2.    As described in the allegations below, Defendants' misconduct resulted in the
9  use of false and deceptive information, the issuance of an improper mortgage, premature and
10  unauthorized foreclosure proceedings, and the violation of Plaintiffs' rights and protections as
11  homeowners.   Each of the allegations regarding Defendants contained herein applies to
12  instances in which one or more, and in some cases all, of the Defendants engaged in the conduct
13  alleged.

**II.**

**THE PARTIES**

16  3.  Plaintiffs GARY KOLLER and CYNTHIA KOLLER are, and at all times herein
17  mentioned were, residents of the State of California, County of Orange.  Plaintiffs, at all times
18  relevant to this Complaint, were the owners of their primary residence commonly known as
19  3811 River Avenue, Newport Beach, California 92663[1] ("Subject Property").

20  4.    Defendant SPECIALIZED LOAN SERVICING, LLC ("SLS"), was and is a
21  Delaware Limited Liability Company, doing business in the State of California as a residential
22  lender and servicer.   SLS is the current servicer of Plaintiffs' loan.   Capital One, N.A.
23  transferred servicing rights to Plaintiffs' loan to SLS on or about February 24, 2010.  A true and
24  correct copy of the Servicing Transfer Statement is attached hereto as Exhibit "A".

[1] Legal Description: Lot 8 in Block 138 of River Section, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 4, Page(s) 25 of Miscellaneous Maps, in the officer of the County Recorder of said County.
APN: 423-308-01

2

**VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6***

5.  Defendant B.F. SAUL MORTGAGE COMPANY ("B.F. Saul") was and is a Maryland Limited Liability Company, doing business in the State of California as a residential lender and servicer, and is the named lender under the Deed of Trust listing Plaintiffs as borrowers and recorded on May 4, 2007 ("Deed of Trust"). A true and correct copy of the Deed of Trust, Adjustable Rate Note and Adjustable Rate Rider are attached hereto as Exhibit "B".

6.  LAW OFFICES OF LES ZIEVE ("Zieve") is law firm doing business in the State of California, and is the current named trustee of record under the Notice of Substitution of Trustee substituting Zieve for the prior trustee, Chevy Chase Bank, F.S.B., and dated September 22, 2012 ("Substitution of Trustee"). A true and correct copy of the Substitution of Trustee is attached hereto as Exhibit "C".

7.  Defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2 ("U.S. Bank"), was and is a National Association and the current named beneficiary under the Deed of Trust. An Assignment of Deed of Trust recorded on June 1, 2011 ("Assignment"), granted, assigned, and transferred from Mortgage Electronic Registration Systems, Inc., as nominee for B.F. Saul, its successors and assigns to U.S. Bank all beneficial interest under the Deed of Trust that is the subject of this action. A true and correct copy of the Assignment is attached hereto as Exhibit "D".

8.  Plaintiffs are informed, believe, and thereon allege that at all times material hereto, all Defendants operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiff, from the California public and from regulators, either directly or as successors-in-interest or affiliates of other Defendants. The concealment was completed, ratified and/or confirmed by each Defendant herein, directly or as successor, agent, assignee or affiliate to another Defendant. Each Defendant was a perpetrator of the tortious acts set forth herein for its own monetary gain and as a part of a common plan developed and carried out with the other Defendants, or was a successor-in-interest to a Defendant that did the foregoing.

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

9.     The Defendants that knowingly participated in the scheme are jointly and severally liable for their acts in devising, directing, knowingly benefitting from and ratifying the wrongful acts of the knowing participants.

10.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25 inclusive ("Does") and, therefore, sue these Defendants by such fictitious names. Plaintiffs will amend their Complaint to allege these Defendants true names and capacities when ascertained. Plaintiffs are informed, believe, and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the injuries to Plaintiffs alleged herein and that such injuries were proximately caused by such Defendants.

### III.

### CALIFORNIA SUCCESSOR LIABILITY LAW

11.     "'Successor in interest' is defined as: 'One who follows another in ownership or control of property. In order to be a 'successor in interest,' a party must continue to retain the *same rights* as original owner… and there must be **change in form only and not in substance** . . .'" *Perez v. 222 Sutter St. Partners* (1990) 222 Cal.App.3d 938, 948, fn. 8 (quoting Black's Law Dict. (5th ed. 1979) p. 1283, col. 2 (emphasis added).) Successor liability is "'extremely fact sensitive.'" *Fisher v. Allis-Chalmers Corp. Product Liability Trust* (2002) 95 Cal.App.4th 1182, 1188 (quoting William P. O'Neill, Advanced Issues in Strategic Alliances (July 2000) 1193 PLI/Corp 351, 391). It does not lend itself well to a determination without a trial, or an evidentiary hearing at the very least. *Sunnyside Development Co., LLC v. Opsys Ltd.* (N.D.Cal. Aug. 29, 2007, No. C 05 0553 MHP) 2007 WL 2462142 at *6.

12.     Under California law, successor liability may be imposed on a corporation for the debts and liabilities of its predecessor in any of the following circumstances: (1) the transaction amounts to a consolidation or merger of the two corporations, (2) the purchasing corporation is merely a continuation of the selling corporation, or (3) the transaction is entered into fraudulently to escape liability for debts. *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28.

/ / /

4

13.   It is well settled law that a corporation that purchases the assets of another assumes the first corporation's liabilities when the transfer of assets to the purchaser is for the fraudulent purpose of escaping the sellers' liabilities. See, e.g., *Ray v. Alad Corp.*, *supra* 19 Cal.3d 22; *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 461. Accordingly, the Uniform Fraudulent Transfer Act obviates any shield to liability from a transfer of assets when "the transfer made or obligation incurred" was made "(w)ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." Cal. *Civ. Code* § 3429.04(a)(2).

14.   Additionally, a defendant is liable for the fraud of a predecessor when information or documents from the transaction, available to the successor at the time of purchase, suggests that fraud has occurred. See, e.g. *Maberry v. Said*, 911 F. Supp. 1393, 1399-1401 (D. Kan. 1995), later opinion, 927 F. Supp. 1456 (D. Kan. 1996) (lender held liable for fraud where it ratified the fraud and accepted the benefits therefrom). Lack of knowledge suggestive of fraud is also not a defense to successor liability where the defendant had limited information as to any fraud, but "failed to inquire further because he was afraid of what the inquiry would yield . . . [because] [w]illful blindness is knowledge enough." *Louis Vuitton S.A. v. Lee* (7th Cir. 1989) 875 F.2d 584, 590; *United States v. Campbell* (4th Cir. 1992) 977 F.2d 854, 857.

15.   Plaintiffs allege that Defendants transferred the note, deed of trust, and all riders, exhibits, and attachments thereto that are the subject of this lawsuit with the fraudulent intent of escaping the rampant liability tethered to the fraudulent inducement in origination of the subject home mortgage loan.

16.   Further, "(t)he surviving corporation under a statutory merger is responsible for the liabilities of the merged corporation under both common law and statute." *Petrini v. Mohasco Corp.* (1998) 61 Cal.App.4th 1091, 1098. This is true regardless of whether the liabilities were known at the time of the merger. *Id.*

17.   In short, the controlling point is that successor liability, like alter ego and similar principles, is an equitable doctrine. As with other equitable doctrines, "it is appropriate to examine successor liability issues on their own unique facts . . . [and] [c]onsiderations of

CONSUMER LITIGATION LAW CENTER, APC

1  fairness and equity apply." *CenterPoint Energy, Inc. v. Superior Court* (2007) 157

2  Cal.App.4th; *c.f.*, *Rego v. ARC Water Treatment Co.* (3d Cir. 1999) 181 F.3d 396 ("we

3  emphasize that each successor liability case must be determined on its own facts.").

4      18.   Defendants servicer SLS, beneficiary U.S. Bank, and trustee Zieve, are the

5  successors in interest to servicer Capital One, N.A., trustee Chevy Chase Bank, F.S.B., and lender

6  B.F. Saul, and, therefore, incur all such liability for their predecessors as to the allegations in this

7  Complaint.

8                                    IV.

9                    JURISDICTION AND VENUE

10      19.   This Court has personal jurisdiction over this matter pursuant to the California

11  Constitution, Article XI, Section 10 and California *Code of Civil Procedure* section 410.10

12  because Defendants transacted business in this District and committed the acts complained of

13  herein in California.

14      20.   Venue is proper in this District pursuant to California *Code of Civil Procedure*

15  section 395.5 because Defendants entered into the underlying contract with Plaintiff in the

16  above-referenced jurisdiction and the payment obligations are to be performed in the above-

17  referenced District.

18                                    V.

19                    FACTUAL ALLEGATIONS

20      21.   In or around April 2007, Plaintiffs spoke with a representative of Defendants'

21  agent, Windsor Capital Mortgage Corp. ("Agent"), to inquire about refinancing their previous

22  adjustable interest rate home mortgage loan to a new, fixed interest rate loan.

23      22.   Agent asked Plaintiffs their income and, without any further documentation to

24  verify income, informed Plaintiffs that they qualified for a $1,350,000 loan with a fixed interest

25  only payment for the first five years but did not explain any other information about the loan to

26  Plaintiffs.

27      23.   Agent qualified Plaintiffs for the above-referenced loan by falsely inflating

28  Plaintiffs' monthly income from approximately $14-$15,000 per month to $30,000 per month.

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

24.   Agent also assured Plaintiffs that they could refinance the loan later, as they had done with their previous loan.

25.   Based on Agent's assurances and representations, Plaintiffs signed a Deed of Trust dated April 19, 2007 and Adjustable Rate Rider with a five-year payment option tied to the Monthly LIBOR Index (collectively "Loan Agreement") that was recorded on May 4, 2007.

26.   Agent failed to disclose, and Plaintiffs were not aware at time of signing, that Plaintiffs' monthly payments under Loan Agreement were not enough to even cover an interest only payment and, instead, negative amortization would accrue and the principal balance under the Loan Agreement would grow as long as Plaintiffs paid the stated monthly payment for the first five years of the loan.

27.   Agent also failed to disclose that, though Plaintiffs' monthly payment was fixed for five years, the interest rate was not fixed and could adjust monthly starting from the date the first payment was due under the Loan Agreement.

28.   At the time of signing, and based on Agent's representations, Plaintiffs believed that they were making interest only payments under the Loan Agreement for the first five years and were not aware that the required monthly payments were actually far less than interest only payments would be for the first five years.

29.   Agent failed to disclose, and Plaintiffs were not aware at the time of signing, that the initial interest rate would change on June 1, 2007 and Plaintiffs' first payment was also due on June 1, 2007.

30.   Agent failed to disclose, and Plaintiffs were not aware at time of signing, that the Loan Agreement's interest rate was not actually fixed for the first five years of the loan term and that, in fact, only the monthly payment was fixed for five years, until June 1, 2012—and negative amortization was accruing the entire time.

31.   Agent failed to disclose, and Plaintiffs were not aware at time of signing that their $5,091.73 monthly payments for the first five years until June 1, 2012 were actually thousands of dollars less per month than an interest only payment would be—thus, Plaintiffs' principal balance was growing the entire time and the monthly payments would likely—and in

CONSUMER LITIGATION LAW CENTER, APC

7

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

1  fact did—adjust upwards in the first five years because the principal balance could only grow to
2  115% of the original principal loan balance.

3      32.    Finally, Agent also failed to explain Plaintiffs that the loan included a pre-
4  payment penalty.

5      33.    In early 2011, the purportedly fixed monthly payments under the Loan
6  Agreement adjusted upwards sharply because negative amortization had caused the principal
7  balance to reach the 115% maximum cap.

8      34.    Once the monthly payments Plaintiffs were previously informed and believed
9  would be fixed for at least the first five years instead jumped up, Plaintiffs became concerned
10  and contacted SLS to discuss loan modification options.

11      35.    SLS informed Plaintiffs that they had to stop making their monthly payment and
12  default on the Loan Agreement in order for Defendants to consider Plaintiffs for a loan
13  modification.

14      36.    Acting on SLS's instructions, assurances, and representations, Plaintiffs stopped
15  making monthly payments under the Loan Agreement in or around February 2011 and fell into
16  default so that SLS would consider Plaintiffs for a loan modification.

17      37.    On April 12, 2011, Defendants, through their co-defendant Zieve, caused a
18  Notice of Default and Election to Sell Under Deed of Trust ("NOD") to be recorded on the
19  Subject Property after Plaintiffs—on Defendant's instruction—fell behind on their payments
20  under the Loan Agreement.   A true and correct copy of the NOD is attached hereto as Exhibit
21  "E".

22      38.    Plaintiffs are informed, believe, and thereon allege that Defendants did not post a
23  copy of the NOD at the Subject Property but only provided a copy of the NOD by regular mail.

24      39.    Plaintiffs received a modification in or around May 2011 with an adjustable
25  interest rate of 2% for the first two years, 3% in the third year, and 3.75% thereafter and that
26  deferred—but did not reduce—the principal balance then due.

27      40.    Plaintiffs made their modified loan payments from May 2011 through May 2012
28  and applied for a second modification in June 2012.

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

41.   Plaintiffs defaulted on the first modification in December 2012.

42.   Defendants, through their trustee co-defendant Zieve, caused a Notice of Trustee's Sale to be recorded on December 14, 2012 ("NTS").  A true and correct copy of the NTS is attached hereto as Exhibit "F".

43.   During the application process for Plaintiffs' second modification, SLS repeatedly asked for copies of the same documents over and over, shuffled Plaintiffs between over thirty points of contact for months, erroneously stated that the modification application was closed when it had, in reality been sent to underwriting, failed to return voicemail messages, and requested profit and loss statements repeatedly—all over the course of a year.

44.   Even though Plaintiffs received a letter from SLS purporting to assign Plaintiffs to a single point of contact to discuss their loan modification, Plaintiffs never spoke to this contact person and the contact never returned any of Plaintiffs' messages over the course of the entire year-long modification application process.

45.   Moreover, even after SLS purportedly assigned Plaintiff a new single point of contact, the new contact person never contacted Plaintiffs nor returned any of Plaintiffs' messages.

46.   On August 8, 2013, after over a year of repeatedly complying with every request made by Defendants, Plaintiffs were finally informed by SLS's employee "Shauna" that Defendants approved Plaintiffs for a three month trial modification plan.

47.   On August 16, 2013, Plaintiffs followed up with SLS again after they did not receive any of the promised modification documents but this time were summarily denied for a modification by SLS employee "Michael" who informed Plaintiffs that the prior approval was a mistake and then transferred Plaintiffs to a supervisor named "Anthony" who confirmed that Defendants denied Plaintiffs' loan modification application.

48.   SLS informed Plaintiffs by mail on October 10, 2013 that their modification application was denied because the ratio of Plaintiffs' gross income to the allowable mortgage payment did not fit the parameters of Defendants' program.

9

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

49.    However, Plaintiffs are informed, believe, and thereon allege that Defendants did not properly calculate the ratio of Plaintiffs' gross monthly income to the allowable monthly mortgage expense for Plaintiffs' program because as recently as June 27, 2013 Plaintiffs informed Defendants by mail that the loan to value ratio on the Subject Property had reached 78% and that the force-placed lender paid mortgage insurance could be removed.

50.    Moreover, Plaintiffs' gross monthly income has changed since Plaintiffs applied for their most recent modification so that, between Plaintiffs' changed monthly income and a monthly mortgage payment that does not include private mortgage insurance, Plaintiffs are informed, believe, and thereon allege that they meet the criteria for a modification under Defendants' guidelines.

### FIRST CAUSE OF ACTION

### FRAUD IN LOAN ORIGINATION

### (Against Defendants B.F. Saul, SLS, U.S. Bank, and Does 1–25)

51.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52.    Defendants, through their Agent, informed Plaintiffs that the Loan Agreement included a fixed interest rate for the first five years, that Plaintiffs would make interest only payments for the first five years in a fixed amount, and that Plaintiffs would be able to refinance the Loan Agreement when the purported five year interest-only payment period expired.

53.    Plaintiffs are informed, believe, and thereon allege that Defendants knew these representations to be false at the time they made them because Defendants had extensive experience in lending, loan servicing, and origination, and were privy to the actual terms of the Subject Loan.

54.    Plaintiffs are informed, believe, and thereon allege that Defendants intended to deceive Plaintiffs so that Plaintiffs would execute the Loan Agreement and thereby generate ongoing profits for Defendants, even in the event of foreclosure as Defendants could profit off the collateral value of the Subject Property.

CONSUMER LITIGATION LAW CENTER, APC

10

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

55.   Plaintiffs relied on Defendants' misrepresentations because Plaintiffs executed the Loan Agreement and made required monthly payments thereunder.  Moreover, Plaintiffs had a right to rely on Defendants' misrepresentations to the extent that Plaintiffs were not involved in the real estate or financial services industry and therefore relied on and trusted Defendants' knowledge, experience, expertise, advice, and representations in these matters.

56.   Plaintiffs only became suspicious, or had reason to become suspicious of Defendants' misrepresentations in or around early 2011 when their purportedly fixed, five-year interest only payments adjusted upwards sharply when their loan had reached its 115% maximum cap.

57.   As a result of Plaintiffs' reliance on Defendants' misrepresentations, Plaintiffs have suffered and continue to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

58.   Plaintiffs are further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

59.   Plaintiffs also face near certain loss of the Subject Property due to Defendants' wrongful foreclosure proceedings against the Subject Property caused by Defendants' fraudulent acts and omissions.

60.   Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SECOND CAUSE OF ACTION

## FRAUD IN LOAN SERVICING

### (Against Defendants SLS and Does 1-25)

61.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

/ / /

11

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

62.     Defendants informed Plaintiffs that they had to stop making their monthly payments under the Loan Agreement and go into default otherwise Defendants would not modify the Loan Agreement.

63.     Plaintiffs are informed, believe, and thereon allege that Defendants knew these representations to be false at the time they made them because Defendants already knew Plaintiffs were having difficulty making payments and wanted to foreclose on the Subject Property and re-sell it for a profit.

64.     Plaintiffs are informed, believe, and thereon allege that Defendants intended to deceive Plaintiffs so that Plaintiffs would fall into default, obtain either no modification or an unaffordable modification, and provide Defendants the chance to foreclose on the Subject Property and re-sell it for a profit.

65.     Plaintiffs relied on Defendants' misrepresentations because Plaintiffs—on Defendants instructions—stopped making their mortgage payment and fell into default on the understanding that Defendants would then work with Plaintiffs to give an affordable loan modification.

66.     Plaintiffs only became suspicious of Defendants' misrepresentations in or around early 2011 when their purportedly fixed, five-year interest only payments adjusted upwards sharply and Plaintiffs contacted Defendants to discuss loss mitigation.

67.     As a result of Plaintiffs' reliance on Defendants' misrepresentations, Plaintiffs have suffered and continue to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

68.     Plaintiffs also face near certain loss of the Subject Property due to Defendants' wrongful foreclosure proceedings against the Subject Property caused by Defendants' fraudulent acts and omissions.

69.     Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200, ET SEQ.

#### (Against All Defendants)

70.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

71.    California *Business & Professions Code* section 17200, California's Unfair Competition Law ("UCL"), prohibits "any **unlawful, unfair** or **fraudulent** business act or practice." Cal. Bus. & Prof. Code § 17200 (emphasis added). The code section is written in the disjunctive, and thus requires that only one prong is satisfied in order to find liability. *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

72.    Unlawful: "The 'unlawful' practices prohibited by section 17200 are <u>any</u> practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or <u>court-made</u>." *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–39 (emphasis added).  These predicate unlawful business acts and practices include, but are not limited to, California *Civil Code* section 1709 (fraud in loan origination and servicing), *Civil Code* section 1710 (negligent misrepresentation), *Civil Code* section 2923.6 (violation of Homeowner Bill of Rights), and *Civil Code* section 1714(a) (negligence).  A violation of any of these underlying laws is a *per se* violation of section 17200.

73.    Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 1709 as alleged hereinabove in that Defendants, through their acts and omissions, misrepresented the terms and affordability of the Subject Loan, causing Plaintiffs to agree to a loan they would not have otherwise, to Plaintiffs' financial detriment. Defendants further violated *Civil Code* section 1709 because they instructed Plaintiffs to default on the Subject Loan in order to receive a modification but then gave Plaintiffs an unaffordable, adjustable rate modification that prevented Plaintiffs from coming out of default so that Defendants could ultimately foreclose on the Subject Property.

///

///

13

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

74.   Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 1709 as alleged hereinabove in that Defendants, through their acts and omissions, misrepresented the terms and affordability of the Subject Loan, causing Plaintiffs to agree to a loan they would not have otherwise, to Plaintiffs' financial detriment. Defendants further violated *Civil Code* section 1709 because they instructed Plaintiffs to default on the Subject Loan in order to receive a modification but then gave Plaintiffs an unaffordable, adjustable rate modification that prevented Plaintiffs from coming out of default so that Defendants could ultimately foreclose on the Subject Property. Plaintiffs are informed, believe, and thereon allege that at the time Defendants made the factually untrue statements described hereinabove, Defendants did not believe them to be true.

75.   Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 1714(a) in that Defendants owed a duty of care to Plaintiffs as the lenders, servicers, and trustees of the Subject Loan, that Defendants conduct fell below the standard of care that Defendants owed to Plaintiffs, that Defendants conduct was the actual and proximate cause of the harm to Plaintiffs alleged herein and that Plaintiffs suffered damages as alleged herein as a result of Defendants' negligent acts and omissions.

76.   Finally, Defendants' acts and omissions while originating and servicing the Subject Loan violate California *Civil Code* section 1572 because Plaintiffs were induced to enter into the Subject Loan through the suppression of facts known by Defendants, *Civil Code* section 1708 because the Subject Loan injured Plaintiffs by destroying their credit rating, *Civil Code* section 1709 because Defendants wrongfully and willfully deceived Plaintiffs into changing position to their financial detriment, and *Civil Code* section 1711 because Defendants violated established California public policies to protect the public from deceitful conduct.

77.   **Unfair:** "[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer." *People v. Casa Blanca Convalescent Homes Inc.* (1984) 159 Cal.App.3d 509, 530. Furthermore, the "unfair" standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud. *Motors, Inc. v. Times*

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

*Mirror Co.* (1980) 102 Cal.App.3d 735, 740. Finally, because section 17200 is disjunctive, practices that may be lawful may nevertheless be unfair. *Id.*

78.   Defendants, and each of them, engaged in unfair business practices by deceiving Plaintiffs as to the terms of the Subject Loan, failing to explain the terms of the Subject Loan to Plaintiffs, refusing to assist Plaintiffs to avoid foreclosure, failing to review Plaintiffs for a modification in good faith, instructing Plaintiffs to default on their loan, and by proceeding with the foreclosure process on the Subject Property without authority to do so.

79.   As alleged hereinabove, when Defendant originators, successors, and assigns had an opportunity to mitigate the adverse consequences of the predatory Subject Loan, they either did nothing to relieve Plaintiffs or engaged in bad faith "modification assistance" by instructing Plaintiffs to default and ultimately denying Plaintiffs for a modification for which they should have qualified.

80.   Defendants' purported loan assistance perpetuated a pattern of deceptive and unfair business practices by failing and refusing to provide Plaintiffs with a loan modification pursuant to the Federal Home Affordable Mortgage Program ("HAMP") or any other internal loan modification program for which they qualified. Defendants unfair practices include:

    a.   charging excessive or improper fees for default-related services;

    b.   providing false or misleading information in response to inquiries;

    c.   failing to perform proper loan modification underwriting;

    d.   failing to gather or losing loan modification application documentation and other paper work;

    e.   failing to provide adequate staffing to implement programs;

    f.   failing to adequately train staff responsible for loan modifications;

    g.   failing to establish adequate processes for loan modifications;

    h.   providing false or misleading information to while initiating foreclosures while Plaintiffs were in good faith actively pursuing a loss mitigation alternative offered by Defendants;

    i.   miscalculating Plaintiffs' eligibility for loan modification programs;

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

j.     misleading Plaintiffs by representing that loan modification applications would be handled promptly yet failing to act in a timely manner; and

k.     wrongfully denying Plaintiffs' modification application.

81.     Instead of mitigating the drastic consequences of the predatory Subject Loan as required, Defendants continued foreclose proceedings on the Subject Property.

82.     Plaintiffs are informed, believe, and thereon allege that Defendants failed to seek alternatives to foreclosure and continued with the foreclosure process as part of their company policies to deny contractual and stipulated benefits to those such as Plaintiffs and instead foreclose and profit on the collateral value of the Subject Property. These policies were put in place despite the fact that Defendants are under a duty to offer modification and foreclosure prevention relief in good faith under California law.

83.     The unfair practices of Defendants in the servicing of Plaintiffs' loan violate public policy favoring loan modification. This policy is evidenced by California *Civil Code* section 2923.6 and HAMP.

84.     **Fraudulent:** A fraudulent business practice under Business and Professions Code section 17200 if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.* (2002) 35 Cal.3d 197, 211. Furthermore, even lawful contract terms presented in a deceptive manner are fraudulent under section 17200. *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253. Such fraudulent practices do not require the plaintiff show actual deception, reliance, or damages. *Committee on Children's Television v. General Foods Corp., supra,* 35 Cal.3d at 211. Defendants' acts and omissions, as alleged herein, were likely to deceive members of the public and, in fact, did deceive Plaintiffs.

85.     Defendants fraudulent business practices included, but were not limited to:

a.     marketing the Subject Loan on the basis of exaggeration, misrepresentation, and/or the concealment of material facts;

b.     failing to disclose the whole truth about the Subject Loan's underwriting and associated costs;

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

c.    instructing Plaintiffs to default on their loan to achieve an affordable modification; and

d.    failing to review Plaintiffs for a loan modification in good faith so that Defendants could foreclose on the Subject Property.

86.    Defendants' unlawful, unfair, and fraudulent business practices present a continuing threat of deception to both Plaintiffs and members of the public at large as alleged herein. Plaintiffs and other members of the general public have no other adequate remedy at law that will prevent Defendants' misconduct as alleged herein from occurring, and reoccurring, in the future to Plaintiffs and members of the general public.

87.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices alleged herein, Plaintiffs have suffered extensive pecuniary damages as alleged herein as well as threatened loss of their real property.

88.    As a result of Plaintiffs' reliance on Defendants' misrepresentations, Plaintiffs have suffered and continue to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

89.    Plaintiffs also face near certain loss of the Subject Property due to Defendants' wrongful foreclosure proceedings against the Subject Property caused by Defendants' unlawful, unfair, and fraudulent acts and omissions.

90.    Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE HOMEOWNER BILL OF RIGHTS

### (Cal. *Civ. Code* § 2923.6)

### (Against Defendants SLS, ZIEVE, and DOES 1-25)

91.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

17

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

92.    Under the portion of the Homeowner Bill of Rights codified at *Civil Code* section 2923.6, the lender, servicer, trustee, beneficiary, or authorized agent shall not record an NOD, NTS or conduct a trustee's sale until the appeal period expires after the borrower is provided in writing with a denial of their loan modification application. Cal. *Civ. Code* 2923.6(c). The borrower must have at least 30 days from the date of the written denial to appeal the decision. Cal. *Civ. Code* 2923.6(d). Furthermore, once the borrower appeals the denial, the lender, the trustee's sale still cannot take place until either 15 days after denial of the appeal or 14 days after the borrower denies a modification given on appeal.

93.    Here, Plaintiffs received a written modification denial letter dated October 10, 2013 that also notifies Plaintiffs that they can appeal the denial by November 9, 2013 ("10/10/13 Denial"). A true and correct copy of the 10/10/13 Denial is attached hereto as Exhibit "G".

94.    On or about November 5, 2013, Plaintiffs appealed their denial. Thus, the trustee's sale currently scheduled for November 12, 2013 cannot take place because *Civil Code* section 2923.6 requires that Defendants not conduct a trustee's sale on the Subject Property fourteen or fifteen days after Plaintiffs either reject a modification on appeal or are denied a modification on appeal.

95.    Plaintiffs are therefore entitled to injunctive relief prohibiting Defendants from exercising the power of sale in violation of *Civil Code* sections 2923.5, 2924.12 and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## FIFTH CAUSE OF ACTION
## WRONGFUL FORECLOSURE
### (Against Defendants U.S. Bank, Zieve, SLS, and Does 1-25)

96.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97.    Plaintiff is informed, believes, and thereon alleges that Plaintiffs' Deed of Trust was purportedly assigned by B.F. Saul to U.S. Bank as trustee for the residential mortgage

18

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

backed security entitled Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2 via an Assignment of Deed of Trust recorded June 1, 2011.

98. Plaintiffs are informed, believe, and thereon allege that Chevy Chase Bank, F.S.B. issued investment bonds in the mortgage backed trust identified hereinabove as the Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2 ("Mortgage Trust"). Plaintiffs are informed, believe, and thereon allege that the Mortgage Trust was registered with the Securities and Exchange Commission.

99. Plaintiffs are informed, believe, and thereon allege that the Subject Loan was never transferred into the Mortgage Trust Prior to the trust's closing date.

100. Plaintiffs are informed, believe, and thereon allege that the above referenced Assignment of Deed of Trust from B.F. Saul to U.S. Bank as trustee for the Mortgage Trust on June 6, 2011 was therefore ineffective to assign the Subject Loan as the Mortgage Trust was closed at that time.

101. Therefore, Plaintiffs are informed, believe, and thereon allege that because the transfer was ineffective, Defendants had no authority to file the NOD and subsequent NTS on the Subject Property and no authority to conduct a foreclosure sale on the Subject Property.

102. As a result of the actions described above that Defendants have taken without any authority to do so, Defendants should be prevented from proceeding with the wrongful trustee's sale as Defendants lack standing to conduct said sale.

### SIXTH CAUSE OF ACTION

### NEGLIGENCE IN LOAN ORIGINATION

### (Against Defendants B.F. Saul, SLS, U.S. Bank, and DOES 1-25)

103. Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104. California law recognizes a cause of action for negligence arising from negligent breach of a contractual duty.

19

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

105.   Plaintiffs are informed, believe, and thereon allege that Defendants had a contractual duty to exercise reasonable care and skill as the originators of the Subject Loan or the successors thereto.

106.   Defendants breached the duty of care that they owed to Plaintiffs in originating the Loan Agreement when, through their Agent, Defendants falsely inflated Plaintiffs' income to nearly double Plaintiffs' true income.  Defendants informed Plaintiffs would be paying a fixed interest only payment for the first five years while, in reality, the Subject Loan contained a fixed payment for the first five years that was less than interest only and caused the principal balance of the Subject Loan to increase due to negative amortization.  Defendants assured Plaintiffs that they could refinance the Subject Loan at a later time with no reasonable grounds to believe that was true.  Defendants informed Plaintiffs that the interest rate was fixed for the first five years when in reality the interest rate was adjusting with the LIBOR index for the first five years.  Defendants informed Plaintiffs that their initial interest rate would be 8.250% when, in reality, Defendants had no reason to believe this was true because the interest rate was set to adjust by the first mortgage payment date.

107.   As a direct and proximate result of Defendants' failure to exercise due care in originating the Subject Loan, Plaintiffs are now stuck with an unaffordable loan, have suffered tens of thousands of dollars in negative amortization, incurred numerous fees and costs and are facing loss of the Subject Property, including the equity they have built in the Subject Property.

108.   Based on Defendants' negligent acts and omissions as alleged hereinabove, Plaintiffs are entitled to general and special damages in an amount to be proven at time of trial but in any event no less than the jurisdictional minimum of this Court.

109.   Plaintiffs are further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

110.   Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

20

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

SEVENTH CAUSE OF ACTION

NEGLIGENCE IN LOAN SERVICING

(Against Defendants B.F. Saul, SLS, U.S. Bank, and DOES 1-25)

111.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

112.   California law recognizes a cause of action for negligence arising from negligent breach of a contractual duty.

113.   Plaintiffs are informed, believe, and thereon allege that Defendants had a contractual duty to exercise reasonable care and skill as the servicers of the Subject Loan or the successors thereto.

114.   Defendants breached their duties to Plaintiffs in that Defendants rejected Plaintiffs' partial loan payments and instructed Plaintiffs to default on the Loan Agreement to apply for a modification. Defendants provided a first modification that was clearly unaffordable and prevented Plaintiffs from curing the very default that Defendants had lured them into. Defendants recorded a NOD and NTS without authority to do so as the Subject Loan was never timely securitized in the Mortgage Trust. Defendants then falsely stated that Plaintiffs received a second loan modification only later to deny that Plaintiffs received any such modification. Finally, Defendants failed to grant the second modification by miscalculating Plaintiffs' gross monthly income and failing to account for the fact that Plaintiffs are no longer required to pay private mortgage insurance under the Subject Loan.

115.   Defendants' acts and omissions were both the actual and proximate cause of Plaintiffs' injuries because Plaintiffs would not have defaulted on the Subject Loan without Defendants' express instructions to do so. Plaintiffs would not have an NOD or NTS recorded on the Subject Property had Defendants realized that they had no authority to foreclose on Plaintiffs. Plaintiffs would have taken additional loss mitigation steps sooner had Defendants not given them two different answers about the second modification attempt. Finally, Plaintiffs are informed, believe, and thereon allege that they would already have qualified for a second

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

1  loan modification had Defendants properly accounted for Plaintiffs' true gross monthly income

2  and a cancellation of private mortgage insurance.

3       116.   As a result of Defendants' negligent acts and omissions, Plaintiffs have suffered

4  and continue to suffer unaffordable loan payments, suffered tens of thousands of dollars in

5  negative amortization, numerous fees and costs, and are facing loss of the Subject Property,

6  including the equity they have built in the Subject Property.

7       117.   Based on Defendants' negligent acts and omissions as alleged hereinabove,

8  Plaintiffs are entitled to general and special damages in an amount to be proven at time of trial

9  but in any event no less than the jurisdictional minimum of this Court.

10       118.   Plaintiffs are further entitled to punitive damages to punish and deter Defendants

11  from such outrageous, reckless conduct and to deter other lenders, servicers, and originators

12  who are likely to commit similarly reckless acts and omissions in the future.

13       119.   Plaintiffs are therefore entitled to such relief as is set forth in this Cause of

14  Action and to such further relief set forth below in the section captioned Prayer for Relief which

15  is by this reference incorporated herein.

16                     **EIGHTH CAUSE OF ACTION**

17                         **UNJUST ENRICHMENT**

18                      **(Against All Defendants)**

19       120.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs

20  as though fully set forth herein.

21       121.   Plaintiffs are informed, believe, and thereon allege that Defendants, and each of

22  them, have obtained insurance on the Subject Loan that will compensate Defendants due to

23  default and/or a trustee's sale.

24       122.   Plaintiffs are further informed, believe, and thereon allege that the Subject

25  Property's value is currently greater than the amount Plaintiffs' owe under the Loan Agreement.

26       123.   Defendants will, therefore, be unjustly enriched if Defendants foreclose on the

27  Subject Property as they will be compensated both through the foreclosure and again through

28  insurance on the Subject Loan.

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

124.    Plaintiffs are therefore entitled to any proceeds from the insurance and sale of the Subject Property beyond the amount due and owing as of the trustee's sale date in order to prevent Defendants' unjust enrichment in an amount to be proven at time of trial but in any event no less than the jurisdictional minimum of this Court.

**NINTH CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH**

**PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against Defendants SLS and Zieve)**

125.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.    An economic relationship existed between Plaintiffs and the beneficiary under the Loan Agreement whereby Plaintiffs expected the probable future economic benefits of owning the Subject Property free and clear along with equity growth in the Subject Property. The beneficiary expected interest income under the Loan Agreement.

127.    Defendants SLS and Zieve knew of the existing economic relationship between the beneficiary and Plaintiffs as SLS services the Subject Loan and Zieve is the purported trustee under the Subject Loan's deed of trust.

128.    Defendants intentionally interfered with the relationship between Plaintiffs and the beneficiary by instructing Plaintiffs to default, deceiving Plaintiffs as to their ability to repay under the Loan Agreement, recording a NOD and subsequent NTS on the Subject Property, and failing to review the Loan Agreement for a modification in good faith.

129.    Defendants actually disrupted the economic relationship between Plaintiffs and the beneficiary because Plaintiffs defaulted based on Defendants' recommendations to do so, do not have a modification for which they are qualified based on Defendants' acts and omissions, and are facing an improper foreclosure sale.

130.    Defendants' acts proximately caused Plaintiffs' harm because, as a result of Defendants interference between Plaintiffs and the beneficiary, Plaintiffs have incurred

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

1   extensive penalties, an excessive mortgage payment, default, and threatened loss of the Subject

2   Property.

3       131.   Based on Defendants' negligent acts and omissions as alleged hereinabove,

4   Plaintiffs are entitled to general and special damages in an amount to be proven at time of trial

5   but in any event no less than the jurisdictional minimum of this Court.

6       132.   Plaintiffs are further entitled to punitive damages to punish and deter Defendants

7   from such outrageous, reckless conduct and to deter other lenders, servicers, and originators

8   who are likely to commit similarly reckless acts and omissions in the future.

9       133.   Plaintiffs are therefore entitled to such relief as is set forth in this Cause of

10   Action and to such further relief set forth below in the section captioned Prayer for Relief which

11   is by this reference incorporated herein.

### TENTH CAUSE OF ACTION

### NEGLIGENT INTERFERENCE WITH

### PROSPECTIVE ECONOMIC ADVANTAGE

#### (Against Defendants SLS and Zieve)

16      134.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs

17   as though fully set forth herein.

18      135.   An economic relationship existed between Plaintiffs and the beneficiary under

19   the Loan Agreement whereby Plaintiffs expected the probable future economic benefits of

20   owning the Subject Property free and clear along with equity growth in the Subject Property.

21   The beneficiary expected interest income under the Loan Agreement.

22      136.   Defendants SLS and Zieve knew of the existing economic relationship between

23   the beneficiary and Plaintiffs as SLS services the Subject Loan and Zieve is the purported

24   trustee under the Subject Loan's deed of trust.

25      137.   Defendants interfered with the relationship between Plaintiffs and the beneficiary

26   by instructing Plaintiffs to default, deceiving Plaintiffs as to their ability to repay under the Loan

27   Agreement, recording an NOD and subsequent NTS on the Subject Property, and failing to

28   review the Loan Agreement for modification in good faith.

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

138.   Defendants, through the acts and omissions described hereinabove, failed to exercise due care in performing their obligations under the Loan Agreement as servicers, originators, lenders, and trustees.

139.   Defendants' negligent acts and omissions actually disrupted the economic relationship between Plaintiffs and the beneficiary because Plaintiffs defaulted based on Defendants' recommendations to do so, do not have a modification for which they are qualified based on Defendants' acts and omissions, and are facing an improper foreclosure sale due to Defendants.

140.   Defendants' acts proximately caused Plaintiffs' harm because, as a result of Defendants interference between Plaintiffs and the beneficiary, Plaintiffs have incurred extensive penalties, an excessive mortgage payment, default, and threatened loss of the Subject Property.

141.   Based on Defendants' negligent acts and omissions as alleged hereinabove, Plaintiffs are entitled to general and special damages in an amount to be proven at time of trial but in any event no less than the jurisdictional minimum of this Court.

142.   Plaintiffs are further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

143.   Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

**ELEVENTH CAUSE OF ACTION**

**REFORMATION OF A FRAUDULENT CONTRACT AND RESTITUTION**

**(Cal. *Civ. Code* §§ 1670.5, 1667, 1689, 3412)**

**(Against Defendants B.F. Saul, U.S. Bank, SLS, and DOES 1-25)**

144.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

CONSUMER LITIGATION LAW CENTER, APC

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

145.   A contract may be rescinded "(1) If the consent of the party rescinding . . . was . . . obtained through . . . fraud, or [or] . . . (5) [i]f the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault [or] . . . (6) [i]f the public interest will be prejudiced by permitting the contract to stand." Cal. *Civ. Code* § 1689(b).

146.   In like manner "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. *Civ. Code* § 3412.

147.   California *Civil Code* section 1670.5 provides in relevant part, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time that it was made the court may refuse to enforce the contract . . . ." Cal. *Civ. Code* § 1670.5.

148.   As discussed hereinabove, the Loan Agreement marketed, originated, and serviced by Defendants, was unconscionable because: (1) the loan was predatory in nature because it included undisclosed negative amortizations and in introductory teaser rate that was not the true starting interest rate; (2) the loan contained terms for the adjustable increase in the amount of interest to be paid, and by extension, the amount of the monthly mortgage payments that were to be paid over the term of the loan, without regard to the ability of Plaintiff to be able to pay the increased payments upon adjustment, thus setting Plaintiff up for likely or certain default and inevitable foreclosure in contravention of government policies favoring home ownership and disfavoring foreclosure; and (3) the monthly payment was certain to increase because the Loan Agreement contained a cap on the maximum amount the principal balance could grow, thus once negative amortization caused the loan to meet the maximum allowable principal balance, the monthly payment would suddenly increase to allow for fully amortized payments that were completely unknown and undisclosed to Plaintiffs, yet certain to occur due to the initial negative amortization. Such unconscionable acts by were and are in violation of California *Civil Code* sections 1596, 1708 and 1709, as the Loan Agreement was injurious not only to Plaintiffs, but also to the public at large, and was deceptive for the reasons stated above.

149.   It was reasonably foreseeable by the Defendants and each of them that such egregious contract terms would cause Plaintiffs to default—besides the fact that Defendants instructed Plaintiffs to default—thereby resulting in economic injury to Plaintiffs.  Said injury includes loss of home improvements, excessive fees and mortgage payments, relocation costs, credit damage, loss of equity, and emotional distress associated with the impending foreclosure.  The combination of negative amortization and a cap on the maximum principal balance leading to a readjustment of monthly payments did in fact lead Plaintiffs to default, in violation of California public policy.  See California *Civil Code* § 1711.

150.   Plaintiffs also contend that the Loan Agreement originated was procured by fraud and therefore illegal, void, and unenforceable.  The Loan Agreement is also void as it violates numerous California statutes pursuant to *Civil Code* section 1667.  Plaintiffs allege that Defendants and each of them violated the following statutes: *Civil Code* sections 1572, 1573, 1596, 1670.5, 1709, 1710 and *Business & Professions Code* sections 17200 et seq.

151.   Based on the above referenced violations of California law, and pursuant to the equitable remedy of reformation authorized by the *Commercial Code* in cases of fraud in the inducement of a contract, Plaintiffs seek reformation of the Loan Agreement to properly reflect the meeting of the minds as to the true terms of the agreement that Plaintiffs rightfully believed to be the basis of the Loan Agreement.  Based on such reformation, Plaintiffs seek restitution of all monies paid pursuant to the Loan Agreement, including earnest money, all closing costs, all principal, interest, and taxes paid prior to default that exceed of the terms of the properly reformed agreement, to be proven at time of trial.

152.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

///
///
///
///

27

**VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6***

## TWELFTH CAUSE OF ACTION

### QUIET TITLE

#### (Cal. Code Civ. Proc. § 760.020)

**(Against Defendants and All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title Or Any Cloud On Plaintiff's Title Thereto, and DOES 1 through 25)**

153.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

154.    Plaintiffs are the legal owners of the Subject Property that is commonly known as 3811 River Avenue, Newport Beach, California 92663.[2]

155.    Plaintiffs seek to quiet title as of April 12, 2013, the date the first NOD was recorded.

156.    Plaintiffs seeks to quiet title against the claims of all Defendants named in this Complaint and anyone else claiming interest in the Subject Property.  Defendants and any successors or assignees have no right to title or interest in the Subject Property and no right to entertain any such rights of ownership including the right of possession.

157.    In addition, Plaintiffs contend that defendant Zieve did not have the authority or right to file the NOD recorded on April 12, 2013, since the Substitution of Trustee dated September 22, 2012, purportedly substituting the former trustee Chevy Chase Bank, F.S.B. for the purported current trustee Zieve was ineffective.  As alleged hereinabove, U.S. Bank had no authority to authorize the Substitution of Trustee because the Subject Loan was not securitized into the Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2 before said Mortgage Trust closed.  Such Substitution of Trustee should be declared void *ab initio* along

---

[2] Legal Description:  Lot 8 in Block 138 of River Section, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 4, Page(s) 25 of Miscellaneous Maps, in the officer of the County Recorder of said County.
APN: 423-308-01

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

with any NOD recorded thereafter because Zieve was not validly substituted as trustee of record and, therefore, Defendants do not have a right to foreclose on the Subject Property.

158.   Plaintiffs seek a judicial declaration that the title to the Subject Property is vested in Plaintiff alone as the title owner of the Subject Property, and that Defendants and each of them be declared to have no estate, right, title, or interest in the Subject Property, and that Defendants, their agents, and assigns, be forever enjoined from asserting any estate, right, title or interest in the Subject Property.

159.   As Defendants do not have any legal ownership or interest in the Subject Property on the date of foreclosure, allegedly obtained the Subject Property through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate a foreclosure sale of the Subject Property, the foreclosure sale proceedings are void and invalid. Therefore, Plaintiffs still have title to the Subject Property.

160.   Tender of the full outstanding debt is not required to quiet title in favor of Plaintiffs.  There is no bright-line rule requiring tender of the unpaid debt to *set aside a sale*. *Storm* v. *America's Servicing Company* (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9.  Tender is a "matter of discretion left up to the Court." *Id.* at *6. Even if tender were expressly required anywhere, there is no requirement that tender be pled because "at the procedural stage the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp.* v. *Twombly* (2007) 550 U.S. 544, 547).  Furthermore, requiring Plaintiffs to allege tender would affirm the underlying debt and invalidate Plaintiffs claims.  See *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424.  Plaintiff's claims for fraud and unfair and deceptive acts challenge the underlying debt.  In addition, the general equitable exception to the tender rule should be applied as such a requirement would evidence injustice and a hardship. *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.

161.   Accordingly, the Court should rule that title to the Subject Property be vested in Plaintiffs' names alone and award consequential damages in an amount to be proven at trial.

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

## THIRTEENTH CAUSE OF ACTION

### DECLARATORY RELIEF

(Cal. *Code Civ. Proc.* § 1060)

(Against All Defendants)

162.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

163.   An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the Loan Agreement, the foreclosure process, and the pending trustee's sale.

164.   These disputes concern, but are not limited to, the ownership rights to the Subject Property and the validity of the foreclosure process and trustee's sale.

165.   Plaintiffs contend that pursuant to the Loan Agreement, Defendants do not have authority to foreclose upon and sell the Subject Property.

166.   In addition, Plaintiffs are informed, believe, and thereon allege that Zieve did not have authority or right to file the NOD recorded on April 12, 2013, since the September 22, 2102 Substitution of Trustee was authorized by U.S. Bank as the trustee for the Mortgage Trust described hereinabove, but that the Subject Loan was not placed or collateralized in the Mortgage Trust.  Therefore, Zieve had no authority to record the NOD or any subsequent NTS and neither the NOD nor any NTS have authority over the Loan Agreement or Subject Property. As such, the Substitution of Trustee substituting Chevy Chase Bank, F.S.B. for the current trustee, Zieve, should be declared void and invalid.

167.   Plaintiffs are informed, believe, and thereon allege that Defendants dispute Plaintiffs' position as alleged herein and take the contrary position that they do in fact have the legal right and authority to foreclose on the Subject Property.

168.   As a result of said dispute, Plaintiffs request a judicial determination of the rights, obligations, and interest of the parties as to the Subject Property, and such determination is necessary and appropriate at this time, and under these circumstances, so that all parties may ascertain and know their rights, obligations, and interest in the Subject Property.

30

CONSUMER LITIGATION LAW CENTER, APC

169.   As a result of Defendants' wrongful foreclosure proceedings, Plaintiff will sustain great and irreparable injury through the permanent loss of the Subject Property. Plaintiffs cannot obtain adequate relief from money damages because real property is unique; thus, Plaintiffs lack an adequate remedy at law.

170.   Plaintiffs request a determination of the validity of the Substitution of Trustee dated September 22, 2012.

171.   Plaintiffs request a determination of the validity of the NOD recorded on April 12, 2013.

172.   Plaintiffs request a further determination of whether any Defendant has authority to foreclose and to conduct a trustee's sale on the Subject Property.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.   To enjoin the trustee's sale of the Subject Property;

2.   For compensatory damages awarded according to proof;

3.   For special damages according to proof;

4.   For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

5.   For rescission of the Loan Agreement and restitution of all principal and interest paid by Plaintiffs as well as any and all costs and fees Plaintiffs paid pursuant to the Loan Agreement;

6.   For all applicable statutory damages;

7.   For attorney's fees and costs of suit incurred herein;

///
///
///
///
///
///

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

8. For pre- and post-judgment interest thereon; and

9. For such other and further relief as the court deems just and proper.

Dated: November 7, 2013

CONSUMER LITIGATION LAW CENTER, APC

By: _____
September J. Katje, Esq.
Attorney for Plaintiffs,
Gary R. Koller and Cynthia D. Koller

CONSUMER LITIGATION LAW CENTER, APC

32

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

CONSUMER LITIGATION LAW CENTER, APC

## VERIFICATION

I, Gary R. Koller, am a Plaintiff in this action.  I have read the Verified Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information and belief, and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Newport Beach, California on November __7__, 2013.

Gary R. Koller

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

## VERIFICATION

1      I, Cynthia D. Koller, am a Plaintiff in this action.  I have read the Verified Complaint and

2

3  the facts and allegations contained therein are true to the best of my knowledge, except as to

4  those matters stated on information and belief, and, as to those matters, I believe them also to be

5  true.

6      I declare under penalty of perjury under the laws of the State of California that the

7  foregoing is true and correct.

8      Executed at Newport Beach, California on November 7, 2013.

9

10

11                Cynthia D. Koller

CONSUMER LITIGATION LAW CENTER, APC

28

34

VERIFIED COMPLAINT FOR FRAUD AND VIOLATION OF *CIVIL CODE §2923.6*

# EXHIBIT A



8742 Lucent Blvd.
Suite 300
Highlands Ranch, CO 80129
1-800-315-4SLS (4757)

| Account Number | Statement Date |
|---|---|
| 1004706217 | 02/24/10 |
| 1st Mortgage | |
| Property Address | |
| 3811 Riv Ave | |
| Newport Beach CA 92663 | |

+ 0277572 000005262 01SLS2 0074841 P1 P7

Gary R Koller Sr
3811 River Ave
Newport Beach CA 92663-2952

## WELCOME TO SPECIALIZED LOAN SERVICING, LLC

**Your Option ARM Loan**
It is our pleasure to welcome you as a customer of Specialized Loan Servicing, LLC. Effective 03/01/2010 the servicing of your loan has been transferred from Capital One, N.A. to us. Specialized Loan Servicing is pleased to be the new servicer of your Option ARM loan. We also wish to assure you that the terms and conditions of this transfer will not affect any original loan documents other than the terms directly related to the servicing of your loan.

As your Option ARM loan provider, Specialized Loan Servicing is committed to courteous and responsive service, accurate and timely handling of your payments, and simple, direct answers to your questions. For prompt response in all communications with us, please remember to reference your account number 1004706217.

**Payment Procedures**
Beginning 03/01/2010, all future payments should be mailed to Specialized Loan Servicing. Your previous lender will not accept payments from you beginning on the date listed above. Attached is your first payment coupon. Beginning next month you will receive a monthly billing statement.

If your monthly payment includes additional funds for the payment of taxes and insurance, please refer to the General Tax and Insurance sections on page 2 of 4 of this statement.

## HOW TO CONTACT SLS

For up-to-the-minute information about your account, use our 24-hour automated information system. To ask about this statement or general up-to-the-minute account information, please call 1-800-315-4SLS (4757), Monday - Friday 6a.m. - 6p.m. MST. TDD: 1-800-268-9419, Monday - Friday 8:00 a.m. to 5:00 p.m. MST. Se Habla español - 1-800-315-4SLS (4757).

Or write to us at:
General Customer Service Inquiries: P.O. Box 636005
Littleton, CO 80163-6005

Tax Department: P.O. Box 5515
Pasadena, CA 91107-0515
Attn: Tax Process
Phone: 1-866-801-1373

Insurance Department: P.O. Box 11023
Orange, CA 92856-8023
Phone: 1-800-441-4145

Payments: Attn: Remittance Processing
P.O. Box 105219
Atlanta, GA 30348-5219

Overnight Deliveries: 8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Our Website - www.sls.net
How to reach your previous lender:
Capital One, N.A.
7501 Wisconsin Avenue
West Tower, 6th Floor
Bethesda MD 20814
888-497-6278
(If not a toll free number, you may call collect.)

Detach and return with payment



P.O. Box 636005
Littleton, CO 80163-6005
1-800-315-4SLS (4757)

| Account Number |
|---|
| 1004706217 |
| 1st Mortgage |

A fee up to $25.00 will be charged for each returned payment except as otherwise limited by law.

### PAYMENT INSTRUCTIONS
1. Please
   - Do not send cash
   - Do not staple your check to the payment coupon
   - Do not include correspondence
2. Write your account number on your check or money order.
3. Write in any additional amounts you are including. (If the total is more than $5,000, please send certified check.)
4. Make your check payable to Specialized Loan Servicing Attn: Remittance Processing

**Minimum Payment Amount    $5822.90**

The amount shown above is taken from preliminary data and represents the minimum payment only. Your current billing statement will be mailed within 7 business days. That statement will contain all of your payment information along with a return envelope for your payment. If you do not receive your statement, please call our customer care center at the number listed above.

Specialized Loan Servicing, LLC
PO Box 105219
Atlanta, GA 30348-5219

10047062175000000000000000000000005822900



| | |
|---|---|
| 8742 Lucent Blvd. | **Account Number** |
| Suite 300 | 1004706217 |
| Highlands Ranch, CO  80129 | 1st Mortgage |
| 1-800-315-4SLS (4757) | Property Address |
| | 3811 Riv Ave |
| | Newport Beach CA 92663 |

**Statement Date**
02/24/10

### General Tax and Insurance Information

Your monthly home loan payment may include an amount to be deposited into an escrow or impound account from which we pay the insurance and/or taxes. We may review this account during the first 12 months to ensure that our monthly payment to this account is appropriate.

1. Any property tax bill sent directly to you should be forwarded immediately to Specialized Loan Servicing Tax Department, so that you can be assisted in avoiding penalties incurred by late payments. Also, you should be sure that you have applied for all money-saving tax exemptions available through your tax authority.
2. The terms of your mortgage loan require that you maintain insurance coverage for at least the amount of the outstanding balance of your loan, or 100% of the insurable value of the improvements. It also must show Specialized Loan Servicing in the mortgage clause. You can have an active part in determining your monthly escrow payment by verifying with your insurance agent the exact amount of insurance you need to carry, and reminding them that your renewal policy must be sent directly to us well before the renewal date. Without a policy in our office within fifteen days prior to the renewal date, we may have to place coverage with an agent of our choice to protect our security interest. Any insurance correspondence should be forwarded immediately to Specialized Loan Servicing Insurance Department.
3. If you wish to make a mid-term insurance policy substitution, you are responsible for canceling the previous policy and paying the new carrier. You must send us a copy of the cancellation notice for the prior policy, a copy of the new policy with the appropriate mortgage clause and a paid receipt for the first year's premium.
4. We encourage you to contact your insurance company immediately to verify that your policy reflects Specialized Loan Servicing, LLC as your new loan servicer. Your mortgage clause must read as follows: "Specialized Loan Servicing, LLC, its successors and/or assigns." Please also provide your agent with your new account number and Specialized Loan Servicing address.
5. To monitor this escrow account, we perform an escrow analysis annually, resulting in a payment adjustment based on the most recent amounts paid for taxes and insurance. The new payment will collect for the current year exactly what was previously paid out. Because we cannot anticipate the local tax increases or insurance costs, an increase in these factors will result in escrow changes and/or shortages.

### Additional Important Information

Optional Insurance - SLS does not currently offer life insurance or disability insurance. If you were previously enrolled in this service, it will no longer be part of your monthly payment. You should contact your provider to arrange for payment or cancellation of this service.
End of Year Statements - Every year, in January, we will send you an accounting of your loan for the previous calendar year along with a statement of taxes and interest paid for income taxes purposes. Please be sure to keep us advised of any change in your mailing address.

### Important Messages

For your protection, please be advised that we are attempting to collect a debt and any information obtained will be used for that purpose. Calls will be monitored and recorded for quality assurance purposes. If you do not wish for your call to be recorded, please notify the customer service associate when calling.

Attention to any Customer in Bankruptcy or who has received a bankruptcy discharge of this debt; please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code, however, it may be a notice of possible enforcement of our lien against the collateral property, which has not been discharged in your bankruptcy.

### PAYMENT INSTRUCTIONS
Please:

- Make your check payable to Specialized Loan Servicing
- Write your account number on your check or money order
- Write in any additional amounts you are including (if total is more than $5,000, please send certified check).

- Do not staple your check to the payment coupon
- Do not include correspondence
- Do not send cash

Avoid late payments. Make your payment on or before the due date specified in your loan documents. If you don't have a billing statement, write your account number on your check or money order and submit it promptly to ensure we receive your payment before late charge becomes due. The payment address is located under How To Contact Us. To be sure that we always receive your payment on time, you can have it deducted automatically from your bank. For details call 1-800-315-4SLS (4757).

**Payments.** All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law.

**Additional amounts.** If you submit an additional principal amount, an additional escrow amount and/or "other" amount with your regular home loan payment of principal and interest, SLS will first apply your loan payment before any additional amount is applied. If your home loan payments are not current, SLS will first apply any additional principal amount and/or additional escrow amount to outstanding principal and interest payments due before either additional amount is applied. Any additional amount specified as "other" will be applied first to past due principal and interest payments, then escrow deficiencies, then fees and costs due, then late charges, then outstanding principal.

**Post-Dated checks.** SLS' policy is not to accept post-dated checks, unless specifically agreed to by a loan counselor or technician.



| | |
|---|---|
| 8742 Lucent Blvd. | |
| Suite 300 | |
| Highlands Ranch, CO 80129 | |
| 1-800-315-4SLS (4757) | |

| Account Number | Statement Date |
|---|---|
| 1004706217 | 02/24/10 |
| 1st Mortgage | |
| Property Address | |
| 3811 Riv Ave | |
| Newport Beach CA 92663 | |

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Welcome to Specialized Loan Servicing, LLC. It is our pleasure to welcome you as a customer. Your home loan servicing was recently transferred to us and this is your official notice of the transfer, as legally required. Your home loan was previously serviced by Capital One, N.A. and you officially became a Specialized Loan Servicing, LLC customer effective 03/01/2010. Going forward, Specialized Loan Servicing will handle the servicing of your home loan, which means collecting your monthly home loan payments and handling related issues. Please note the terms and conditions of your mortgage loan documents do not change in any way, other than terms directly related to the servicing of your home loan.

Except in limited circumstances, the law requires that your present servicer send you a notice at least 15 days prior to the effective servicing transfer date, which is also the date in which your first payment is due to Specialized Loan Servicing. Your present servicer may have provided this notice as part of your loan closing documents. If this is the case, please note that your first payment will be due to Specialized Loan Servicing. Specialized Loan Servicing must also send you this transfer notice no later than 15 days after the transfer date, which is why you are receiving this notice as part of your welcome package.

The date that Capital One, N.A. will stop accepting payments from you is 03/01/2010. All payments due on or after 03/01/2010 should be sent to Specialized Loan Servicing. Your payment options are listed below.

Finally, we want to make you aware of certain rights you have under RESPA. A summary is provided at the bottom of this notice.

## ABOUT YOUR RIGHTS UNDER "RESPA"

You should be aware of your rights as a consumer with a home loan. These are explained in detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA)(12 U.S.C. 2605). Some of the highlights are as follows:

If during the first 60 days after your first payment is due to Specialized Loan Servicing, you mistakenly send your payment to Capital One, N.A., Specialized Loan Servicing is not allowed to charge you a late fee, or to report you to the credit bureau during the 60 day period stated above.

If you send a "qualified written request" to Specialized Loan Servicing concerning the servicing of your loan, we must provide you with a written acknowledgement within 20 Business Days of the receipt of your request. A "qualified written request" is a written correspondence which includes your name and account number and your reasons for the request. Writing a note on your payment coupon or envelope is not considered a "qualified written request". Inquiries or information sent to us via our website is not considered a "qualified written request". Qualified written request must be sent to:

Attn: Customer Care Support
P.O. Box 636005
Littleton, CO 80163-6005

Specialized Loan Servicing has 60 Business Days after receiving your request to make any appropriate corrections to your account. We must provide you with a written clarification about any dispute about your account. During this 60 Business Day period, we may not provide information to a consumer reporting agency concerning any overdue payment related to your qualified written request. However, this does not prevent us from initiating foreclosure if proper grounds exist under your loan documents.

A Business Day is any day excluding legal public holiday (state or federal), Saturday or Sunday.

## IMPORTANT PAYMENT OPTIONS INFORMATION FOR YOUR RECORDS

**Address Payment To:**
Specialized Loan Servicing
P.O. Box 105219
Atlanta, GA 30348-5219

**Regular Payment Instructions:**
- For payments made by regular mail, mail in proper form, please allow 10 days for processing.
- Payments received on a business day prior to 9:00 p.m. EST and in proper form will be effective dated and processed as of the date of receipt.

**Avoid Delays in Payment Processing:**
- Always send the payment in proper form, which is with coupon in window envelope provided, writing your account number on the check. Failure to do any of these steps may result in a delay in posting. DO NOT SEND CASH.
- Do not send correspondence with your payment. Send all correspondence to the address listed on this statement.
- In the event that you do not receive your monthly billing statement, DO NOT DELAY PAYMENT. Write your account number on your check and mail it to the payment address provided in this statement. Payments must be sent in proper form to avoid a delay in processing.

**Payment Options:**
- Monthly automatic draft - it's fast and easy, just call our Customer Care Center today and sign up.
- Visit our web site and pay on line. There is a fee for this service. Payment received prior to 6:00 p.m. MST will be effective dated the same day.
- Pay by phone. You may use our automated service by calling the Customer Care Center of by speaking with a Customer Care associate. There is a fee for this service. Payments received by 6:00 p.m. MST will be effective dated the same day.
- Payments sent via certified mail or overnight must be sent to the address on this statement. Failure to do so may result in a delay of posting.

©2004 Specialized Loan Servicing Trademservice marks are the property of Specialized Loan Servicing, LLC and/or its subsidiaries

# EXHIBIT B

Branch :FLA,User :AD15                    Comment:                              Station Id :OMVA

FIDELITY NATIONAL TITLE

Recording Requested By:

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
|||||||||||||||||||||||||||||||||||||   72.00
2007000293050 04:12pm 05/04/07
104 79 D11 23
0.00 0.00 0.00 0.00 66.00 0.00 0.00 0.00

Return To:
Document Control Dept.
7501 Wisconsin Avenue
Bethesda, MD 20814

Prepared By:
Allison Rivers, Loan Closer
B. F. Saul Mortgage Company
333 South Anita Drive
ORANGE, CA 92868

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

MIN 1000153-0567013321-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April  19, 2007 ,
together with all Riders to this document.
(B) "Borrower" is  GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS
     JOT TENANTS

Borrower's address is 3811 RIVER AVENUE, Newport Beach, CA 92663
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is B. F. Saul Mortgage Company

Lender is a  corporation
organized and existing under the laws of  the State of Maryland

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

⑥ -6A(CA) (0207).01
Page 1 of 15                           Initials: [signature]
    VMP Mortgage Forms, Inc.

15159972                                                          567013321

ORANGE,CA                          Page 1 of 23                  Printed on 10/18/2013 5:06:54 PM
Document: TD 2007.293050

Branch :ILA,User :AD15                    Comment:                                    Station Id :OMVA

Lender's address is 7501 Wisconsin Avenue, Bethesda, MD 20814

(D) "Trustee" is Chevy Chase Bank, F.S.B.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated April 19, 2007. The Note states that Borrower owes Lender One Million Three Hundred Fifty Thousand and 00/100                                                                  Dollars (U.S. $ 1,350,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2037.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207).01                          Page 2 of 16                  Initials:                Form 3005  1/01

15159972                                                                              567013321
                                                         MIN  1000153-0567013321-8

ORANGE,CA                               Page 2 of 23                   Printed on 10/18/2013 5:06:54 PM
Document: TD 2007.293050

,Branch :)LA,User :AD15                    Comment:                                Station Id :OMVA

Order No. 30140610

**EXHIBIT "ONE"**

Lot 8 in Block 138 of River Section, in the City of Newport Beach, County of Orange, State
of California, as per map recorded in Book 4, Page(s) 25 of Miscellaneous Maps, in the
office of the County Recorder of said County.

Assessor's Parcel No: 423-308-01

2                              (Rev. 11/17/04)

ORANGE,CA                      Page 3 of 23              Printed on 10/18/2013 5:06:54 PM
Document: TD 2007.293050

Branch :1LA,User :AD15                Comment:                                    Station Id :OMVA

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ County _____ of _____ Orange _____ :

        [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT A

SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number: _____            which currently has the address of
3811 RIVER AVENUE                                [Street]
              Newport Beach        [City], California 92663      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP®-6A(CA) (0207).01           Page 3 of 16        Initials: _____        Form 3005   1/01

    15159972                                   567013321
                             MIN  1000153-0567013321-8

Branch :LA,User :AD15                    Comment:                                   Station Id :OMVA

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207).01                    Page 4 of 15          Initials: _____          Form 3005   1/01

15159972                                                                    567013321
                                                     MIN  1000153-0567013321-8

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0207).01                    Page 5 of 16          Initials          Form 3005  1/01

15159972                                                                        567013321
                                                            MIN   1000153-0567013321-8

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(CA) (0207).01                    Page 6 of 15                Initials___        Form 3005   1/01

15159972                                                              567013321
                                                    MIN   1000153-0567013321-8

Branch :'LA,User :AD15                    Comment:                              Station Id :OMVA

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207).01                    Page 7 of 16          Initials:          Form 3005   1/01

15159972                                                                    567013321
                                                       MIN  1000153-0567013321-8

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials:

VMP®-6A(CA) (0207).01                     Page 8 of 15                              Form 3005   1/01

15159972                                                                567013321
                                          MIN   1000153-0567013321-8

Branch :ILA,User :AD15         Comment:         Station Id :OMVA

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials:

-6A(CA) (0207).01         Page 9 of 16         Form 3005  1/01

15159972

MIN  1000153-0567013321-8

567013321

Branch :1LA,User :AD15                    Comment:                                    Station 1d :OMVA

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(CA) (0207).01                    Page 10 of 16              Initials:                    Form 3005  1/01

15159972                                                                              567013321
                                                              MIN  1000153-0567013321-8

Branch :ILA,User :AD15                         Comment:                              Station Id :OMVA

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207).01                    Page 11 of 15          Initials: _____        Form 3005   1/01

15159972                                                                                         567013321
                                                                         MIN  1000153-0567013321-8

Branch :1LA,User :AD15                    Comment:                                    Station Id :OMVA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207).01                        Page 12 of 15                        Form 3005   1/01

15159972                                                                     567013321
                                                      MIN   1000153-0567013321-8

Branch :FLA,User :AD15                          Comment:                                   Station Id :OMVA

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _(signature)_

-6A(CA) (0207).01                    Page 13 of 15                         Form 3005   1/01

15159972                                                                  567013321
                                                        MIN   1000153-0567013321-8

Branch :1LA,User :AD15                    Comment:                              Station Id :OMVA

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____            _____ (Seal)
                                     GARY R. KOLLER              -Borrower

_____            _____ (Seal)
                                     CYNTHIA D. KOLLER           -Borrower

                                     _____ (Seal)      _____ (Seal)
                                                      -Borrower                               -Borrower

                                     _____ (Seal)      _____ (Seal)
                                                      -Borrower                               -Borrower

                                     _____ (Seal)      _____ (Seal)
                                                      -Borrower                               -Borrower

VMP®-6A(CA) (0207).01                Page 14 of 15                Form 3005   1/01

15159972                                                         567013321
                                                   MIN  1000153-0567013321-8

State of California
County of  *Orange*                                        } ss.

On      *April 21, 2007*          before me, *Diana Alanis, Notary Public*

                                                              personally appeared

            *Gary R. Koller, Cynthia D. Koller*

                                                    , ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                    _____  (Seal)

DIANA ALANIS
Commission # 1435081
Notary Public - California
Riverside County
My Comm. Expires Aug 18, 2007

Initials: _____

-6A(CA) (0207).01                Page 15 of 15                    Form 3005   1/01

15159972                                                          567013321
                                         MIN   1000153-0567013321-8

ORANGE,CA                      Page 16 of 23              Printed on 10/18/2013 5:06:55 PM
Document: TD 2007.293050



567013321

MIN   1000153-0567013321-8

## ADJUSTABLE RATE NOTE
(5 Year Payment Option / 1 Month LIBOR Index / Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES AND DECREASES TO MY MONTHLY PAYMENT AND MY INTEREST RATE ARE LIMITED. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

| April 19, 2007 | TUSTIN | California |
|---|---|---|
| [Date] | [City] | [State] |

3811 RIVER AVENUE, Newport Beach, CA 92663
[Property Address]

1.   BORROWER'S PROMISE TO PAY
     In return for a loan that I have received, I promise to pay One Million Three Hundred Fifty Thousand and 00/100 Dollars (U.S.$1,350,000.00)
plus any amounts added in accordance with Sections 3 (C) and 3 (F) of this Note (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  B. F. Saul Mortgage Company. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by Transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.   INTEREST
     (A)  Interest Rate
     Interest will be charged on unpaid principal, including any deferred interest added to the unpaid principal (as described in Section 3 (C) below), until the full amount of principal has been paid. Until the first Interest Rate Change Date (as defined in Section 2 (B) below), I will pay interest at the yearly rate of  8.250%. The interest rate I will pay may change monthly.
     The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 8 (B) of this Note.
     (B)  Interest Rate Change Dates
     The interest rate I will pay may change on the first day of  June, 2007           , and  on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.
     (C)  Interest Rate Limits
     My interest rate will never be greater than 19.900%         .  My interest rate will never be less than the Margin as set forth in Section 2 (E) below.
     (D)  The Index
     Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the one month London Interbank Offered Rate (LIBOR) as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day after the twenty-fifth day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."
     If the Index or any Index previously substituted under this Section 2 (D) is no longer available, or is otherwise unpublished, the Note Holder may choose a new Index and a new Margin to result in a rate similar to the rate in effect at that time which is based upon comparable information. The Note Holder will give me notice of the choice.
     (E)  Calculation of Interest Rate Changes
     Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Two and 950/1000           percentage points ( 2.950%     ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the interest rate limits stated in Section 2 (C) above, the rounded amount will be my new interest rate (the "Fully Indexed Rate") until the next Interest Rate Change Date.

5FXC25XX ( 115 ) Multistate        Rev. 7/3/06       Page 1 of 5
15159970

567013321
MIN  1000153-0567013321-8

3.  PAYMENTS
    (A)  Time and Place of Payments
    I will make my monthly payments, as described in Sections 3 (B) through 3 (F) below, on the first day of each month, but no sooner than thirty (30) days before each payment's due date, beginning on June 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at P.O. Box 17000, Baltimore, MD 21297-1000, or at a different place if required by the Note Holder.
    (B)  Minimum Payment
    As of the date of this Note, my initial required "Minimum Payment" is $ 5,091.73. Unless the maximum principal balance is reached as set forth in Section 3 (F) because of deferred interest, this amount will remain the same for the first 60 monthly payments due under this Note. Thereafter, my Minimum Payment is subject to change as described in detail below. Notwithstanding the payment options set forth in Section 3 (E) below, I must make at least the Minimum Payment each month. My initial required Minimum Payment was calculated to equal an amount that would have been sufficient to repay the unpaid principal I owe in full on the Maturity Date in substantially equal payments using a minimum payment rate of 2.150% in lieu of the actual interest rate. This minimum payment rate is not the amount of interest that will be charged on my loan, but rather was used solely for calculating the initial required Minimum Payment.
    (C)  Additions/Reductions to My Unpaid Principal
    My initial and future required Minimum Payments may be less than the amount of the interest charged during that month. If I choose to make only the Minimum Payment when that amount is less than the interest due, the Note Holder will subtract the amount of my payment from the amount of the interest due and will add the difference to my unpaid principal. This difference is known as "Deferred Interest." The Note Holder also will charge interest each month on any Deferred Interest that continues to be part of my unpaid principal balance. The interest rate on the Deferred Interest added to principal will be the rate set forth in Section 2 of this Note.
    (D)  Payment Changes
    My Minimum Payment will change under the following circumstances:
        (i)  Payment Change Dates.
        My monthly Minimum Payment may change on the first day of June, 2012 , and on that same day every 12th month thereafter. Each of these dates is called a "Payment Change Date." Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay my unpaid principal in full on the Maturity Date in substantially equal installments at my new interest rate calculated pursuant to Section 2 (E) above. My new monthly Minimum Payment will be set equal to the recalculated amount except that my new Minimum Payment will not be more than 7.500 percent greater or less than the amount of the last monthly payment that was due before the applicable Payment Change Date.
        (ii)  Adjustment Dates.
        Notwithstanding Section 3 (D) (i) above, on the 1st Payment Change Date and on each 5th Payment Change Date thereafter, my Minimum Payment will be adjusted as explained above, except that the described 7.500 percent limitation will not apply.
        (iii)  Other Changes.
        My monthly payment may also change as described in Section (F) below.
    (E)  Payment Options
    Additional payment options, such as: (i) a fully-amortizing payment (i.e., a payment that would be sufficient to repay the unpaid principal balance in full on the Maturity Date in substantially equal installments at the current Fully Indexed Rate); (ii) an interest-only payment (i.e., a payment equal to the interest accrued on the principal balance at the Fully Indexed Rate); and, (iii) a 15-year amortization option, may, at the Note Holder's discretion, be shown on my monthly statement. These payment options are shown for my convenience and may change each month based on changes in the Index (as described in Section 2 (D) of this Note) and changes in the amount of my principal balance. Although none of these optional payments are required, a timely payment made in accordance with any payment option shown on my monthly statement will be deemed to be in compliance with the terms of this Note. In all events, a payment option offered on my monthly statement will never be less than my Minimum Payment.

5FXC25XX ( 115 ) Multistate      Rev. 7/3/06      Page 2 of 5
15159970

567013321
MIN   1000153-0567013321-8

(F)  Payment Limitations

In all events, my unpaid principal balance can never exceed a maximum of  115   percent of the principal amount I originally borrowed (the "Maximum Amount").  If, based upon the assumption that I will continue to make my current Minimum Payment, the Note Holder determines that making my current Minimum Payment will cause my unpaid principal balance to exceed the Maximum Amount, then the Note Holder may calculate a new monthly Minimum Payment to prevent my principal balance from doing this.  Thereafter, until otherwise changed in accordance with the terms of this Note, my new monthly Minimum Payment will be a fully-amortizing payment calculated in accordance with Section 3(E)(i).

4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my Minimum Payment before the effective date of any change.  The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of this Note, and the payment amount applicable to the loan.  The notice will also include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   FAILURE TO MAKE ADJUSTMENTS

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, after discovery of such failure, make the adjustment as if it had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid principal.

6.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note. Unless otherwise stated in a Prepayment Penalty Addendum included in my loan documents, I may make a full Prepayment or partial Prepayments, without paying any Prepayment charge. The Note Holder will use all of my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, other amounts due and applicable fees before applying my Prepayment to reduce the principal that I owe under this Note. A partial Prepayment will not result in a change in the due dates of my monthly payments.

7.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges (the "Maximum Rate"), is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then, as my sole remedy (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial Prepayment.

8.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be five percent (5%) of my overdue payment. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

SFXC25XX ( 115 ) Multistate        Rev. 7/3/06        Page 3 of 5

15159970

567013321
MIN  1000153-0567013321-8

(D)  No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

9.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above, or at a different address if I give the Note Holder a notice in writing of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) of this Note or at a different address if I am given a notice of that different address.

10.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

11.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

12.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument. Lender shall also not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an Assumption Agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is

567013321
MIN  1000153-0567013321-8

delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Witness the Hand(s) and Seal(s) of the Undersigned.

_____  4-21-07      _____
GARY R. KOLZER              Date          Date


_____                _____
                           Date          Date

**THIS LOAN IS SUBJECT TO A PREPAYMENT PENALTY.  SEE ATTACHED PREPAYMENT PENALTY ADDENDUM TO NOTE**

SFXC25XX ( 115 ) Multistate     Rev. 7/3/06     Page 5 of 5
15159970

# ADJUSTABLE RATE RIDER

### (5 Year Payment Option / 1 Month LIBOR Index / Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19th   day of April
2007   ', and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note
(the "Note") to B. F. Saul Mortgage Company(the "Lender") of the
same date and covering the Property described in the Security Instrument and located at:

3811 RIVER AVENUE, Newport Beach, CA 92663
[Property Address]

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES AND
DECREASES TO MY MONTHLY PAYMENT AND MY INTEREST RATE ARE
LIMITED. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER
THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN
THE LIMIT STATED IN THE NOTE. A BALLOON PAYMENT MAY BE DUE
AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made
in the Security Instrument, Borrower and Lender further covenant and agree as follows:

2.   INTEREST
(A) Interest Rate
Interest will be charged on unpaid principal, including any deferred interest added
to the unpaid principal (as described in Section 3 (C) below), until the full amount of
principal has been paid. Until the first Interest Rate Change Date (as defined in Section
2 (B) below), I will pay interest at a yearly rate of    8.250% The interest rate I
will pay may change monthly.
The interest rate required by this Section 2 is the rate I will pay both before and
after any default described in Section 8 (B) of the Note.
(B) Interest Rate Change Dates
The interest rate I will pay may change on the first day of June,  2007
and on that day every month thereafter. Each date on which my interest rate could
change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date.
(C) Interest Rate Limits
My interest rate will never be greater than 19.900%    . My interest rate will
never be less than the Margin as set forth in Section 2 (E) below.

Page 1 of 6

567013321    MIN  1000153-0567013321-8

SFXC2SRD ( 115 )    Rev. 7/3/06
15159973

(D) The Index

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the one month London Interbank Offered Rate (LIBOR) as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day after the twenty-fifth day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index or any Index previously substituted under this Section 2 (D) is no longer available, or is otherwise unpublished, the Note Holder may choose a new Index and a new Margin to result in a rate similar to the rate in effect at that time which is based upon comparable information. The Note Holder will give me notice of the choice.

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding  Two  and  950/1000 percentage points ( 2.950% ) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the interest rate limit stated in Section 2 (C) above, the rounded amount will be my new interest rate (the "Fully Indexed Rate") until the next Interest Rate Change Date.

3.  PAYMENTS

(A) Time and Place of Payments

I will make my monthly payments, as described in Sections 3 (B) through (F) below, on the first day of each month, but no sooner than thirty (30) days before each payment's due date, beginning on  June 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under the Note. My monthly payments will be applied to interest before principal. If, on  May 1, 2037 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at
P.O. Box 17000, Baltimore, MD 21297-1000
, or at a different place if required by the Note Holder.

(B) Minimum Payment

As of the date of the Note, my initial required "Minimum Payment" is $ 5,091.73 . Unless the maximum principal balance is reached as set forth in Section 3 (F) because of deferred interest, this amount will remain the same for the first 60 monthly payments due under the Note. Thereafter, my Minimum Payment is subject to change as described in detail below. Notwithstanding the payment options set forth in Section 3 (E) below, I must make at least the Minimum Payment each month.

Page 2 of 8

567013321      MIN  1000153-0567013321-8

5FXC25RD ( 115 )      Rev. 7/1/04
15159973

My initial required Minimum Payment was calculated to equal an amount that would have been sufficient to repay the unpaid principal I owe in full on the Maturity Date in substantially equal payments using a minimum payment rate of    2.150%        in lieu of the actual interest rate. This minimum payment rate is not the amount of interest that will be charged on my loan, but rather was used solely for calculating the initial required Minimum Payment.

(C) Additions/Reductions to My Unpaid Principal

My initial and future required Minimum Payments may be less than the amount of the interest charged during that month. If I choose to make only the Minimum Payment when that amount is less than the interest due, the Note Holder will subtract the amount of my payment from the amount of the interest due and will add the difference to my unpaid principal. This difference is known as "Deferred Interest." The Note Holder also will charge interest each month on any Deferred Interest that continues to be part of my unpaid principal balance. The interest rate on the Deferred Interest added to principal will be the rate set forth in Section 2 of the Note.

(D) Payment Changes

My Minimum Payment will change under the following circumstances:

(i)  Payment Change Dates.

My monthly Minimum Payment may change on the first day of   June,  2012
, and on that same day every 12th month thereafter. Each of these dates is called a "Payment Change Date." Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay my unpaid principal in full on the Maturity Date in substantially equal installments at my new interest rate calculated pursuant to Section 2 (E) above. My new monthly Minimum Payment will be set equal to the recalculated amount except that my new Minimum Payment will not be more than 7.500 percent greater or less than the amount of the last monthly payment that was due before the applicable Payment Change Date.

(ii)  Adjustment Dates.

Notwithstanding Section 3 (D) (i) above, on the 1st Payment Change Date and on each 5th Payment Change Date thereafter, my Minimum Payment will be adjusted as explained above, except that the described 7.500 percent limitation will not apply.

(iii)  Other Changes.

My monthly payment may also change as described in Section (F) below.

Page 3 of 8

567013321      MIN  1000153-0567013321-8
5FXC25RD ( 115 )    Rev. 7/3/06
15159973

**(E) Payment Options**

Additional payment options, such as: (i) a fully-amortizing payment (i.e., a payment that would be sufficient to repay the unpaid principal balance in full on the Maturity Date in substantially equal installments at the current Fully Indexed Rate); (ii) an interest-only payment (i.e., a payment equal to the interest accrued on the principal balance at the Fully Indexed Rate); and, (iii) a 15-year amortization option, may, at the Note Holder's discretion, be shown on my monthly statement. These payment options are shown for my convenience and may change each month based on changes in the Index (as described in Section 2 (D) of the Note) and changes in the amount of my principal balance. Although none of these optional payments is required, a timely payment made in accordance with any payment option shown on my monthly statement will be deemed to be in compliance with the terms of the Note. In all events, a payment option offered on my monthly statement will never be less than my Minimum Payment.

**(F) Payment Limitations**

In all events, my unpaid principal balance can never exceed a maximum of 115 percent of the principal amount I originally borrowed (the "Maximum Amount"). If, based upon the assumption that I will continue to make my current Minimum Payment, the Note Holder determines that making my current Minimum Payment will cause my unpaid principal balance to exceed the Maximum Amount, then the Note Holder may calculate a new monthly Minimum Payment to prevent my principal balance from doing this. Thereafter, until otherwise changed in accordance with the terms of this Note, my new monthly Minimum Payment will be a fully-amortizing payment calculated in accordance with Section 3 (E) (i).

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my Minimum Payment before the effective date of any change. The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of the Note, and the payment amount applicable to the loan. The notice will also include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Note Holder fails to make an adjustment to the interest rate or

567013321      MIN   1000153-0567013321-8

5FXC2SRD ( 115 )      Rev. 7/3/06
15159973

payment amount as described in the Note, regardless of any notice requirement, I agree that Note Holder may, after discovery of such failure, then make the adjustment as if it had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid principal.

6.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

The Section of the Security Instrument titled "Transfer of the Property or Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate  payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.  Lender shall also not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an Assumption Agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.  If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

567013321   .   MIN   1000153-0567013321-8

5FXCZ5RD ( 115 )      Rev. 7/3/06
15159973

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

4-21-07
_____ (Seal)
GARY R. KOLLER                          Date

_____ (Seal)
                                        Date

_____ (Seal)
                                        Date

_____ (Seal)
                                        Date

Page 8 of 8

567013321     MIN   1000153-0567013321-8

5FXC2SRD ( 115 )      Rev. 7/3/06
15159973



# EXHIBIT C

RECORDING REQUESTED BY:

LSI Title Agency - FIS Default Solutions
Fidelity National Title

AND WHEN RECORDED MAIL TO:

Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

_____

TS No.: 12-20780

## SUBSTITUTION OF TRUSTEE

WHEREAS, GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS was the original Trustor, CHEVY CHASE BANK, F.S.B. was the original Trustee, and B. F. SAUL MORTGAGE COMPANY, as Lender, Mortgage Electronic Registration Systems, Inc. was the original Beneficiary under that certain Deed of Trust dated 4/19/2007 and recorded on 5/4/2007 as Instrument No. 2007000293050, in book —, page — of Official Records of Orange County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Law Offices Of Les Zieve , as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:   **SEP 2 2 2012**

U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2 by Specialized Loan Servicing LLC, attorney in fact

**Michael Ward**
Second Assistant Vice President

State of **Colorado**      } ss.
County of   **Douglas**     }

On  _9-22-2012_  before me,  **Jeff   Plachko** _____ Notary Public, personally appeared _Michael Ward_ _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ____Colorado____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

JEFF PLACHKO
NOTARY PUBLIC
STATE OF COLORADO

My Commission Expires
01-28-2013

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 12-20780. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Dated: 12/13/2012          Law Offices of Les Zieve, as Trustee
                           18377 Beach Blvd., Suite 210
                           Huntington Beach, California 92648
                           For Non-Automated Sale Information, call: (714) 848-7920
                           For Sale Information: (714) 848-9272  www.elitepostandpub.com

                           Christine O'Brien, Trustee Sale Officer

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

# EXHIBIT  D

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

9.00

2011000271050 01:51pm 06/01/11

65 404 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Requested and Prepared by:
Law Offices of Les Zieve

When Recorded Mail To:

Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

---

Loan No.: 1004706217                                    TS No: **11-14248**

# ASSIGNMENT
## OF DEED OF TRUST

110197462

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2**

all beneficial interest under that certain Deed of Trust dated: 4/19/2007 executed by GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS, as Trustor(s), to CHEVY CHASE BANK, F.S.B., as Trustee, and recorded as Instrument No. 2007000293050, on 5/4/2007, in Book --, Page -- of Official Records, in the office of the County Recorder of Orange County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated:  5-25-11

By:  **Mortgage Electronic Registration Systems, Inc., as nominee for B. F. SAUL MORTGAGE COMPANY, its successors and assigns**

Anthony Forsberg   Assistant Secretary

State of  **Colorado**
County of  **Douglas**

On  May 25, 2011  before me,  **Marsha Corah** _____, personally appeared, _____**Anthony Forsberg**_____  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Colorado  that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                                      (seal)

Signature
exp 7-8-2014

# EXHIBIT   E

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

**Law Offices of Les Zieve**
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  15.00
**2011000186908 04:04pm 04/12/11**
10 406 N16 3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Loan No.: 1004706217
APN: 423-308-01

TS No.: 11-14248

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is __$27,919.72__ as of __4/11/2011__, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Loan No.: **1004706217**                    TS No. **11-14248**

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage
Backed Certificates Series 2007-2 c/o
Specialized Loan Servicing, LLC
C/O Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648
Phone: (800)315-4757

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Law Offices Of Les Zieve is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 4/19/2007, executed by GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS, as Trustor, to secure certain obligations in favor of B. F. SAUL MORTGAGE COMPANY, A CORPORATION as Lender, Mortgage Electronic Registration Systems, Inc. as Beneficiary, recorded 5/4/2007, as Instrument No. 2007000293050, in Book --, Page --, of Official Records in the Office of the Recorder of Orange County, California describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes **NOTE(S) FOR THE ORIGINAL sum of $1,350,000.00. A** breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:
 The monthly installment which became due on 1/1/2011, along with late charges, and all *subsequent monthly installments.*

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.**

*Description: Orange,CA Document-Year.DocID 2011.186908 Page: 2 of 3*
*Order: trish Comment:*

Loan No.: **1004706217**                        TS No. **11-14248**

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

Attempts to contact the borrower have been unsuccessful. No contact was made with the borrower despite the due diligence of beneficiary of their authorized agent's pursuant to California Civil Code §2923.5(g), including (a) mailing a first-class letter was sent to the borrower that included a toll-free contact number for the beneficiary as well as the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. In addition, at least three attempts were made to contact the borrower by telephone, followed-up by a certified letter, return receipt requested.

Dated: 4/11/2011                          Law Offices Of Les Zieve, as Agent for Beneficiary

**Marco Marquez**

By LSI Title Company, As Agent

# EXHIBIT F

Branch :ILA,User :AD15                          Comment:                                          Station Id :OMVA

[RECORDING REQUESTED BY]
Law Offices of Les Zieve

Recorded in Official Records, Orange County
Renee Ramirez, Assistant Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 12.00
* S R 0 0 0 5 4 2 7 0 4 0 $ *

[WHEN RECORDED MAIL TO:]
Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

2012000778216 4:19 pm 12/14/12
117 403 N34  2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

T.S. No. 12-20780                    APN: 423-308-01          [SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]          Loan No. 1004706217

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/19/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon; fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS**
Duly Appointed Trustee: Law Offices Of Les Zieve   Deed of Trust recorded 5/4/2007 as Instrument No. 2007000293050 in book --, page -- of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:**1/8/2013 at 1:30 PM**
Place of Sale:     At the North entrance to the County Courthouse 700  Civic Center Drive West, Santa Ana, CA 92701
Estimated amount of unpaid balance and other charges: **$1,172,345.72**
Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of            **3811 RIVER AVENUE**
real property:                                           **NEWPORT BEACH, CA 92663**
Described as follows:
 As more fully described on said Deed of Trust.

A.P.N #.: 423-308-01
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

Branch :1LA,User :AD15                    Comment:                              Station Id :OMVA

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 12-20780.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

Dated:  12/13/2012          Law Offices of Les Zieve, as Trustee
                            18377 Beach Blvd., Suite 210
                            Huntington Beach, California 92648
                            For Non-Automated Sale Information, call: (714) 848-7920
                            For Sale Information: (714) 848-9272  www.elitepostandpub.com

                            Christine O'Brien, Trustee Sale Officer

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

# EXHIBIT G

 **SLS**

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

October 10, 2013

GARY R KOLLER
3811 RIVER AVENUE
NEWPORT BEACH, CA 92663

Property Address:
3811 RIVER AVENUE
NEWPORT BEACH, CA 92663

Re: SLS Loan Number: 1004706217

Dear GARY R KOLLER,

Specialized Loan Servicing LLC, (SLS) has received a request to consider a loss mitigation deal
on your loan.  Your request has not been approved for the following reason(s):

   • We are unable to create an affordable payment equal to the allowable percentage of your
   reported monthly gross income without changing the terms of your loan beyond the allowable
   parameters of the program.

Although in our review we determined that you are not eligible for a loan modification based on the
reason provided, you have the right to request that we perform a second independent review to determine
your eligibility for a loan modification.  To request a second review you must send us your request in
writing which must be received by us no later than November 9, 2013.  If you request a second review in
the applicable time frame, we will not initiate or continue with foreclosure during the review process.
Your written request must either be mailed or faxed to us as follows:

   Specialized Loan Servicing
   P.O. Box 636005
   Littleton, CO 80163
   Fax: 720-241-7218

Please contact our office so we can determine if you may qualify for another program at 1-800-306-6059
Monday through Friday, 6:00 am to 7:00 pm to see what other Loss Mitigation options are available.
Plans may include Home Affordable Foreclosure Alternatives (HAFA) short sale or deed-in-lieu, or an
SLS proprietary plan to include repayment plan, short sale, or deed-in-lieu of foreclosure.

Sincerely,

Danette #11048
Customer Resolution Department
Specialized Loan Servicing LLC

Please see second page for additional information

8742 Lucent Blvd Suite 300 Highlands Ranch, CO 80129
Phone: 1-800-306-6059 Fax: 720-241-7526

BANKRUPTCY - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE
ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR
PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN
ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES
BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT
BEEN DISCHARGED IN YOUR BANKRUPTCY.  IF YOU HAVE QUESTIONS, PLEASE CONTACT OUR CUSTOMER CARE CENTER AT 800-306-6057



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JAN 08 2014

ALAN CARLSON, Clerk of the Court

BY  G. HERNANDEZ

CONSUMER LITIGATION LAW CENTER, APC

1

2

3

4

5

6

7

8

9   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10   COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

11

12   GARY KOLLER, an individual, and     Case No.: 30-2013-00686182-CU-CO-CJC
     CYNTHIA KOLLER, an individual,
13                                        [PROPOSED] ORDER GRANTING EX
                                          PARTE APPLICATION FOR TEMPORARY
14         Plaintiffs,                    RESTRAINING ORDER AND ORDER TO
                                          SHOW CAUSE
15         v.

16   SPECIALIZED LOAN SERVICING, LLC, a
     Delaware Limited Liability Company ; B.F.
17   SAUL MORTGAGE COMPANY, a
     Maryland Limited Liability Company; U.S.
18   BANK NATIONAL ASSOCIATION AS
     TRUSTEE RELATING TO CHEVY CHASE
19   FUNDING LLC MORTGAGE BACKED
     CERTIFICATES SERIES 2007-2; LAW
20   OFFICES OF LES ZIEVE; and all persons or
     entities unknown claiming any legal or
21   equitable right, title, estate, lien or interest in
     the property described in this complaint
22   adverse to Plaintiff's title thereto, and DOES
     1 through 25, inclusive,
23
24         Defendants.
25
26
27
28

1

[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

ORDER TO SHOW CAUSE

SPECIALIZED LOAN SERVICING, LLC, a Delaware Limited Liability Company ; B.F. SAUL MORTGAGE COMPANY, a Maryland Limited Liability Company; U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2; LAW OFFICES OF LES ZIEVE; Based upon the verified complaint filed in this action and on the declarations filed herewith, you are ordered to appear on ___1-28-14___ at ___2___ a.m./p.m. in Courtroom 18 of this Court located at Superior Court of the State of California, County of Orange, located at 700 Civic Center Drive West, Santa Ana, California, 92701, to show cause why a preliminary injunction should not be ordered to stay the foreclosure sale set for January 8, 2014 at 1:30 p.m., on Plaintiffs' residence located at 3811 River Avenue, Newport Beach, CA 92663 (hereinafter "Subject Property"), and   restraining and enjoining you and your employees and agents, or any other persons acting with you or on your behalf, from transferring ownership of or further encumbering the Subject Property.

TEMPORARY RESTRAINING ORDER

Pending hearing on the Order to Show Cause, you, your employees and agents, and any other persons acting with you or on your behalf are ordered to stay the foreclosure sale set for January 8, 2014 at 1:30 p.m., on the Subject Property, and you are further restrained and enjoined from transferring ownership of or further encumbering the Subject Property.

IT IS FURTHER ORDERED

This Order to Show Cause, Temporary Restraining Order, and supporting papers shall be served on Defendants no later than ___1-10-14___ by personal service/facsimile transmission/overnight mail. Proof of such service shall be filed at least ___7___ court days prior to the hearing.

Any opposition papers to the Order to Show Cause shall be filed and served on Plaintiffs by personal service/facsimile transmission/overnight mail no later than ___1-17-14___ Any reply papers to the opposition shall be filed and served on Defendants by personal service/facsimile transmission/overnight mail no later than ___1-23-4___

CONSUMER LITIGATION LAW CENTER, APC

2
[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

1   The restraining order granted herein shall expire on ___1 - 28 - 14___

2

3   Date: ___1 - 8 - 14___                    ___Will D. Claster___

4                                             Judge of the Superior Court

5                                             Judge William D. Claster

6

7

8

9

CONSUMER LITIGATION LAW CENTER, APC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/07/2014** at 11:48:00 AM
Clerk of the Superior Court
By Eleanor Sutter, Deputy Clerk

1  **CONSUMER LITIGATION LAW CENTER, APC**
   September J. Katje, Esq., State Bar No. 227896
2  sk@consumerlitigationlawcenter.com
   Kimberly A. Moses, Esq., State Bar No. 187619
3  km@consumerlitigationlawcenter.com
   Jeffrey J. Ogorek, Esq., State Bar No. 285927
4  jjo@consumerlitigationlawcenter.com
   100 North Citrus Ave., Suite 408
5  West Covina, California 91791
   (800) 787-5616. Fax: (888) 909-7947
6

7  Attorney for Plaintiffs. GARY KOLLER and CYNTHIA KOLLER

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10            **COUNTY OF ORANGE -- CENTRAL JUSTICE CENTER**

11

12  GARY KOLLER, an individual, and        )  Case No.: 30-2013-00686182-CU-CO-CJC
    CYNTHIA KOLLER, an individual,         )
13                                         )  PLAINTIFFS' EX PARTE APPLICATION
                 Plaintiffs,               )  FOR TEMPORARY RESTRAINING ORDER
14                                         )  AND ORDER TO SHOW CAUSE;
              v.                           )  MEMORANDUM OF POINTS AND
15                                         )  AUTHORITIES IN SUPPORT THEREOF;
                                           )  DECLARATION OF GARY KOLLER;
16  SPECIALIZED LOAN SERVICING, LLC, a     )  DECLARATION OF SAMANTHA
    Delaware Limited Liability Company ; B.F. )  HAINLINE; DECLARATION OF LAURA
17  SAUL MORTGAGE COMPANY, a              )  DASSORI RE NOTICE TO DEFENDANTS;
    Maryland Limited Liability Company; U.S. )  PROPOSED ORDER
18  BANK NATIONAL ASSOCIATION AS          )
    TRUSTEE RELATING TO CHEVY CHASE       )  DATE: January 8, 2014
19  FUNDING LLC MORTGAGE BACKED           )  TIME: 8:30 a.m.
    CERTIFICATES SERIES 2007-2; LAW       )  DEPT.: C-18
20  OFFICES OF LES ZIEVE; and all persons or )
    entities unknown claiming any legal or  )
21  equitable right, title, estate, lien or interest in )  **TRUSTEE SALE DATE:**
    the property described in this complaint )  **January 8, 2014, at 1:30 p.m.**
22  adverse to Plaintiff's title thereto, and DOES )
23  1 through 25, inclusive,               )
                                           )
24               Defendants.               )
                                           )
25

26      Plaintiffs GARY KOLLER and CYNTHIA KOLLER apply for a temporary restraining

27  order and for an order requiring Defendants to show cause why a preliminary injunction should

28  not issue pending trial in this action, enjoining Defendants and their employees, agents, and

CONSUMER LITIGATION LAW CENTER, APC

                                            1
**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

1  persons acting with them or on their behalf, from transferring ownership of or further
2  encumbering the real property located at 3811 River Avenue, Newport Beach, CA 92663
3  (hereinafter "Subject Property").
4          This application is made on the grounds that Defendants are wrongfully foreclosing on
5  the Subject Property and have a trustee's sale set for January 8, 2014.  Plaintiffs will suffer
6  irreparable injury if Defendants are not enjoined from transferring the Subject Property to a third
7  party, or further encumbering the Subject Property, because such transfer or additional
8  encumbrance would preclude Plaintiffs remedy of specific performance.
9          This application is made based upon the memorandum of points and authorities in
10 support hereof and declarations filed herewith, the verified complaint in this action, the
11 accompanying declaration of notice, and all other matters of which the Court may take judicial
12 notice.
13 Dated: January 7, 2014                    CONSUMER LITIGATION LAW CENTER, APC
14
15                                   By: _____
16                                       September J. Katje, Esq.
17                                       Kimberly A. Moses, Esq.
                                         Jeffrey J. Ogorek, Esq.
18                                       Attorney for Plaintiffs,
                                         GARY R. KOLLER and
19                                       CYNTHIA D. KOLLER
20
21
22
23
24
25
26
27
28

CONSUMER LITIGATION LAW CENTER, APC

2

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/07/2014** at 11:46:00 AM
Clerk of the Superior Court
By Eleanor Sutter, Deputy Clerk

1 | **CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq., State Bar No. 227896
2 | sk@consumerlitigationlawcenter.com
Kimberly A. Moses, Esq., State Bar No. 187619
3 | km@consumerlitigationlawcenter.com
Jeffrey J. Ogorek, Esq., State Bar No. 285927
4 | jjo@consumerlitigationlawcenter.com
100 N. Citrus Ave., Suite 408
5 | West Covina, California 91791
(800) 787-5616. Fax: (888) 909-7947
6 | Email: sk@consumerlitigationlawcenter.com

7 | Attorneys for Plaintiffs, GARY KOLLER and CYNTHIA KOLLER

8

9 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 |            **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

11

12 | GARY KOLLER, an individual, and          | Case No.: 30-2013-00686182-CU-CO-CJC
CYNTHIA KOLLER, an individual,

13 |                                           | **MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF EX**
14 |            Plaintiffs,                    | **PARTE APPLICATION FOR**
**TEMPORARY RESTRAINING ORDER**
15 |         v.                                | **AND ORDER TO SHOW CAUSE**

16 | SPECIALIZED LOAN SERVICING, LLC, a
Delaware Limited Liability Company ; B.F. | DATE:  January 8, 2014
17 | SAUL MORTGAGE COMPANY, a                  | TIME:   8:30 a.m.
Maryland Limited Liability Company; U.S.  | DEPT.: C-18
18 | BANK NATIONAL ASSOCIATION AS
TRUSTEE RELATING TO CHEVY CHASE
19 | FUNDING LLC MORTGAGE BACKED
CERTIFICATES SERIES 2007-2; LAW          | **TRUSTEE SALE DATE:**
20 | OFFICES OF LES ZIEVE; and all persons or | **January 8, 2014, at 1:30 p.m.**
entities unknown claiming any legal or
21 | equitable right, title, estate, lien or interest in
the property described in this complaint
22 | adverse to Plaintiff's title thereto, and DOES
1 through 25, inclusive,
23 |
24 |            Defendants.
25 |
26 |
27 |
28 | ///

1

CONSUMER LITIGATION LAW CENTER, APC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

An ex parte application must comply with California Rules of Court 3.1202(c), which provides that the applicant must make an affirmative factual showing of irreparable harm. Plaintiffs can affirmatively show that they will suffer irreparable harm, to wit: SPECIALIZED LOAN SERVICING, LLC, a Delaware Limited Liability Company ("SLS"); B.F. SAUL MORTGAGE COMPANY, a Maryland Limited Liability Company ("B.F. Saul"); U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2 ("U.S. Bank"); and LAW OFFICES OF LES ZIEVE ("Zieve") will hold a foreclosure sale on January 8, 2014, at 1:30 p.m. at the North entrance to the County Courthouse located at 700 Civic Center Drive West, Santa Ana, California, 92701, of Plaintiffs' property located at 3811 River Avenue, Newport Beach, CA 92663 ("Subject Property").

Plaintiffs are requesting emergency equitable relief from this Court as a result of wrongful foreclosure proceedings initiated against their property based on the following facts: (1) Defendants have no authority to foreclose on the Subject Property because Plaintiffs' Note was not transferred into the CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2 ("Securities Trust") before said Securities Trust closed on June 21, 2007, and (2) Defendants are estopped from selling the Subject Property at the trustee's sale because Defendants have offered Plaintiffs an opportunity to pay down approximately fifty percent (50%) of their unpaid principal balance and bring the Note and Deed of Trust executed on April 19, 2007 ("Loan Agreement") current and out of default over a twelve (12) month period.

Plaintiffs' timing in coming into Court for relief is due to the reason that Plaintiffs, through a third party Secure Homeowner Solutions ("SHS"), who has been in discussion with Defendant SLS about re-instating the Loan Agreement and SLS has invited Plaintiffs to present an initial deposit to pay down a portion of the unpaid principal and begin a repayment plan for the remaining portion of the unpaid principal balance of the Loan Agreement. In any event,

1  Defendants also lack authority to foreclose on the Loan Agreement because Plaintiffs' note was
2  not transferred into the Securities Trust before said Securities Trust closed—thus, beneficiary
3  U.S. Bank has no authority to foreclose on the Subject Property.

4  **II.    BACKGROUND**

5  Plaintiffs executed the Loan Agreement to refinance the Subject Property.  U.S. BANK
6  NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING
7  LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2 ("U.S. Bank") is allegedly the
8  beneficiary under the Deed of Trust based on an Assignment of Deed of Trust recorded on June
9  1, 2011 ("Assignment").  As alleged in the Complaint, the Note was not duly endorsed,
10  transferred, and delivered into the Securities Trust before it closed on June 21, 2007.  Thus, as
11  alleged in the Complaint, the Assignment of Deed of Trust did not actually assign Plaintiffs'
12  loan to U.S. Bank because the loan was not timely placed into the Securities Trust that is
13  identified in the Assignment.  Due to this error, Defendant U.S. Bank has no authority to sell the
14  Subject Property under the Deed of Trust, as it is not the purported beneficiary.

15  Plaintiffs, through the third party SHS, also discussed a plan to reinstate the Loan
16  Agreement on or about December 16, 2013, whereby Plaintiffs would make an initial deposit to
17  pay down approximately fifty percent (50%) of the unpaid principal balance and enter into a
18  twelve (12) month repayment plan to repay the remaining unpaid principal balance and bring
19  the Loan Agreement out of foreclosure.  However, to date, neither Plaintiffs nor SHS have
20  received any additional details on the terms of this repayment plan.  Declaration of Gary Koller
21  ("Koller Decl.") ¶ 9 .  Declaration of Samantha Hainline ("Hainline Decl.") ¶ 4,

22  **III.    THE STANDARD FOR INJUNCTIVE RELIEF IS SATISFIED**

23  Injunctive relief is appropriate when it appears that the party applying for relief is
24  entitled to the relief demanded, and all or parts of the relief consists in restraining the
25  commission or continuance of the act complained of.  (See *Code Civ. Proc.* §526(a).)  Courts
26  consider (1) the likelihood that the Plaintiff will prevail on the merits of the case at trial, and (2)
27  the interim harm the Plaintiff is likely to sustain if the injunction is denied compared to the
28

*Left margin (vertical):* CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

1  harm the Defendants are likely to suffer if the court grants the injunction. (See *Rights Site*
2  *Coalition v. Los Angeles Unified School District* (2008) 160 Cal.App.4th 336.)

3  **IV.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS AT TRIAL**

4          The trustee's sale and/or any further transfer of ownership or encumbrance must be
5  enjoined because the evidence elicited demonstrates that Plaintiffs will succeed on the merits at
6  trial. Plaintiffs, in good faith, filed a Complaint for Wrongful Foreclosure against Defendants
7  consisting of thirteen (13) causes of action including, among other allegations, violations of the
8  Homeowners Bill of Rights as codified at *Civil Code* sections 2923 et seq., unfair and deceptive
9  business practices in loan servicing, and unfair and deceptive business practices in the
10 foreclosure process, including wrongful foreclosure. As alleged in the Complaint, and based on
11 the facts described hereinabove, Plaintiffs have alleged that Defendants have no authority to
12 foreclose because the Securities Trust closed before Defendants attempted to assign the Loan
13 Agreement's note to U.S. Bank.

14         Moreover, Defendants also failed to contact Plaintiffs before they recorded the NOD on
15 the Subject Property. Rather, Plaintiffs contacted SLS first and SLS instructed Plaintiffs to fall
16 behind on their mortgage so that Plaintiffs could apply for a loan modification. Koller Decl. ¶
17 2. Here, Defendants failed to contact Plaintiffs before recording the NOD. Rather, Plaintiffs
18 initiated all contact and, once Plaintiffs contacted Defendants, defendant SLS either negligently
19 or fraudulently instructed Plaintiffs to default on the Subject Loan to apply for a modification.
20 Koller Decl. ¶ 3.

21         Defendants are also barred from foreclosing because the Loan Agreement's Note was
22 never pooled into the Securities Trust before said Securities Trust closed. As alleged in the
23 Complaint, the Securities Trust—a REMIC Trust—closed on June 21, 2007. Defendants
24 recorded an Assignment of Deed of Trust on June 1, 2011 ("Assignment") that assigned all
25 beneficial interest in the Loan Agreement from Mortgage Electronic Registration System, Inc.
26 ("MERS") as nominee for B.F. Saul, the original lender named in the Deed of Trust, to U.S.
27 Bank. Thus, the assignment was ineffective because it occurred after the Securities Trust
28 closed.

The borrower has standing to challenge a foreclosure sale on grounds that the loan assignment was void and, thus, that the foreclosure was not conducted at the direction of the correct party, despite the fact that the borrower was not a party to or a third party beneficiary of the assignment agreement. *Glaski v. Bank of America, National Association* (2013) 218 Cal.App.4th 1079, 1099. Furthermore, a trustee's attempt to accept a loan after the trust closing date is void when the trust was created by a pooling and servicing agreement that established a closing date for accepting loans and when accepting the loan would jeopardize the trust's status as a Real Estate Mortgage Investment Conduit ("REMIC"). *Glaski v. Bank of America, supra,* 218 Cal.App.4th 1079.

When the borrower disputes the note holder's standing to foreclose, the burden is on the holder of the note to demonstrate a chain of ownership that establishes the note holder is the true beneficiary under the deed of trust. *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375. Until the beneficiary offers proof that establishes it holds the beneficial interest under the deed of trust, the truthfulness of the contents of the assignment remain subject to dispute. *Id.* at 1375 (citing *StorMedia* 20 Cal.4th 499, 457, fn. 9). Here the Complaint disputes Defendants' authority to foreclose on the Subject Property because, as alleged in the Complaint, the Note was not timely assigned into the investment trust for which U.S. Bank is the trustee. Therefore, as alleged in the Complaint, the Assignment is invalid and U.S. Bank has no authority to foreclose on the Subject Property. Defendants must be restrained from foreclosing on the Subject Property unless they meet their burden to show that the Assignment is valid through in the course of this litigation.

Finally, equitable and promissory estoppel bar Defendants from foreclosing on the Subject Property at this time because Plaintiffs have received an offer from Defendant SLS to reinstate the Loan Agreement. Koller Decl. ¶¶ 7–8; Hainline Decl. ¶ 3. Under the doctrine of equitable estoppel, "a party who by his or her language or conduct leads another to do what the other would not otherwise have done **may not subject the other person to loss or injury** by disappointing the expectations upon which he or she acted." *Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488. Equitable estoppel applies to bar a party from acting to the other party's

CONSUMER LITIGATION LAW CENTER, APC

1  detriment when (1) the party to be estopped was apprised of the facts, (2) the party intended that
2  his or her conduct would be acted upon, or so acted that the party asserting the estoppel had a
3  right to believe it was so intended, (3) the other party was ignorant of the true state of facts, and
4  (4) the other party relied upon the conduct to his or her injury. *Strong v. County of Santa Cruz*
5  (1975) 15 Cal.3d 720, 725.

6        Here, Defendant SLS informed Plaintiffs of the fact that they could pay approximately
7  fifty percent (50%) of the outstanding balance under the Loan Agreement and subsequently pay
8  down the remaining unpaid amount of the Loan Agreement over the next twelve (12) months.
9  Koller Decl. ¶¶ 7–8; Hainline Decl. ¶ 3. SLS certainly intended for Plaintiffs to act on this
10  factual representation because Plaintiffs have a statutory right to re-instate under the Loan
11  Agreement. Plaintiffs were ignorant that SLS would then fail to provide Plaintiffs with any
12  concrete details or procedures to actually begin the process of re-instating the past due amount
13  under the Loan Agreement. Koller Decl. ¶ 9; Hainline Decl. ¶ 4. Plaintiffs then relied upon
14  SLS to provide the necessary information regarding the loan reinstatement process to his
15  detriment as SLS has now failed to provide this information up to the eve of the trustee's sale,
16  thereby preventing Plaintiffs from reinstating and instead foreclosing on the Subject Property.
17  Plaintiffs have been continually attempting to follow up with SLS to reinstate their loan and
18  make the 50% down payment, yet SLS, and now its counsel, have refused to respond to allow
19  Plaintiffs to enter into the reinstate plan they were offered. Koller Decl. ¶ 10. Plaintiffs are
20  ready, willing, and able to make the 50% down payment and enter into a written reinstatement
21  plan. Koller Decl. ¶ 11. Finally, Defendants' unreasonable delay has caused Plaintiffs' right of
22  redemption up to five business days prior to the trustee's sale date to expire despite the fact that
23  Plaintiffs were ready, willing, and able to enter into the reinstatement plan. Cal. *Civ. Code* §
24  2924(c)(e).

25        Defendants are further barred from conducting the trustee's sale based on promissory
26  estoppel. Under this doctrine, a promise that the promisor should reasonably expect to induce
27  action or forbearance by the promise and that does induce said action or forbearance becomes
28  binding if injustice can be avoided by enforcing the promise. *Kajima/Ray Wilson v. Los*

*Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310. Promissory estoppel requires (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed. *Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 124 Cal.App.4th 685, 692.

Here, and as discussed above, SLS promised a reinstatement plan to Plaintiffs on which Plaintiff relied in forbearing from taking other action to avoid foreclosure and attempting to formally enter into the reinstatement plan, which ultimately caused substantial detriment to Plaintiffs because they have been prevented from accepting the very reinstatement plan that they was offered and now face a trustee's sale that otherwise could have been avoided. Plaintiffs have been continually attempting to follow up with SLS to reinstate their loan and make the fifty percent (50%) down payment, yet SLS, and now its counsel, have refused to respond to allow Plaintiffs to enter into the reinstate plan they were offered. Koller Decl. ¶ 10. Plaintiffs are ready, willing, and able to make the fifty percent (50%) down payment and enter into a written reinstatement plan. Koller Decl. ¶ 11. Futhermore, Plaintiffs now face damages arising from loss of equity in their home as well as loss of the value of they payments they have made under the Loan Agreement because Defendants' unreasonable delay has caused Plaintiffs' right of redemption up to five business days prior to the trustee's sale date to expire despite the fact that Plaintiffs were ready, willing, and able to enter into the reinstatement plan. Cal. *Civ. Code* § 2924(c)(e).

Thus, Plaintiffs have standing to challenge the foreclosure based on the ineffective Assignment of the note after the Securities Trust's closing date and based on application of promissory and equitable estoppel to SLS's reinstatement plan offer and Plaintiffs' willingness and ability to enter into the reinstatement plan to save their home. Based on Defendants' error, Zieve, as the trustee, has no authority to sell the Subject Property on behalf of U.S. Bank, the purported beneficiary under the Assignment and Plaintiffs must be allowed to enter into a plan to reinstate the Loan Agreement.

///

///

7

**V.    PLAINTIFFS WILL LIKELY SUFFER IRREPARABLE INTERIM HARM IF INJUNCTIVE RELIEF IS DENIED; DEFENDANTS WILL NOT SUFFER INTERIM HARM**

In determining the appropriateness of injunctive relief, Plaintiffs' harm must be weighed relative to the harm Defendants will suffer from the outcome of the application for that relief. *Right Site Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 341. In California, an imminent foreclosure sale of real property (here, January 8, 2014) presumptively constitutes irreparable harm as a matter of law, thus establishing that portion of the requirement for a temporary restraining order. See *Wheat v. Thomas* (1930) 209 Cal. 306; Cal. *Code Civ. Proc.* § 3387. As a practical matter, Plaintiffs are unable to replace their home and, if the foreclosure sale is not enjoined, they will lose this unique property.

The interim harm Plaintiffs are likely to suffer if the injunction is denied is irreparable as a matter of law, as they will be losing the Subject Property. *Wheat v. Thomas, supra,* 209 Cal. 306. The consideration, then, is the interim harm Defendants will sustain if the injunction issues. It would be a stretch to find Defendants will suffer irreparable harm if the Subject Property is not sold on January 8, 2014. Clearly, if Defendants can succeed on the merits, they will obtain the property through a foreclosure sale and Defendants can resell in the future, suffering no actual harm. Additionally, Plaintiffs intend to keep the Subject Property after vindicating their rights. As such, their good-faith stewardship of the Subject Property is clearly in their best interest, as well as Defendants'.

**VI.   NO UNDERTAKING, OR AT MOST A NOMINAL UNDERTAKING, SHOULD BE REQUIRED**

No undertaking, or at most a nominal undertaking, should be required for the issuance of the temporary restraining order because no harm is more likely, absent the undertaking, than said harm would be with an undertaking. As noted above, Plaintiffs are already suffering a financial hardship that led them to apply for a modification to begin with, and they already have a strong incentive to care for the Subject Property as they want to maintain the Subject Property after the instant foreclosure dispute is resolved. To require Plaintiffs to post a large bond while

litigation is pending would, therefore, place an unreasonable burden upon them. It should also be noted that established case law holds that no undertaking is required for an interim restraining order. See *Biasca vs. Superior Court of California* (1924) 194 Cal. 366.

## VII.   PLAINTIFFS HAVE NOT PREVIOUSLY APPLIED TO A JUDICIAL OFFICER FOR SIMILAR RELIEF

California Rule of Court 3.1150 requires a party seeking injunctive relief to state whether the party has made a previous application for similar relief. Plaintiffs have not made a previous application to this Court for the same injunctive relief.

## VIII.   CONCLUSION

Plaintiffs request that this Court issue a temporary restraining order to enjoin the foreclosure sale on the Subject Property now set for January 8, 2014 at 1:30 p.m. Plaintiffs request a hearing on the order to show cause why Defendants and their employees, agents, and persons acting with them on their behalves should not be enjoined from transferring ownership of or further encumbering the Subject Property. Plaintiffs are asking this Court to stay all foreclosure proceedings and order the parties to enter into settlement negotiations for a period of time determined by the court with the end result of consummating a permanent workout solution beneficial to both parties.

Dated: January 7, 2014                              CONSUMER LITIGATION LAW CENTER, APC

By: _____
September J. Kaye, Esq.
Kimberly A. Moses, Esq.
Jeffrey J. Ogorek, Esq.
Attorney for Plaintiffs.
GARY KOLLER and CYNTHIA KOLLER

CONSUMER LITIGATION LAW CENTER, APC

9

1

**CONSUMER LITIGATION LAW CENTER, APC**

2  September J. Katje, Esq., State Bar No. 227896
   sk@consumerlitigationlawcenter.com

3  Kimberly A. Moses, Esq., State Bar No. 187619
   km@consumerlitigationlawcenter.com

4  Jeffrey J. Ogorek, Esq., State Bar 285927
   jjo@consumerlitigationlawcenter.com

5  100 North Citrus Ave., Suite 408
   West Covina, California 91791

6  (800) 787-5616.  Fax: (888) 909-7947

7  Attorney for Plaintiffs, GARY KOLLER and CYNTHIA KOLLER

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9             **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**01/07/2014** at 11:46:00 AM

Clerk of the Superior Court
By Eleanor Sutter, Deputy Clerk

10
11  GARY KOLLER, an individual, and
    CYNTHIA KOLLER, an individual,
12
                    Plaintiffs,
13
                    v.
14
15  SPECIALIZED LOAN SERVICING, LLC, a
    Delaware Limited Liability Company ; B.F.
16  SAUL MORTGAGE COMPANY, a
    Maryland Limited Liability Company; U.S.
17  BANK NATIONAL ASSOCIATION AS
    TRUSTEE RELATING TO CHEVY CHASE
18  FUNDING LLC MORTGAGE BACKED
    CERTIFICATES SERIES 2007-2; LAW
19  OFFICES OF LES ZIEVE; and all persons or
    entities unknown claiming any legal or
20  equitable right, title, estate, lien or interest in
    the property described in this complaint
21  adverse to Plaintiff's title thereto, and DOES
    1 through 25, inclusive,
22
23
                    Defendants.
24
25
26
27  ///
28

Case No.: 30-2013-00686182-CU-CO-CJC

DECLARATION OF GARY KOLLER IN
SUPPORT OF EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE

DATE:  January 8, 2014
TIME:   8:30 a.m.
DEPT.: C-18

**TRUSTEE SALE DATE:**
**January 8, 2014, at 1:30 p.m.**

CONSUMER LITIGATION LAW CENTER, APC

1

**DECLARATION OF GARY KOLLER IN SUPPORT OF EX PARTE APPLICATION**

I, Gary Koller, declare as follows:

I am the Plaintiff in the above action, and if called upon to testify to the matters in this declaration, I could, and would, competently testify as to all the facts set forth below:

1.    On or about April 19, 2007, I obtained an adjustable interest rate home mortgage loan secured by a Deed of Trust ("Loan Agreement") on my residence located at 3811 River Avenue, Newport Beach, California 92663 ("Subject Property").  I am informed, believe, and thereon allege that the Deed of Trust was recorded on May 4, 2007.

2.    In or around 2011, I contacted my servicer Specialized Loan Servicing, LLC ("SLS") to discuss loan modification options, at which point an agent from SLS instructed me to default on the Loan Agreement in order to be considered for a loan modification.

3.    Based on SLS's representations, I defaulted on the Loan Agreement and again contacted SLS to discuss a loan modification.  All contact with SLS was initiated solely by me and SLS never initiated contact with me to discuss loss mitigation or a loan modification.

4.    I am informed, believe, and thereon allege that Defendants, through their trustee Law Offices of Les Zieve ("Zieve") recorded a Notice of Default ("NOD") on my Property on April 12, 2013.

5.    On or about August 26, 2013 I hired a third party, Secure Homeowner Solutions ("SHS") to assist me with strategies to avoid foreclosure on the Subject Property.

7.    I am currently in discussions with SLS regarding potential options including reinstating my loan.

8.    I am informed, believe, and thereon allege that Zieve intends to conduct the trustee's sale on January 8, 2014, even though I communicated to SLS through SHS on or about December 16, 2013 to re-instate the Loan Agreement by making an initial deposit to pay down my principal balance and to then repay the remainder of my principal balance over a twelve (12) month period.

9.    However, to date, neither I, nor SHS, nor my counsel of record in the instant litigation have received any communication from SLS or its counsel of record regarding any additional information concerning the details of entering into said repayment plan.

2

**DECLARATION OF GARY KOLLER IN SUPPORT OF EX PARTE APPLICATION**

10.     I have been continually attempting to follow up with SLS to reinstate the Loan Agreement and make the fifty percent (50%) down payment, yet SLS, and now its counsel, have refused to respond to allow me to enter into the reinstatement plan they offered to me.

11.     Currently I am ready, willing, and able to make the fifty percent (50%) down payment and enter into a written reinstatement plan.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This document was executed this 8th day of January, 2014 at Newport Beach, California.

By: _____
Gary Koller

CONSUMER LITIGATION LAW CENTER, APC

3

DECLARATION OF GARY KOLLER IN SUPPORT OF EX PARTE APPLICATION

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

01/07/2014 at 11:46:00 AM

Clerk of the Superior Court
By Eleanor Sutter,Deputy Clerk

1 **CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq., State Bar No. 227896
2 sk@consumerlitigationlawcenter.com
Kimberly A. Moses, Esq., State Bar No. 187619
3 km@consumerlitigationlawcenter.com
100 North Citrus Ave., Suite 408
4 West Covina, California 91791
(800) 787-5616. Fax: (888) 909-7947
5
6 Attorney for Plaintiffs, GARY KOLLER and CYNTHIA KOLLER

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

10

11 GARY KOLLER, an individual. and       ) Case No.: 30-2013-00686182-CU-CO-CJC
12 CYNTHIA KOLLER, an individual,        )
                                         ) DECLARATION OF SAMANTHA
13         Plaintiffs,                   ) HAINLINE IN SUPPORT OF
                                         ) PLAINTIFFS'EX PARTE APPLICATION
14              v.                       ) FOR TEMPORARY RESTRAINING ORDER
                                         ) AND ORDER TO SHOW CAUSE
15 SPECIALIZED LOAN SERVICING, LLC, a    )
16 Delaware Limited Liability Company ; B.F. ) DATE: January 8, 2014
SAUL MORTGAGE COMPANY, a              ) TIME: 8:30 a.m.
17 Maryland Limited Liability Company; U.S. ) DEPT.: C-18
BANK NATIONAL ASSOCIATION AS          )
18 TRUSTEE RELATING TO CHEVY CHASE      ) **TRUSTEE SALE DATE:**
19 FUNDING LLC MORTGAGE BACKED          ) **January 8, 2014, at 1:30 p.m.**
CERTIFICATES SERIES 2007-2; LAW       )
20 OFFICES OF LES ZIEVE; and all persons or )
21 entities unknown claiming any legal or   )
equitable right, title, estate, lien or interest in )
22 the property described in this complaint )
adverse to Plaintiff's title thereto, and DOES )
23 1 through 25, inclusive,              )
24                                       )
          Defendants.                    )
25 _____ )
26
27
28

                        1
_____
DECLARATION OF LOURDES RIOS RE NOTICE TO DEFENDANTS

CONSUMER LITIGATION LAW CENTER, APC

I, Samantha Hainline, declare under penalty of perjury as follows:

1.    I am currently employed with Secure Homeowner Solutions ("SHS").  I have worked in this capacity since approximately February 2013.  My duties include reviewing and overseeing all files and submittals of loan modification applications.  I am familiar with the policies and procedures of our department in submitting documentation to letters.  I have personal knowledge of the foregoing.

2.    In or around June, 2013, Plaintiffs Gary Koller and Cynthia Koller ("Plaintiffs") retained SHS to assist them in seeking alternatives to foreclosure and assistance from their loan servicer, Specialized Loan Servicing LLC ("SLS").

3.    On or about December 16, 2013, SHS communicated with SLS on Plaintiffs' behalf and was informed by an SLS representative named Matt (ID# 11584) who informed SHS that Plaintiff could enter into a repayment plan whereby Plaintiffs would make an initial deposit of approximately fifty percent (50%) of the outstanding loan balance and repay the additional arrearages in monthly installments over the next twelve (12) months.

4.    To date, SHS has not received any additional details or formal agreement on the abovementioned repayment plan from SLS directly or through its counsel of record in the instant litigation.

5.    Furthermore, to date, SHS has not received any additional information as to whether the SLS, through its trustee Defendant Law Offices of Les Zieve, will postpone the trustee's sale currently scheduled for December 8, 2014 at 1:30 p.m.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 7, 2013                    By: _____
                                                Samantha Hainline
                                                Declarant

DECLARATION OF LOURDES RIOS RE NOTICE TO DEFENDANTS

CONSUMER LITIGATION LAW CENTER, APC

1  **CONSUMER LITIGATION LAW CENTER, APC**
   September J. Katje, Esq., State Bar No. 227896
2  sk@consumerlitigationlawcenter.com
   Kimberly A. Moses, Esq., State Bar No. 187619
3  km@consumerlitigationlawcenter.com
   Jeffrey J. Ogorek, Esq., State Bar No. 285927
4  jjo@consumerlitigationlawcenter.com
   100 North Citrus Ave., Suite 408
5  West Covina, California 91791
   (800) 787-5616.  Fax: (888) 909-7947
6
7  Attorney for Plaintiffs, GARY KOLLER and CYNTHIA KOLLER

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/07/2014** at 11:46:00 AM

Clerk of the Superior Court
By Eleanor Sutter, Deputy Clerk

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9        **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

10

11  GARY KOLLER, an individual, and          ) Case No.: 30-2013-00686182-CU-CO-CJC
12  CYNTHIA KOLLER, an individual,           )
                                             ) DECLARATION OF LAURA DASSORI RE
13              Plaintiffs,                   ) NOTICE TO DEFENDANTS IN SUPPORT
                                             ) OF PLAINTIFFS' EX PARTE
14         v.                                 ) APPLICATION FOR TEMPORARY
                                             ) RESTRAINING ORDER AND ORDER TO
15                                           ) SHOW CAUSE
    SPECIALIZED LOAN SERVICING, LLC, a       )
16  Delaware Limited Liability Company ; B.F. )
    SAUL MORTGAGE COMPANY, a                 ) DATE: January 8, 2014
17  Maryland Limited Liability Company; U.S.  ) TIME:  8:30 a.m.
    BANK NATIONAL ASSOCIATION AS             ) DEPT.: C-18
18  TRUSTEE RELATING TO CHEVY CHASE          )
    FUNDING LLC MORTGAGE BACKED              ) **TRUSTEE SALE DATE:**
19  CERTIFICATES SERIES 2007-2; LAW          ) **January 8, 2014, at 1:30 p.m.**
20  OFFICES OF LES ZIEVE; and all persons or )
    entities unknown claiming any legal or    )
21  equitable right, title, estate, lien or interest in )
    the property described in this complaint  )
22  adverse to Plaintiff's title thereto, and DOES )
23  1 through 25, inclusive,                  )
                                             )
24              Defendants.                   )
25  _____ )
26
27
28

                                    1
_____
             DECLARATION OF LAURA DASSORI RE NOTICE TO DEFENDANTS

I, Laura Dassori, declare as follows:

     I am a Paralegal, contracted by the Consumer Litigation Law Center, APC. September J. Katje is a member of the firm, and is the attorney for Plaintiff in this action. I have personal knowledge of the matters stated herein below, except those matters stated, or by their context indicate, that they are made upon information and belief, and as to those matters, I believe them to be true. If called upon to testify in this matter as to the matters set forth in this Declaration, I could and would competently testify thereto:

     1.     On January 7, 2014, at approximately 9:30 a.m. I called Nicole S. Dunn, Esq. of Wright, Finlay & Zak, attorney for, SPECIALIZED LOAN SERVICING, LLC at phone number (949) 477-5145. I spoke to Nicole and advised her that Gary Koller and Cynthia Koller would be presenting an (1) Ex Parte Application for Order to Show Cause and Temporary Restraining Order to prohibit Defendants from holding a foreclosure sale on the property located at, 3811 River Avenue, Newport Beach, CA 92663, and (2) order Defendants to show cause why a preliminary injunction enjoining such acts should not issue pending a trial in this action. Also that the hearing would be held on January 8, 2014, at 8:30 a.m., in the Central Justice Center of the Orange County Superior Court located at 700 Civic Center Drive West, Santa Ana, California 92701 in Department C-18. She requested that I email her a copy of all moving papers. I advised her that I would send them to her within an hour.

     2.     Nicole did not advise whether Defendant, SPECIALIZED LOAN SERVICING, LLC, intended to appear and oppose the application.

     3.     On January 7, 2014, at approximately 9:34 a.m. I called B.F. SAUL MORTGAGE COMPANY, at phone number (301) 986-6000 and spoke to Wanda. I advised Wanda that Gary Koller and Cynthia Koller would be presenting an (1) Ex Parte Application for Order to Show Cause and Temporary Restraining Order to prohibit Defendants from holding a

DECLARATION OF LAURA DASSORI RE NOTICE TO DEFENDANTS

foreclosure sale on the property located at, 3811 River Avenue, Newport Beach, CA 92663, and

(2) order Defendants to show cause why a preliminary injunction enjoining such acts should not

issue pending a trial in this action. Also that the hearing would be held on January 8, 2014, at

8:30 a.m., in the Central Justice Center of the Orange County Superior Court located at 700

Civic Center Drive West, Santa Ana, California 92701 in Department C-18. Wanda advised that

the portion of B.F. Saul that we are referring to was sold to Capital One and that she refused to

accept service. I advised her that the issues occurred prior to the sale to Capital One. Wanda still

refused to accept service.

   4.   Wanda did not advise whether Defendant, B.F. SAUL MORTGAGE

COMPANY, intended to appear and oppose the application.

   5.   On January 7, 2014, at approximately 9:30 a.m. I called Nicole S. Dunn, Esq. of

Wright, Finlay & Zak, attorney for U.S. BANK NATIONAL ASSOCIATION I spoke to Nicole

and advised her that Gary Koller and Cynthia Koller would be presenting an (1) Ex Parte

Application for Order to Show Cause and Temporary Restraining Order to prohibit Defendants

from holding a foreclosure sale on the property located at, 3811 River Avenue, Newport Beach,

CA 92663, and (2) order Defendants to show cause why a preliminary injunction enjoining such

acts should not issue pending a trial in this action. Also that the hearing would be held on

January 8, 2014, at 8:30 a.m., in the Central Justice Center of the Orange County Superior Court

located at 700 Civic Center Drive West, Santa Ana, California 92701 in Department C-18. She

requested that I email her a copy of all moving papers. I advised her that I would send them to

her within an hour.

   6.   Nicole did not advise whether Defendant, U.S. BANK NATIONAL

ASSOCIATION, intended to appear and oppose the application.

DECLARATION OF LAURA DASSORI RE NOTICE TO DEFENDANTS

7.      On January 8, 2014, at approximately 9:38 a.m. I called Timothy M. Ryan of LAW OFFICES OF LES ZIEVE at phone number (714) 848-7920 and spoke to Michelle. I advised Michelle that Gary Koller and Cynthia Koller would be presenting an (1) Ex Parte Application for Order to Show Cause and Temporary Restraining Order to prohibit Defendants from holding a foreclosure sale on the property located at, 3811 River Avenue, Newport Beach, CA 92663, and (2) order Defendants to show cause why a preliminary injunction enjoining such acts should not issue pending a trial in this action.  Also that the hearing would be held on January 8, 2014, at 8:30 a.m., in the Central Justice Center of the Orange County Superior Court located at 700 Civic Center Drive West, Santa Ana, California 92701 in Department C-18. Michelle requested that I fax her the moving papers to fax number (714) 908-2615. I then faxed her a copy of this notice and all moving papers.

8.      Michelle did not advise whether Defendant, LAW OFFICES OF LES ZIEVE, intended to appear and oppose the application.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 7, 2014                    By: _____
                                               Laura Dassori
                                               Declarant

DECLARATION OF LAURA DASSORI RE NOTICE TO DEFENDANTS

CONSUMER LITIGATION LAW CENTER, APC

1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Nicole S. Dunn, Esq., SBN 213550
   4665 MacArthur Court, Suite 280
3  Newport Beach, CA 92660
   Telephone: (949) 477-5050; Facsimile: (949) 477-9200
4
5  Attorneys for Defendants, SPECIALIZED LOAN SERVICING, LLC and U.S.
   BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE
6  FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2
7
8                    SUPERIOR COURT OF CALIFORNIA
9            COUNTY OF ORANGE – CENTRAL JUSTICE CENTER
10
11 GARY KOLLER, an individual, and          )  Case No.: 30-2013-00686182 CU CO CJC
   CYNTHIA KOLLER, an individual;           )
12                                          )  **OPPOSITION TO PLAINTIFFS' EX**
                  Plaintiffs,               )  **PARTE APPLICATION FOR**
13                                          )  **TEMPORARY RESTRAINING**
       vs.                                  )  **ORDER; MEMORANDUM OF POINTS**
14                                          )  **AND AUTHORITIES**
15 SPECIALIZED LOAN SERVICING, LLC, a       )
   Delaware Limited Liability Company; B.F. )  Date:      January 8, 2013
16 SAUL MORTGAGE COMPANY, a                 )  Time:      8:30 a.m.
   Maryland Limited Liability Company; U.S. )  Crtm.:     C-18
17 BANK NATIONAL ASSOCIATION AS             )
   TRUSTEE RELATING TO CHEVY CHASE )
18 FUNDING LLC MORTGAGE BACKED              )  *[Filed concurrently with the Declarations of*
19 CERTIFICATES SERIES 2007-2; LAW          )  *Michele Crampton and Nicole S. Dunn]*
   OFFICES OF LES ZIEVE; and all persons or )
20 entities unknown claiming any legal or   )
   equitable right, title, estate, lien or interest in )
21 the property described in this complaint  )
   adverse to Plaintiffs title thereto, and DOES 1 )
22 through 25, inclusive,                    )
                                            )
23                                          )
                  Defendants.               )
24                                          )
25 _____ )
26     TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR
27 ATTORNEYS OF RECORD:
28     Defendants, SPECIALIZED LOAN SERVICING, LLC ("SLS") and U.S. BANK
   NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING

                                   -1-

1  LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2 ("US Bank") (collectively

2  "Defendants") hereby submit their memorandum of points and authorities in opposition to

3  plaintiffs GARY KOLLER and CYNTHIA KOLLER ("Plaintiffs") Ex Parte Application for

4  Temporary Restraining Order ("Application") as follows:

5  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

6  **I.     INTRODUCTION AND RELEVANT FACTUAL BACKGROUND**

7        Plaintiffs brought this lawsuit and seek to enjoin Defendants from foreclosing on the real

8  property commonly known as 3811 River Ave., Newport Beach, CA 92663 to, essentially

9  attempt to continue to remain in possession of the real property at issue and shift focus onto

10  Defendants for Plaintiff's own loan default. However, an injunction can only issue when the

11  requirements of *Code of Civ. Proc.* §526 are met. In fact, the first requirement is the likelihood

12  that Plaintiff will prevail on the merits at trial, which is not met as discussed below. If a TRO or

13  an injunction should issue, it should be conditioned upon the issuance of a bond in the amount

14  of $177,234.50, pursuant to *Code of Civ. Proc.* §529

15        On or about May 4, 2007, Plaintiffs, Gary and Cynthia Koller borrowed $1,350,000.00

16  and executed a promissory note secured by a Deed of Trust (the "DOT") in favor of Defendant,

17  B.F. Saul Mortgage Company ("B.F. Saul") encumbering the real property located at 3811

18  River Ave., Newport Beach, California 92663 (the "Property"). [Declaration of Michele

19  Crampton filed in Opposition to Plaintiffs' Application for TRO filed in Case No. 30-2013-

20  00686182-CU-CO-CJC ("Crampton Decl.") ¶4 and Exh. A incorporated herein by reference].

21  On or around April 12, 2011, after Plaintiffs accrued $27,919.72 in Loan payment arrearages, a

22  Notice of Default was recorded initiating foreclosure proceedings against the Property.

23  [Crampton Decl. ¶5].

24        Plaintiffs applied for and received a loan modification on or around May 2011.

25  [Crampton Decl. ¶7]. However, SLS never advised Plaintiffs to default on their loan in order to

26  be reviewed for a loan modification contrary to the allegations in the ex parte application.

27  [Crampton Decl. ¶6]. As such, the Notice of Default was subsequently rescinded on or about

28  June 9, 2011. [Crampton Decl. ¶8]. An Assignment of Deed of Trust was recorded (the

"Assignment") on June 1, 2011, assigning the beneficial interest under the DOT to U.S. Bank

-2-

1    National Association As Trustee Relating To Chevy Chase Funding LLC Mortgage Backed

2    Certificates Series 2007-2 ("US Bank"). [Crampton Decl. ¶9 and Exh. B incorporated herein by

3    reference].

4          Despite receiving a loan modification, Plaintiffs defaulted under the terms of the Note,

5    Deed of Trust and loan modification agreement and have not made payments since May 2012.

6    [Crampton Decl. ¶10, 13; Cplt, ¶40]. On September 12, 2012, after Plaintiffs accrued

7    $31,434.42 in Loan payment arrearages, a Notice of Default ("NOD") was recorded initiating

·8   foreclosure proceedings against the Property.  [Crampton Decl. ¶11 and Exh. C incorporated

9    herein by reference]. As Plaintiffs failed to cure the default, a Notice of Sale ("NOS") recorded

10   on December 14, 2012 setting a sale date for January 8, 2013. [Crampton Decl. ¶12 and Exh. D

11   incorporated herein by reference].

12         Plaintiffs applied for a second loan modification in or around September 23, 2013,

13   which was denied on or about November 21, 2013. [Cplt, ¶48; Crampton Decl. ¶14 and Exh. E

14   incorporated herein by reference].

15         Plaintiffs appealed the denial of the second loan modification application on or about

16   December 6, 2013. [Crampton Decl. ¶15]. On or about December 19, 2013, SLS advised

17   Plaintiffs that their request for a second independent review of the denial of the loan

18   modification application determined that the findings of the initial denial letter have been

19   validated using the documentation provided and that Plaintiffs are not eligible for the loan

20   modification for which they applied. [Crampton Decl. ¶16 and Exh. F incorporated herein by

21   reference].

22         Plaintiffs allege that they "received an offer from Defendant SLS to reinstate the Loan

23   Agreement" wherein Plaintiffs would initially reinstate 50% of the unpaid principal balance and

24   thereafter enter into a 12 month repayment plan to repay the remaining unpaid principal

25   balance. [TRO Application 3:15-21, 5:23-24, 7:5-14]. However, SLS did not offer a

26   reinstatement plan to Plaintiffs or their representative(s) as alleged or any other type of

27   reinstatement plan. [Crampton Decl. ¶17,19]. Further, SLS did not provide any written

28   document to Plaintiffs or their representative(s) that SLS would accept fifty percent (50%) of

1  the unpaid principal balance and enter into a twelve (12) month repayment plant to repay the

2  remaining unpaid principal balance. [Crampton Decl. ¶18].

3         Plaintiffs' unpaid principal balance exceeds $98,128.12 which is the amount

4  reflected in the most recent reinstatement quote provided to Plaintiffs on or about November 8,

5  2013. [Crampton Decl. ¶20 and Exh. G incorporated herein by reference].

6  **II.     ARGUMENT**

7    A.   **<u>Standard of Review for Preliminary Injunction.</u>**

8         In deciding whether to issue a preliminary injunction, a trial court must evaluate two

interrelated factors:

9        1.   The likelihood that plaintiff will prevail on the merits of the underlying complaint at

10           trial; and

11        2.   The interim harm or irreparable injury that plaintiff is likely to sustain if the
         injunction is denied, as compared to the harm that the defendant is likely to suffer if

12           the preliminary injunction is issued. *White v. Davis* (2003) 30 Cal.4[th] 528, 554.

13  "The ultimate goal of any test to be used in deciding whether a preliminary injunction should

14  issue is to minimize the harm which an erroneous interim decision may cause. [Citation.]" *Id.*

15  (quoting *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73). Further, an injunction may

16  issue only if monetary damages cannot afford adequate relief or are extremely difficult to

17  ascertain. *Thayer Plymoth Center, Inc. v Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300,

18  306; See Code Civ. Proc. §526(a)(4)-(5).

19    B.  **<u>The Application Should Be Denied Because Plaintiffs Cannot Demonstrate
Likelihood Of Success On The Merits.</u>**

20        1.     **Plaintiffs' request is improper because the allegations contained in their
application are different than the allegations set forth in their Complaint.**

22         A preliminary injunction must not issue unless it is reasonably probable that the moving

23  party will prevail on the merits of the underlying complaint. *San Francisco Newspaper Printing*

24  *Co., Inc. v. Sup.Ct. (Miller)* (1985) 170 Cal.App.3d 438, 442; *White v. Davis* (2003) 30 Cal.4th

25  528, 554. A plaintiff cannot bring new allegations not contained in the complaint into their suit

26  by means of a motion for preliminary injunction. *Jayne v. Bosenko*, WL 4924936 (E.D.Cal.,

27  2010), at *6 ("[plaintiff] is not permitted to bootstrap new allegations into this case by way of a

28  motion for a preliminary injunction."); *Howard v. Nunley*, WL 14044278 (E.D.Cal., 2010), at

*2 ("If Plaintiff wishes to add new allegations to his complaint, he must either seek leave of

-4-

1    Court to amend his complaint or file a new complaint.")   Simply put, a plaintiff cannot

2    demonstrate that his or her claims are ultimately likely to succeed on the merits when the

3    allegations in the motion for a preliminary injunction are unconnected to the allegations in the

4    complaint. *Howard*, WL 14044278, at *2.

5         Based on Plaintiffs' ex parte notice, their application is premised on promissory

6    estoppel. [Application for TRO 6:25-7:26].   However, their Complaint does not contain a cause

7    of action for promissory estoppel and does not contain any reference to this alleged wrongdoing

8    by Defendants. Thus, the allegations contained in Plaintiffs' request are not pending before the

9    Court and, therefore, Plaintiffs cannot demonstrate the likelihood of success **on the merits of**

10   **their underlying Complaint**.   For this reason, Plaintiffs' application should be denied.

11        **2.    Plaintiffs' request constitutes a blatant misrepresentation of facts as it is
               evident that Defendants contacted Plaintiffs before recording the NOD and**

12        **SLS did not offer Plaintiffs a Reinstatement Plan as alleged.**

13        As an initial matter, SLS never advised Plaintiffs to default on their loan in order to be

14   reviewed for a loan modification contrary to the allegations in the ex parte application.

15   [Crampton Decl. ¶6].

16        Although not alleged it appear that Plaintiff is attempting to assert a claim for violation

17   of *Civ. Code* §2923.5 which requires the beneficiary, or its authorized agent to contact the

18   borrower, before a notice of default ("NOD") is filed, in person or by phone to "assess" the

19   borrower's financial situation and to "explore" options to prevent foreclosure. *Civ. Code*

20   §2923.5(a); *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 232. As explained in *Mabry*

21   *v. Superior Court*, "any 'assessment' must necessarily be simple-something on the order of,

22   'why can't you make your payments?'" and the "[e]xploration [is] limited to merely telling the

23   borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or

24   short sales)...." *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 232. Defendants have

25   more than satisfied these requirements by (1) modifying Plaintiffs' loan in May 2011 [Crampton

26   Decl. ¶7] before recording the NOD and NOS on September 12, 2012 and December 14, 2012,

27   respectively. [Crampton Decl. ¶11-12 and Exhs. C and D incorporated herein by reference].

28

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1    It is established that a lender has impliedly satisfied the requirements of section 2923.5

2  by modifying a borrower's loan. See, *Rosenfeld v. JPMorgan Chase Bank, N.A.* (2010) 732

3  F.Supp.2d 952, 962; *Ortiz. v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1166

4  (S.D.Cal.2009).  Thus, because Defendants modified Plaintiffs' loan in May 2011, the

5  requirements of section 2923.5 have been satisfied.  [Crampton Decl. ¶7, 11-12 and Exhs. C and

6  D incorporated herein by reference].

7    Relative to the alleged offer of the Reinstatement Plan, there is no reliable evidence that

8  SLS did so. SLS's documents do not reflect that SLS offered a reinstatement plan to Plaintiffs

9  or their representative(s) as alleged or any other type of reinstatement plan. [Crampton Decl.

10  ¶17,19]. Further, SLS did not provide any written document to Plaintiffs or their

11  representative(s) that SLS would accept fifty percent (50%) of the unpaid principal balance and

12  enter into a twelve (12) month repayment plant to repay the remaining unpaid principal balance.

13  [Crampton Decl. ¶18]. As this purported agreement seeks to change the natural terms of the

14  Note and Deed of Trust by changing when payments are due in order to stop the foreclosure sale

15  [Application for TRO 3:15-21], it comes within the statute of fraud. A contract coming within

16  the statute of frauds is invalid unless it is memorialized by a writing signed by the party to be

17  charged.  *Civil Code* § 1624. "A mortgage or deed of trust also comes within the statute of

18  frauds." *Secrest v. Security National Mortgage Loan Trust 2002–2*, 167 Cal.App.4th 544, 553;

19  *Civil Code* §1698(a); *Justo v. Indymac Bancorp, et al.,* 2010 WL 623715 (E.D.Cal. Feb. 19,

20  2010), [claim that defendants breached an oral contract to modify his loan and cancel the

21  foreclosure sale was barred by the Statute of Frauds]. Thus, the Plaintiffs' allegations of a

22  purported oral agreement and/or oral promise to provide a reinstatement plan to stop the

23  foreclosure are invalid.

24    Finally, Plaintiffs have no right to reinstate at this time. The right to reinstate expires

25  under California *Civil Code* § 2924c(e), the *reinstatement right* (to cure the default) terminates

26  five business days prior to the sale date—or on Jan. 1, 2014, a date now well past. Thereafter, a

27  debtor only has a *right to redeem* the property under *Civil Code* §§ 2903 and 2905. Plaintiffs

28  have not offered to tender the full amount of the default nor have they offered to redeem the

property.

-6-

**3.  Plaintiffs' have no standing to enforce securities transactions**

Plaintiffs allege that Defendants have no authority to foreclose because the "Securities trust closed before the Defendants attempted to assign the Loan Agreement's note to U.S. Bank." [App. Re TRO 4:21-28].  Plaintiffs are simply borrowers under a promissory note and not a party to any of these alleged agreements and has no standing to enforce any such agreements. *Bello v. Chase Home Finance*, 2011 WL 133351 (S.D. Cal. 2011). "Only a purchaser or seller of securities has standing to bring an action..." *Binder v. Gillespie*, 184 F.3d 1059, 1067 (9th Cir. 1999); See also *Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 664 F.2d 1194, 1196 (6th Cir.1981). "Even assuming Plaintiff's loan was ultimately sold into the secondary mortgage market, Plaintiff does not qualify as a purchaser or seller of the security." *Bello supra* at *1 (citing to *Harms v. Recontrust Co.*, 2010 WL 2573144 at *2 (N.D. Cal. 2010) and *Bukhari v. T.D. Serv. Co.*, 2010 WL 2762794 at *5 (D.Nev. 2010). On these grounds, Plaintiffs' claim fails.

Further, there is no requirement that the assignment of any rights and interests in a deed of trust be recorded *at all*. Civil Code, § 2934 ("assignment of the beneficial interest under a deed of trust *may* be recorded") (emphasis added).  Recording of an Assignment of the Deed of Trust serves to give Plaintiffs constructive notice of the assignment, but it is merely permissive, not mandatory. *Parcray v. Shea Mortg. Inc.*, 2010 WL 1659369, at *11-12.  No statute under the exhaustive procedures of *Civil Code* §2924, et seq. requires the Assignment to be recorded at any specific point in time, if at all. Plaintiffs' challenge to the foreclosure on this basis is simply not supported by the law. In *Fontenot v. Wells Fargo Bank, N.A.*,(2011), 198 Cal. App. 4th 256, just as in this case, the borrower/plaintiff alleged that improper assignments, transfers, and substitutions related to the deed of trust rendered the foreclosure sale invalid. The *Fontenot* Court addressed this scenario as follows:

> Even if MERS lacked authority to transfer the note, **it is difficult to conceive how plaintiff was prejudiced** by MERS's purported assignment... As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. **Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note** (see, e.g., *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7–8, 89 Cal.Rptr. 323. *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256.

-7-

1    As such, in *Fontenot*, the California Court of Appeal has adopted a "no harm, no foul" approach
2    when a borrower is not prejudiced by an irregularity in the foreclosure process. Here, Plaintiffs
3    fail to allege any prejudicial effect of *any* of the above claimed violations. Plaintiffs do not
4    claim that they were unable to obtain information regarding the default amount or that they were
5    presently capable of curing the default. At all times, Plaintiffs were on notice as to the party to
6    contact to cure the default, the fact of the default, and the date of the pending sale. Because
7    Plaintiffs fail to bring sufficient allegations of prejudice, they cannot challenge the foreclosure
8    proceedings on this basis.
9          Plaintiffs also rely upon *Glaski v. Bank of America, N.A.* (2013) 218 Cal.App.4th 1079,
10   1099, to support their claim that the "assignment was void and foreclosure was not conducted at
11   the direction of the correct party." [Application for TRO 5:1-9]. However, California District
12   Courts examining *Glaski* have found its reasoning to be flawed.
13         A majority of district courts in California have held that borrowers do not have standing
14   to challenge the assignment of a loan to the securitized trust because borrowers are not party to
15   the assignment agreement. *Patel* v. *Mortgage Electronic Registration Systems, Inc.,*
16   2013 WL 4029277 (N.D.Cal. Aug. 6, 2013); *Aniel* v. *GMAC Mortg., LLC,* 2012 WL 5389706 at
17   *4 (N.D.Cal. Nov. 2, 2012); *Ganesan* v. *GMAC Mortgage, LLC,* 2012 WL 4901440 at *4
18   (N.D.Cal. Oct. 15,2012) (citing cases); *Gilbert* v. *Chase Home Fin., LLC,* 2013 WL 2318890 at
19   *3 (E.D.Cal. May 28, 2013); *Boza* v. *Us. Bank Nat. Ass'n,* 2013 WL 5943160 at *5 (C.D. Cal.
20   Oct. 28, 2013). More importantly, however, other California Courts of Appeal have rejected
21   claims similar to those asserted in *Glaski* and by Plaintiffs here. *Jenkins* v. *JP Morgan
22   Chase Bank, NA.* (2013) 216 Cal.AppAth 497 (borrower does not have the right to bring a
23   preemptive judicial action to determine defendants' standing to foreclose and to enforce any
24   agreements relating to the securitization of their loan; foreclosing party need not have beneficial
25   interest in promissory note and deed of trust); *Siliga* v. *Mortgage Electronic Registration
26   Systems, Inc.* (2013) 219 Cal.App.4th 75 (borrowers lacked standing to complain about loan
27   servicer's and assignee's alleged lack of authority to foreclose on deed of trust where borrowers.
28         As the Southern District of California noted in *Diunugala* v. *JP. Morgan Chase Bank,
     NA.,* 2013 WL 5568737 at *8 (S.D.Cal. Oct. 3, 2013), "even if *Glaski* were correctly decided,

1  California courts have held that in order to state a claim challenging a foreclosure sale, 'it is not
2  enough for plaintiff to allege that the purported assignment of the note in the assignment of deed
3  of trust was ineffective. Instead, a plaintiff is required to allege that the [defendant] did not
4  receive a valid assignment of the debt in any manner.'" *Id.*, citing to *Fontenot v. Wells Fargo*
5  *Bank, N.A.*, 198 Cal.App.4th 256, 271-72 (2011); *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205
6  Cal.App.4th 1495, 1506 (2012). Here, Plaintiffs have not, and cannot, allege that the foreclosing
7  defendant did not receive a valid assignment of the debt in any manner. See, Application for
8  TRO and Complaint, generally.

9  **C.    Equitable Considerations Also Support The Denial of the TRO.**

10         In deciding whether to grant injunctive relief, a court evaluates "the relative harm to the
11  parties from issuance or non-issuance of the injunction." *Butt v. State of California* (1992) 4
12  Cal.4th 668, 677-78.  The Court should also deny Plaintiffs Motion because equitable principles
13  do not support postponement of the sale.

14         There is nothing else that can be done for Plaintiffs.  Defendants should not be precluded
15  from being able to foreclose on the Property, a remedy that was contractually agreed upon by
16  the Plaintiffs when they executed the loan documents.  Every day that the sale of the Property is
17  delayed, Defendants are precluded from recuperating at least part of the loan that was made to
18  Plaintiffs, while at the same time incurring costs associated with ownership of the Property,
19  such as taxes and insurance.  Because Defendants have been prejudiced long enough and
20  because Plaintiffs should not be allowed to enjoy their mortgage-free stay in the Property (and
21  should be required to pay rent and/or mortgage like other individuals in Orange County), the
22  Court should deny Plaintiffs' application and should allow Defendants to proceed with the
23  foreclosure sale.

24  **D.    If an Injunction is Issued, Plaintiffs Should be Required to Post a Bond.**

25         *Code of Civil Procedure* §529(a) requires Plaintiffs to post a bond in an amount
26  sufficient to "pay to the party enjoined such damages…as the party may sustain by reason of the
27  injunction, if the court finally declared that the applicant was not entitled to the injunction."
28  Case law further allows the Court to require the amount of the bond to reflect the "reasonably

-9-
OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1  foreseeable" damages of the restrained party caused by a wrongfully issued injunction. *Abba*
2  *Rubber Co. v. Seaquist (*1991) 235 Cal.App.3d 1, 14.  Reasonably foreseeable damages include
3  lost profits and attorney's fees incurred in an appeal of the preliminary injunction or in
4  defending against those causes of action upon which the preliminary injunctive relief had been
5  granted. *Id.* at 16.  **This requirement is jurisdictional – if the bond is not required or not**
6  **given, the injunction is void.** *Neumann v. Moretti* (1905) 146 Cal. 31; *Federal Automotive*
7  *Services v. Lane Buick Co.* (1962) 204 Cal.App.2d 689. In calculating the amount of damages
8  which may be sustained as a result of the issuance of an injunction, the Court must consider lost
9  profits and attorney's fees and expenses through trial. *Abba Rubber Co.*, supra, at 15-16.  In a
10  request for injunction pursuant to an action such as this, it is reasonable to assume that the
11  litigation may take over one year to be completed. Thus, the estimated damages are:

12      (1)   One year's worth of interest, at the legal rate of 10% per annum, on the Note's
13  unpaid debt of $1,172,345.72,[1] for a total of $117,234.57; **PLUS**

14      (2)   $60,000.00, which is the amount of Defendants' anticipated attorney's fees and
15  expenses for litigating this matter, which is expected to take more than a year to complete.
16  (Dunn Decl. ¶3). This estimate includes challenges to the pleadings, propounding and
17  responding to discovery, depositions, a motion for summary judgment and a jury trial. (Dunn
18  Decl. ¶ 3).

19      Based on the foregoing, if the Court is inclined to grant the Motion for Preliminary
20  Injunction, Defendants request that Plaintiff post a bond in the amount of $177,234.50, equaling
21  the sum of anticipated attorney's fees and costs incurred from this Motion through the
22  completion of trial, plus the interest for one year on the loan's unpaid balance. This bond is
23  necessary to protect Defendants from damages that they will suffer while the Preliminary
24  Injunction is in place.  Additionally, Defendants respectfully requests that the Court specify a
25  deadline in which Plaintiffs must post the requested bond.
26  ///
27  ///
28

[1] *See* Notice of Trustee's Sale, attached as Exhibit "D" to the Crampton Decl.

-10-

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1

### III.    CONCLUSION

2        For the foregoing reasons, Defendants respectfully requests that the application for

3    Temporary Restraining Order be denied.

4                                              Respectfully submitted,

5

6                                              WRIGHT, FINLAY & ZAK, LLP

7    Dated:  January 7, 2013        By:    _____

8                                              T. Robert Finlay, Esq
                                              Nicole S. Dunn, Esq.
9                                              Attorneys for Defendants, SPECIALIZED LOAN
                                              SERVICING, LLC and U.S. BANK NATIONAL
10                                             ASSOCIATION AS TRUSTEE RELATING TO
                                              CHEVY CHASE FUNDING LLC MORTGAGE
11                                             BACKED CERTIFICATES SERIES 2007-2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

## DECLARATION OF NICOLE S. DUNN, ESQ.

I, Nicole S. Dunn, declare and state as follows:

1.      I am an attorney at law duly licensed by the State of California to practice before the courts of the State.  I am an associate at the Law Offices of Wright, Finlay & Zak, LLP, attorneys of record for Defendants Defendants, SPECIALIZED LOAN SERVICING, LLC ("SLS") and U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2 ("US Bank") (collectively "Defendants")  in this action.  I am one of the attorneys with primary responsibility for handling this matter and, as such, I have personal knowledge of the facts set forth herein and if called upon to testify, I would and could do so truthfully and competently.

2.      I submit this declaration in support of Defendants Opposition to Plaintiffs' Ex Parte Application for TRO and OSC re Preliminary Injunction.

3.      If this matter goes to trial, Defendants' attorney fees and costs would be at least $60,000.00.  This estimate includes challenges to the pleadings, propounding and responding to discovery, depositions, a motion for summary judgment and a jury trial, which will take more than a year to complete.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 7th day of January, 2013, at Newport Beach, California.

Nicole S. Dunn, Declarant

-12-

**PROOF OF SERVICE**

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On January 7, 2014, I served the within **OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** on all interested parties in this action as follows:

| September J. Katje, Esq.<br>Kimberly A. Moses, Esq.<br>Jeffrey J. Ogorek, Esq.<br>Consumer Litigation Law Center, APC<br>100 North Citrus Avenue, Suite 408<br>West Covina, CA 91791<br>*Attorney for Plaintiffs* | Timothy M. Ryan, Esq.<br>Stephen D. Britt, Esq.<br>Law Offices of Les Zieve<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>*Attorneys for Defendant Law Offices of Les Zieve* |
|---|---|

[ ]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[X]   (BY ONE LEGAL FILE AND SERVE) I caused the document(s) to be e-served through One Legal File and Serve, as Ordered by the Court.

[ ]   (BY OVERNIGHT EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

[X]   (State ) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 7, 2014, at Newport Beach, California.

Gretchen Grant

PROOF OF SERVICE

1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Nicole S. Dunn, Esq., SBN 213550
3  4665 MacArthur Court, Suite 280
   Newport Beach, CA 92660
4  Telephone: (949) 477-5050; Facsimile: (949) 477-9200

5  Attorneys for Defendants, SPECIALIZED LOAN SERVICING, LLC and U.S.
6  BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE
   FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2
7

8                    SUPERIOR COURT OF CALIFORNIA

9            COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

10

11 GARY KOLLER, an individual, and          ) Case No. 30-2013-00686182-CU-CO-CJC
   CYNTHIA KOLLER, an individual;           )
12                                          )
13            Plaintiffs,                   ) DECLARATION OF
                                            ) ___Michele Crampton_____ IN
14    vs.                                   ) SUPPORT OF DEFENDANTS'
                                            ) OPPOSITION TO PLAINTIFFS' EX
15 SPECIALIZED LOAN SERVICING, LLC, a       ) PARTE APPLICATION FOR
16 Delaware Limited Liability Company; B.F. ) TEMPORARY RESTRAINING ORDER
   SAUL MORTGAGE COMPANY, a                 ) AND ORDER TO SHOW CAUSE RE
17 Maryland Limited Liability Company; U.S. ) PRELIMINARY INJUNCTION
   BANK NATIONAL ASSOCIATION AS             )
18 TRUSTEE RELATING TO CHEVY CHASE          ) Date:     January 8, 2013
19 FUNDING LLC MORTGAGE BACKED              ) Time:     8:30 a.m.
   CERTIFICATES SERIES 2007-2; LAW          ) Crtm.:    C-18
20 OFFICES OF LES ZIEVE; and all persons or )
   entities unknown claiming any legal or   )
21 equitable right, title, estate, lien or interest in ) [Filed concurrently with Opposition to Ex Parte
22 the property described in this complaint  ) Application for TRO]
   adverse to Plaintiffs title thereto, and DOES 1 )
23 through 25, inclusive,                    )
                                            )
24            Defendants.                   )
                                            )
25 _____ )

26    I, ___Michele Crampton_____ declare and state as follows:

27    1.  I am a ___Assistant Vice President_____ for SPECIALIZED LOAN SERVICING, LLC

28

                                           1.
   _____
   OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
   ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   ("SLS"), servicer and attorney-in-fact for Defendant U.S. BANK NATIONAL ASSOCIATION

2   AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED

3   CERTIFICATES SERIES 2007-2 ("US Bank"). As a __Assistant Vice President__, I work

4   directly with US Bank's assets, including the Property located at 3811 River Ave., Newport

5   Beach, CA 92663 (the "Property"). According to the books and records the facts set forth

6   herein and if called upon to testify thereto, I would and could do so truthfully and competently.

7   I am authorized to make this Affidavit for and on behalf of US Bank.

8       2.  SLS maintains a computer database (the "Loan Records") of acts, transactions,

9   payments, communications, escrow account activity, disbursements, events, and analyses (the

10   "Loan Transactions") with respect to the mortgage loans which SLS services.  The information

11   described herein and referenced below is found in the business records of said servicing agent.

12   The entries in those records are made at the time of the events and conditions they describe

13   either by people with first-hand knowledge of those events and conditions or from information

14   provided by people with such first-hand knowledge. Recording such information is a regular

15   practice of the servicing agent's regularly conducted business activities.  Affiant has access to

16   the Loan Records with respect to the subject loan, and has knowledge of how they are

17   maintained.  Based upon those records I have gained knowledge of the facts set forth herein and,

18   if called upon as a witness to testify, I could and would competently testify as to those facts

19   under penalty of perjury.

20       3.  I submit this declaration in support of SLS and US Bank's Opposition to Plaintiffs'

21   Application for a TRO and OSC re Preliminary Injunction.

22       4.  The Loan Records reflect that on or about May 4, 2007, Plaintiffs, Gary and Cynthia

23   Koller borrowed $1,350,000.00 and executed a promissory note secured by a Deed of Trust (the

24   "DOT") in favor of Defendant, B.F. Saul Mortgage Company ("B.F. Saul") encumbering the

25   real property located at 3811 River Ave., Newport Beach, California 92663 (the "Property").

26   The Deed of Trust recorded in the Orange County Recorder's Office on May 4, 2007 as

27   Instrument No.: 2007000293050 and is attached as **Exhibit "A"** hereto.

28       5.  The Loan Records reflect that on or around April 12, 2011, after Plaintiffs

2

OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   accrued $27,919.72 in Loan payment arrearages, a Notice of Default was recorded initiating

2   foreclosure proceedings against the Property. The Notice of Default recorded in the Orange

3   County Recorder's Office on April 12, 2011 as Instrument No.: 2011000186908.

4         6.     The Loan Records reflect SLS never advised Plaintiffs to default on their loan in

5   order to be reviewed for a loan modification.

6         7.     Plaintiffs received a loan modification on or around May 2011.

7         8.     As such, the Notice of Default was rescinded on or about June 9, 2011. The

8   Notice of Rescission recorded in the Orange County Recorder's Office on June 9, 2011 as

9   Instrument No.: 2011000284108.

10        9.  The Loan Records reflect that US Bank became the assigned beneficiary on June 1,

11  2011. The Assignment recorded in the Orange County Recorder's Office on June 1, 2011 as

12  Instrument No.: 2011000271050 and is attached as **Exhibit "B"** hereto.

13        10. The Loan Records reflect that Plaintiffs defaulted under the terms of the Note,

14  Deed of Trust and loan modification agreement on or about September 2012.

15        11.  The Loan Records reflect that on September 12, 2012, a Notice of Default ("NOD")

16  was recorded.  A true and correct copy of the NOD recorded in the Orange County Recorder's

17  Office on September 12, 2012 as Instrument No.: 2012000532930 is attached as **Exhibit "C"**

18  hereto.

19        12. The Loan Records reflect that on December 14, 2012, a Notice of Trustee's Sale

20  ("NOTS") was recorded.  A true and correct copy of the NOS recorded in the Orange County

21  Recorder's Office on December 14, 2012 as Instrument No.: 2012000778216 is attached as

22  **Exhibit "D"** hereto.

23        13. The Loan Records reflect that Plaintiffs have not made any payments on this loan

24  since May 2012.

25        14. The Loan Records reflect that Plaintiffs applied for a second loan modification in or

26  around September 23, 2013 which was denied on or about November 21, 2013.  A true and

27  correct copy of the Denial Letter is attached hereto as **Exhibit "E."**

28        15. The Loan Records reflect that on or about December 6, 2013,

3

OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING<br>ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  Plaintiffs appealed the denial of the loan modification application.

2      16. The Loan Records reflect that on or about December 19, 2013, SLS advised

3  Plaintiffs that their request for a second independent review of the denial of the loan

4  modification application determined that the findings of the initial denial letter have been

5  validated using the documentation provided and that Plaintiffs are not eligible for the loan

6  modification for which they applied. A true and correct copy of the December 19, 2013 Letter is

7  attached hereto as **Exhibit "F."**

8      17. The Loan Records reflect that SLS did not offer a reinstatement plan to Plaintiffs or

9  their representative(s) wherein SLS would accept fifty percent (50%) of the unpaid principal

10  balance and enter into a twelve (12) month repayment plant to repay the remaining unpaid

11  principal balance.

12      18. The Loan Records reflect that SLS did not provide any written document to

13  Plaintiffs or their representative(s) that SLS would accept fifty percent (50%) of the unpaid

14  principal balance and enter into a twelve (12) month repayment plant to repay the remaining

15  unpaid principal balance.

16      19. The Loan Records reflect that SLS did not offer any type of reinstatement plan

17  whatsoever to Plaintiffs in or around December 2013.

18      20. The Loan Records reflect that the unpaid principal balance exceeds $98,128.12

19  which is the amount reflected in the most recent reinstatement quote provided to Plaintiffs on or

20  about November 8, 2013. A true and correct copy of the November 8, 2013 Letter is attached

21  hereto as **Exhibit "G."**

22      I declare under penalty of perjury under the laws of the State of ~~California~~ Colorado that the

·23  foregoing is true and correct. Executed this 7th day of January, 2014, at Highlands Ranch

24  (location).

25      **Michele Crampton** Declarant

26      **Assistant Vice President**

27

28

4

OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

EXHIBIT "A"

Branch :F7I,User :TZ12                           Comment:                                    Station Id :PF9R

FIDELITY NATIONAL TITLE

Recording Requested By:

Return To:
Document Control Dept.
7501 Wisconsin Avenue
Bethesda, MD 20814

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   72.00

2007000293050 04:12pm 05/04/07
104 79 D11 23
0.00 0.00 0.00 0.00 0.00 66.00 0.00 0.00 0.00

Prepared By:
Allison Rivers, Loan Closer
B. F. Saul Mortgage Company
333 South Anita Drive
ORANGE, CA 92868

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

MIN 1000153-0567013321-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 19, 2007 ,
together with all Riders to this document.
(B) "Borrower" is GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS
   JOT TENANTS

Borrower's address is 3811 RIVER AVENUE, Newport Beach, CA 92663
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is B. F. Saul Mortgage Company

Lender is a corporation
organized and existing under the laws of the State of Maryland

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3005  1/01
®-6A(CA) (0207).01
Page 1 of 16                    Initials: _____
   VMP Mortgage Forms, Inc.

15159972                                                                 567013321

ORANGE,CA                          Page 1 of 23              Printed on 12/19/2013 12:42:05 AM
Document: TD 2007.293050

Branch :F7I,User :TZ12                     Comment:                                    Station Id :PF9R

Lender's address is 7501 Wisconsin Avenue, Bethesda, MD 20814

(D) "Trustee" is Chevy Chase Bank, F.S.B.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated April 19, 2007 The Note states that Borrower owes Lender One Million Three Hundred Fifty Thousand and 00/100                                                                           Dollars (U.S. $ 1,350,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

-6A(CA) (0207).01                     Page 2 of 15                     Form 3005  1/01

15159972                                                                567013321
                                                          MIN  1000153-0567013321-8

ORANGE,CA                              **Page 2 of 23**                Printed on 12/19/2013 12:42:05 AM
Document: TD 2007.293050

Branch :F7I,User :TZ12                    Comment:                              Station Id :PF9R

Order No. 30140610

**EXHIBIT "ONE"**

Lot 8 in Block 138 of River Section, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 4, Page(s) 25 of Miscellaneous Maps, in the office of the County Recorder of said County.

Assessor's Parcel No: 423-308-01

2                                    (Rev. 11/17/04)

ORANGE,CA                    Page 3 of 23            Printed on 12/19/2013 12:42:05 AM
Document: TD 2007.293050

Branch :F7I,User :TZ12                    Comment:                              Station Id :PF9R

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                        of                        Orange                        :
[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT A

SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:                                        which currently has the address of
3811 RIVER AVENUE                                                                    [Street]
                Newport Beach                        [City], California 92663        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-GA(CA) (0207).01                        Page 3 of 15        Initials: ___        Form 3005  1/01

15159972                                                                    567013321
                                            MIN  1000153-0567013321-8

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207).01                    Page 4 of 15        Initials: [signature]        Form 3006   1/01

15159972                                                              567013321
                                                         MIN  1000153-0567013321-8

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-GA(CA) (0207).01                    Page 5 of 16          Initials          Form 3005   1/01

15159972                                                         567013321
                                             MIN   1000153-0567013321-8

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: [handwritten initials]

-6A(CA) (0207).01                    Page 6 of 16                              Form 3005  1/01

15159972                                                                      567013321
                                                     MIN  1000153-0567013321-8

Branch :F7I,User :TZ12                    Comment:                                      Station Id :PF9R

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207).01                    Page 7 of 16          Initials:                    Form 3005  1/01

15159972                                                          567013321
                                                    MIN  1000153-0567013321-8

Branch :F7I,User :TZ12                     Comment:                               Station Id :PF9R

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP®-6A(CA) (0207).01                    Page 8 of 16              Initials: _____     Form 3005   1/01

15159972                                                                       567013321
                                                   MIN  1000153-0567013321-8

Branch :F7I,User :TZ12            Comment:                              Station Id :PF9R

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(CA) (0207).01          Page 9 of 15          Initials: _____          Form 3005   1/01

15159972                                            567013321
                              MIN  1000153-0567013321-8

Branch :F7I,User :TZ12                    Comment:                                    Station Id :PF9R

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(CA) (0207).01                          Page 10 of 15              Initials: _____          Form 3005   1/01

15159972                                                                        567013321
                                                         MIN   1000153-0567013321-8

Branch :F7I,User :TZ12                    Comment:                              Station Id :PF9R

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-SA(CA) (0207).01                    Page 11 of 15          Initials: _____          Form 3005  1/01

15159972                                                              567013321
                                                   MIN   1000153-0567013321-8

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207).01                         Page 12 of 16        Initials:              Form 3005  1/01

15159972                                                                   567013321
                                                    MIN   1000153-0567013321-8

Branch :F7I,User :TZ12                    Comment:                                    Station Id :PF9R

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

-6A(CA) (0207).01                    Page 13 of 15                         Form 3005   1/01

15159972                                                          567013321
                                                     MIN   1000153-0567013321-8

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   GARY R. KOLLER              -Borrower

_____          _____ (Seal)
                                   CYNTHIA D. KOLLER           -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                           -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                           -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                           -Borrower

-6A(CA) (0207).01              Page 14 of 15              Form 3005  1/01

15159972                                        567013321
                                    MIN  1000153-0567013321-8


ORANGE,CA                     Page 15 of 23          Printed on 12/19/2013 12:42:08 AM
Document: TD 2007.293050

Branch :F7I,User :TZ12                          Comment:                                        Station Id :PF9R

State of California
County of *Orange*                                    } ss.

On      *April 21, 2007*           before me, *Diana Alanis, Notary Public*

                                                                        personally appeared

        *Gary R. Koller, Cynthia D. Koller*

                                                           , ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                    *Diana Alanis*                        (Seal)

DIANA ALANIS
Commission # 1436081
Notary Public - California
Riverside County
My Comm. Expires Aug 16, 2007

Initials: _____                          Form 3005  1/01

-6A(CA) (0207).01        Page 15 of 16

15159972                                        567013321
                                    MIN  1000153-0567013321-8

ORANGE,CA                      Page 16 of 23            Printed on 12/19/2013 12:42:08 AM
Document: TD 2007.293050

Branch :F7I,User :TZ12                    Comment:                              Station Id :PF9R

# ADJUSTABLE RATE RIDER

(5 Year Payment Option / 1 Month LIBOR Index / Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19th  day of April
2007   , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note
(the "Note") to B. F. Saul Mortgage Company(the "Lender") of the
same date and covering the Property described in the Security Instrument and located at:

3811 RIVER AVENUE, Newport Beach, CA 92663
[Property Address]

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES AND
DECREASES TO MY MONTHLY PAYMENT AND MY INTEREST RATE ARE
LIMITED. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER
THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN
THE LIMIT STATED IN THE NOTE. A BALLOON PAYMENT MAY BE DUE
AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made
in the Security Instrument, Borrower and Lender further covenant and agree as follows:

2.  INTEREST
(A) Interest Rate
Interest will be charged on unpaid principal, including any deferred interest added
to the unpaid principal (as described in Section 3 (C) below), until the full amount of
principal has been paid. Until the first Interest Rate Change Date (as defined in Section
2 (B) below), I will pay interest at a yearly rate of     8.250% The interest rate I
will pay may change monthly.
The interest rate required by this Section 2 is the rate I will pay both before and
after any default described in Section 8 (B) of the Note.
(B) Interest Rate Change Dates
The interest rate I will pay may change on the first day of June, 2007
and on that day every month thereafter. Each date on which my interest rate could
change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date.
(C) Interest Rate Limits
My interest rate will never be greater than 19.900%     . My interest rate will
never be less than the Margin as set forth in Section 2 (E) below.

Page 1 of 6

567013321      MIN  1000153-0567013321-8

SFXC25RD ( 115 )     Rev. 7/3/00
15159973

Branch :F7I,User :TZ12                    Comment:                                 Station Id :PF9R

   (D) The Index
   Beginning with the first Interest Rate Change Date, my interest rate will be based
on an Index. The "Index" is the one month London Interbank Offered Rate (LIBOR) as
published in *The Wall Street Journal*. The most recent Index figure available as of the
first business day after the twenty-fifth day of the month immediately preceding the
month in which the Interest Rate Change Date occurs is called the "Current Index."
   If the Index or any Index previously substituted under this Section 2 (D) is no
longer available, or is otherwise unpublished, the Note Holder may choose a new Index
and a new Margin to result in a rate similar to the rate in effect at that time which is
based upon comparable information. The Note Holder will give me notice of the choice.
   (E) Calculation of Interest Rate Changes
   Before each Interest Rate Change Date, the Note Holder will calculate my new
interest rate by adding Two and 950/1000
percentage points ( 2.950% ) (the "Margin") to the Current Index. The Note
Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the interest rate limit stated in Section 2 (C)
above, the rounded amount will be my new interest rate (the "Fully Indexed Rate") until
the next Interest Rate Change Date.

3.   PAYMENTS
   (A) Time and Place of Payments
   I will make my monthly payments, as described in Sections 3 (B) through (F)
below, on the first day of each month, but no sooner than thirty (30) days before each
payment's due date, beginning on June 1, 2007      . I will make these
payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under the Note.  My monthly payments will be
applied to interest before principal.  If, on  May 1, 2037              , I still owe
amounts under the Note, I will pay those amounts in full on that date, which is called
the "Maturity Date."  I will make my monthly payments at
P.O. Box 17000, Baltimore, MD 21297-1000
, or at a different place if required by the Note Holder.
   (B) Minimum Payment
   As of the date of the Note, my initial required "Minimum Payment" is
$ 5,091.73          .  Unless the maximum principal balance is reached as set forth in
Section 3 (F) because of deferred interest, this amount will remain the same for the first
60 monthly payments due under the Note.  Thereafter, my Minimum Payment is subject
to change as described in detail below.  Notwithstanding the payment options set forth
in Section 3 (E) below, I must make at least the Minimum Payment each month.
                              Page 2 of 6

     567013321       MIN  1000153-0567013321-8

         5FXC2SRD ( 115 )        Rev. 7/3/06
         15159973

Branch :F7I,User :TZ12                    Comment:                                    Station Id :PF9R

My initial required Minimum Payment was calculated to equal an amount that would
have been sufficient to repay the unpaid principal I owe in full on the Maturity Date in
substantially equal payments using a minimum payment rate of   2.150%      in lieu
of the actual interest rate.  This minimum payment rate is not the amount of interest that
will be charged on my loan, but rather was used solely for calculating the initial
required Minimum Payment.

    (C) Additions/Reductions to My Unpaid Principal

My initial and future required Minimum Payments may be less than the amount of
the interest charged during that month.  If I choose to make only the Minimum Payment
when that amount is less than the interest due, the Note Holder will subtract the amount
of my payment from the amount of the interest due and will add the difference to my
unpaid principal.  This difference is known as "Deferred Interest."  The Note Holder
also will charge interest each month on any Deferred Interest that continues to be part of
my unpaid principal balance.  The interest rate on the Deferred Interest added to
principal will be the rate set forth in Section 2 of the Note.

    (D) Payment Changes

My Minimum Payment will change under the following circumstances:

    (i)  Payment Change Dates.

My monthly Minimum Payment may change on the first day of   June, 2012
, and on that same day every 12th month thereafter.  Each of these dates is
called a "Payment Change Date."  Before each Payment Change Date, the Note Holder
will calculate the amount of the monthly payment that would be sufficient to repay my
unpaid principal in full on the Maturity Date in substantially equal installments at my
new interest rate calculated pursuant to Section 2 (E) above. My new monthly Minimum
Payment will be set equal to the recalculated amount except that my new Minimum
Payment will not be more than 7.500 percent greater or less than the amount of the last
monthly payment that was due before the applicable Payment Change Date.

    (ii)  Adjustment Dates.

Notwithstanding Section 3 (D) (i) above, on the 1st Payment Change Date and
on each 5th Payment Change Date thereafter, my Minimum Payment will be adjusted as
explained above, except that the described 7.500 percent limitation will not apply.

    (iii)  Other Changes.

My monthly payment may also change as described in Section (F) below.

Page 3 of 6

567013321      MIN   1000153-0567013321-8

    5FXC25RD ( 115 )      Rev. 7/3/06
    15159973

Branch :F7I,User :TZ12                    Comment:                                   Station Id :PF9R

**(E) Payment Options**

Additional payment options, such as: (i) a fully-amortizing payment (i.e., a payment that would be sufficient to repay the unpaid principal balance in full on the Maturity Date in substantially equal installments at the current Fully Indexed Rate); (ii) an interest-only payment (i.e., a payment equal to the interest accrued on the principal balance at the Fully Indexed Rate); and, (iii) a 15-year amortization option, may, at the Note Holder's discretion, be shown on my monthly statement.  These payment options are shown for my convenience and may change each month based on changes in the Index (as described in Section 2 (D) of the Note) and changes in the amount of my principal balance.  Although none of these optional payments is required, a timely payment made in accordance with any payment option shown on my monthly statement will be deemed to be in compliance with the terms of the Note.  In all events, a payment option offered on my monthly statement will never be less than my Minimum Payment.

**(F) Payment Limitations**

In all events, my unpaid principal balance can never exceed a maximum of 115 percent of the principal amount I originally borrowed (the "Maximum Amount").  If, based upon the assumption that I will continue to make my current Minimum Payment, the Note Holder determines that making my current Minimum Payment will cause my unpaid principal balance to exceed the Maximum Amount, then the Note Holder may calculate a new monthly Minimum Payment to prevent my principal balance from doing this.  Thereafter, until otherwise changed in accordance with the terms of this Note, my new monthly Minimum Payment will be a fully-amortizing payment calculated in accordance with Section 3 (E) (i).

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my Minimum Payment before the effective date of any change.  The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of the Note, and the payment amount applicable to the loan.  The notice will also include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Note Holder fails to make an adjustment to the interest rate or

Page 4 of 6

567013321      MIN   1000153-0567013321-8

SFXC2SRD ( 115 )          Rev. 7/3/06
15159973

payment amount as described in the Note, regardless of any notice requirement, I agree that Note Holder may, after discovery of such failure, then make the adjustment as if it had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid principal.

6.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

The Section of the Security Instrument titled "Transfer of the Property or Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.  Lender shall also not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an Assumption Agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and Security Instrument.  Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.  If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Page 5 of 6

567013321        MIN   1000153-0567013321-8

5FXC2SRD ( 115 )        Rev. 7/3/06
15159973

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Adjustable Rate Rider.

_____ 4-21-07 ____(Seal)
GARY R. KOLLER                          Date

_____(Seal)
                                         Date

_____(Seal)
                                         Date

_____(Seal)
                                         Date

Page 6 of 6

567013321      MIN  1000153-0567013321-8

5FXC25RD ( 115 )     Rev. 7/3/06
15159973

Branch :F7I,User :TZ12                    Comment:                                    Station Id :PF9R

GOVERNMENT CODE 27361-7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY ACKNOWLEDGEMENT
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

NAME OF NOTARY: Diana Alanis

COMMISSION #: 1435081

COUNTY IN WHICH BOND IS FILED: Riverside

DATE COMMISSION EXPIRES: Aug 15, 2007

MANUFACTURER / VENDOR NO.: NNA1

_____            DATE: 4/25/07
Fidelity National Title

PLACE OF EXECUTION:   TUSTIN, CA.

ORANGE,CA                          Page 23 of 23              Printed on 12/19/2013 12:42:10 AM
Document: TD 2007.293050

EXHIBIT "B"

Branch :F7I,User :TZ12                    Comment:                                      Station Id :PF9R

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||| **9.00**

**2011000271050 01:51pm 06/01/11**

85 404 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Requested and Prepared by:
Law Offices of Les Zieve

When Recorded Mail To:

Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

| Loan No.: 1004706217 | TS No: 11-14248 |
|---|---|

## ASSIGNMENT
## OF DEED OF TRUST

110197462

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage
Backed Certificates Series 2007-2**

all beneficial interest under that certain Deed of Trust dated: 4/19/2007 executed by GARY R. KOLLER
AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS, as Trustor(s), to CHEVY
CHASE BANK, F.S.B., as Trustee, and recorded as Instrument No. 2007000293050, on 5/4/2007, in Book --,
Page -- of Official Records, in the office of the County Recorder of Orange County, California together with
the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of
Trust.

Dated:  5-25-11                    By:  **Mortgage Electronic Registration Systems, Inc.,**
**as nominee for B. F. SAUL MORTGAGE**
**COMPANY, its successors and assigns**

Anthony Forsberg   Assistant Secretary

State of  **Colorado**
County of  **Douglas**

On  May 25, 2011   before me,   **Marsha Corah** , personally appeared,
**Anthony Forsberg**   who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Colorado   that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                                        (seal)

Signature
exp 7-8-2014

EXHIBIT "C"

Branch :F7I,User :TZ12                     Comment:                                  Station Id :PF9R

RECORDING REQUESTED BY:

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

15.00

*S R 0 0 0 5 1 4 4 0 3 9 S *

2012000532930 2:41 pm 09/12/12
117 404 N15  3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

**Law Offices of Les Zieve**
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

_120795180_

TS No.: 12-20780                              Loan No.: 1004706217
APN: 423-308-01

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ___$31,434.42___ as of ___9/11/2012___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

ORANGE,CA                             Page 1 of 3                  Printed on 12/19/2013 12:42:15 AM
Document: ND 2012.532930

Branch :F7I,User :TZ12                          Comment:                                    Station Id :PF9R

Loan No.: 1004706217                              TS No. 12-20780

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage
Backed Certificates Series 2007-2
Specialized Loan Servicing, LLC
C/O Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648
Phone: (800)315-4757**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Law Offices Of Les Zieve is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 4/19/2007, executed by GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS, as Trustor, to secure certain obligations in favor of B. F. SAUL MORTGAGE COMPANY, as Lender, Mortgage Electronic Registration Systems, Inc. as Beneficiary, recorded 5/4/2007, as Instrument No. 2007000293050, in Book --, Page --,  of Official Records in the Office of the Recorder of Orange County, California describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes  NOTE(S) FOR THE ORIGINAL sum of $1,350,000.00.  A breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

The monthly installment of principal and interest which became due on 4/1/2012, late charges, and all subsequent monthly installments of principal and interest.
You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.
Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.
Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

ORANGE,CA                              Page 2 of 3                    Printed on 12/19/2013 12:42:16 AM
Document: ND 2012.532930

Branch :F7I,User :TZ12                    Comment:                                    Station Id :PF9R

Loan No.: **1004706217**                    TS No. **12-20780**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

Attempts to contact the borrower have been unsuccessful. No contact was made with the borrower despite the due diligence of beneficiary of their authorized agent's pursuant to California Civil Code §2923.5(g), including (a) mailing a first-class letter was sent to the borrower that included a toll-free contact number for the beneficiary as well as the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. In addition, at least three attempts were made to contact the borrower by telephone, followed-up by a certified letter, return receipt requested.

Dated: 9/11/2012                    Law Offices of Les Zieve, as Agent for the Beneficiary

                                    Sara Simonini, Trustee Sale Officer

EXHIBIT "D"

Branch :F7I,User :TZ12                    Comment:                              Station Id :PF9R

[RECORDING REQUESTED BY]                  Recorded in Official Records, Orange County
Law Offices of Les Zieve                  Renee Ramirez, Assistant Clerk-Recorder

[WHEN RECORDED MAIL TO:]                  | | | | | | | | | | | | | | | | | | | | | 12.00
Law Offices of Les Zieve                  * $ R 0 0 0 5 4 2 7 0 4 0 S *
18377 Beach Blvd., Suite 210              2012000778216 4:19 pm 12/14/12
Huntington Beach, California 92648        117 403 N34   2
                                          0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

                                          [SPACE ABOVE THIS LINE FOR RECORDERS USE ONLY]
T.S. No. 12-20780          APN: 423-308-01            Loan No. 1004706217

### NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/19/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon; fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: GARY R. KOLLER AND CYNTHIA D. KOLLER, HUSBAND AND WIFE AS JOT TENANTS
Duly Appointed Trustee: Law Offices Of Les Zieve   Deed of Trust recorded 5/4/2007 as Instrument No. 2007000293050 in book --, page -- of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:1/8/2013 at 1:30 PM
Place of Sale:    At the North entrance to the County Courthouse 700 Civic Center Drive West, Santa Ana, CA 92701
Estimated amount of unpaid balance and other charges:  **$1,172,345.72**
Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of          **3811 RIVER AVENUE**
real property:                                         **NEWPORT BEACH, CA 92663**
Described as follows:
  As more fully described on said Deed of Trust.

A.P.N #.: 423-308-01
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

Branch :F7I,User :TZ12                    Comment:                              Station Id :PF9R

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 12-20780. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Dated: 12/13/2012        Law Offices of Les Zieve, as Trustee
                         18377 Beach Blvd., Suite 210
                         Huntington Beach, California 92648
                         For Non-Automated Sale Information, call: (714) 848-7920
                         For Sale Information: (714) 848-9272   www.elitepostandpub.com


                         Christine O'Brien, Trustee Sale Officer

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT
PURPOSE

ORANGE,CA                          Page 2 of 2              Printed on 12/19/2013 12:42:18 AM
Document: NT 2012.778216

EXHIBIT "E"



8742 Lucent Boulevard ≭ Suite 300 ≭ Highlands Ranch, CO 80129     ☎ 800-315-4757
    📠 720-241-7218

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

11/21/13

Consumer Litigation Law Center, APC
Attention: September J. Katje, ESQ. and Kimberly A. Moses, ESQ.
100 North Citrus, Suite 408
West Covina, CA 91791

Loan # 1004706217
     GARY R KOLLER
     3811 RIVER AVENUE
     NEWPORT BEACH     CA 92663

Dear September Katje and Kimberly Moses,

This letter is in response to your request for a second independent review of the denial of your client's loan modification dated November 7, 2013 as well as the request to postpone the foreclosure sale pending the second independent review dated November 8, 2013 and received by Specialized Loan Servicing (SLS) on November 8, and November 11, 2013. Additionally SLS received a validation of debt request on November 5, 2013 that was dated October 30, 2013.

The findings of the independent review are as follows:

- [x] The findings of the initial denial letter have been validated using the documentation provided. Therefore, your client's are not eligible for the loan modification for which they applied. Please contact our office so we can determine if you may qualify for another loss mitigation option. Plans may include Home Affordable Foreclosure Alternatives (HAFA) short sale or deed-in-lieu, or an SLS proprietary plan to include repayment plan, short sale, or deed-in-lieu of foreclosure.
  - No evidence of change to income has been received.

- [ ] The reason for the initial denial was not validated. Therefore, we are currently re-reviewing your loan to determine if you qualify for a loan modification. We will notify you if we require additional documents to conduct our review. Once we have re-reviewed your loan for a modification, we will notify you of our final decision.

However, we are currently re-reviewing your client's loan to determine if they qualify for a loan modification. We will notify you if we require additional documents to conduct our review. Once we have re-reviewed their loan for a modification, we will notify them of our final decision.

SLS is the current servicer of your client's mortgage loan, which was transferred to SLS for servicing on March 1, 2010, from Capitol One, N.A. You have asked for certain information pertaining to their loan. In accordance with the Fair Debt Collection Practices Act, we have enclosed the following documentation as validation of debt for your review:

- Copy of the Promissory Note
- Copy of the Deed of Trust/Mortgage
- Welcome Letter



SLS Payment History

8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129                    800-315-4757
                                                                                 720-241-7218

The Note evidences that your client entered into a contractual obligation of debt regarding the loan referenced above.

In your correspondence, you also requested information concerning the original and current creditor of your Loan. That information is as follows:

Original Creditor:
B.F. Saul Mortgage Company
7501 Wisconsin Avenue
Bethesda, MD 20814

Current Creditor:
U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2
c/o Specialized Loan Servicing, LLC
8742 Lucent Boulevard, Suite 300
Highlands Ranch, CO 80126
Phone: 1-800-315-4757

As we are the service of the loan on behalf of the current creditor, correspondence regarding this loan will be handled by SLS.

Please refer to the Welcome Letter enclosed for transfer of assignments information. In addition, you are able to access the Mortgage Electronic Registration Systems, Inc. (MERS) by going to their website. MERS serves as the mortgagee in the land records for loans registered on the MERS System, and is a nominee (or agent) for the owner of the promissory note. The MERS System is a national electronic database that tracks changes in mortgage servicing and beneficial ownership interests in residential mortgage loans. Please refer to the Deed of Trust/Mortgage for the Mortgage Identification Number (MIN).

At this time, the mortgage loan is delinquent and paid through March 1, 2012 and due for the April 1, 2012 monthly mortgage payment in the amount of $4,382.41. The unpaid principal balance is $1,350,000. The escrow account is currently negative $14,923.93. There are $0.00 funds in a suspense/unapplied account. Currently, there are $3,637.16 unpaid fees assessed on the account. Enclosed is the breakdown of the fees.

Our records indicate the loan is currently active in foreclosure with a current sale date of December 12, 2013.

In responding to Qualified Written Requests, SLS adheres to the requirements of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605), which provides that a servicer has five (5) business days to acknowledge the receipt of a Qualified Written Request and thirty (30) business days to respond to a Qualified Written Request.

All requests for any agreements other than those to which the borrower is a party are beyond the scope of a Qualified Written Request and accordingly are not being provided.

You have been assigned a Relationship Manager, Danette Teller ID# 11048, as your clients single point of contact. If Danette is not available, any associate will be able to assist them.



8742 Lucent Boulevard ★ Suite 300 ★ Highlands Ranch, CO 80129          ☎ 800-315-4757
                                                                        📠 720-241-7218

If you have any questions or need assistance please contact our Customer Resolution Department at 1.800-306-6059, Monday-Friday 6 a.m. – 7 p.m. and Saturday 6 a.m. – 12 p.m. (MST).

Sincerely,

Specialized Loan Servicing LLC
Customer Resolution Support Department

Enclosure(s)

**BANKRUPTCY NOTICE-** IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN.  THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE.  HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY.  IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR CUSTOMER CARE CENTER AT 800-306-6057.

Setting the Standard

EXHIBIT "F"



8742 Lucent Boulevard ▫ Suite 300 ▫ Highlands Ranch, CO 80129

☒ 800-315-4757
🖷 720-241-7218

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

12/19/13

Consumer Litigation Law Center, APC
Attn: Kimbery A. Moses, Esq.
100 North Citron
Suite 408
West Covina, CA 91791

Loan #  1004706217
        Gary R. Koller
        3811 River Avenue
        Newport Beach, CA 92663

Dear Kimberly A. Moses ,

This letter is in response to your request for a second independent review of the denial of your loan modification.

The findings of the independent review are as follows:

| x | The findings of the initial denial letter have been validated using the documentation provided.  Therefore, you are not eligible for the loan modification for which you applied.   Please contact our office so we can determine if you may qualify for another loss mitigation option.  Plans may include Home Affordable Foreclosure Alternatives (HAFA) short sale or deed-in-lieu, or an SLS proprietary plan to include repayment plan, short sale, or deed-in-lieu of foreclosure. |

- Initial denial for modification was determined due to being unable to create an affordable payment equal to the allowable percentage of your reported monthly gross income without changing the terms of your loan beyond the allowable parameters of the program.

- Initial denial was also determined due to your loan's being insured by a private mortgage insurance company that does not approve the type of deal or terms of the offer submitted. New profit-and-loss information was considered; however, after capitalizing the past due balance and accounting for the amount previously deferred, the unpaid balance is increased by too much since the acct has mortgage insurance.

| | The reason for the initial denial was not validated. Therefore, we are currently re-reviewing your loan to determine if you qualify for a loan modification.  We will notify you if we require additional documents to conduct our review. Once we have re-reviewed your loan for a modification, we will notify you of our final decision. |

 **SLS**

You have been assigned a relationship manager/Single Point of Contact (SPOC) for this account. If Justin (Teller 10367) is unavailable, any of our agents will be able to assist you. If you have any questions or need assistance please contact our Customer Resolution Department at 1.800-306-6059, Monday-Friday 6 a.m. – 7 p.m. and Saturday 6 a.m. – 12 p.m. (MST).

Sincerely,

Specialized Loan Servicing LLC
Customer Resolution Support Department

BANKRUPTCY NOTICE- IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR CUSTOMER CARE CENTER AT 800-306-6057.

# EXHIBIT "G"

6.71  1004706217  11/08/13



THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

11/08/13

GARY R KOLLER
3811 RIVER AVENUE
NEWPORT BEACH      CA 92663

RE:      Property Address:  3811 RIVER AVENUE
                           NEWPORT BEACH        CA 92663
         Loan Number:      1004706217

Dear GARY R KOLLER

Per your request, the following amount is needed to reinstate the above referenced mortgage loan:

| | |
|---|---|
| Payments Due Through 11/01/13 | $87941.58 |
| Late Charges: | $6355.98 |
| Fees: | $40.00 |
| Property Inspections: | $ 272.40 |
| Legal Fees: | $193.40 |
| Unpaid Escrow Shortage: | $0.00 |
| Corporate Advances: | $ 3324.76 |
| BPO: | $ 0.00 |
| Suspense 1: | $ (.00) |
| Suspense 2: | $ (.00) |
| **TOTAL REINSTATEMENT** | **$ 98128.12** |

**CERTIFIED FUNDS REQUIRED**

While payment to reinstate the loan will bring your monthly payments contractually current, a shortage in
your escrow account may still exist. The next analysis of your escrow account is scheduled for 07/01/14
and your monthly payment may increase to collect any shortage that exists.

The above figures are good through **11/12/13** except for advances on items such as taxes, insurance, or
property inspections that may take place after the date of this letter, and during the time funds are in
transit to this office.  Because interest accruals, late charges, and other expenses may be incurred, the
amount required to bring the account current on the date of actual delivery of your payment to Specialized
Loan Servicing LLC ("SLS") may be greater than the amount provided above.  Prior to remitting funds,
please contact us at 1-800-306-6059 from 6:00 a.m. until 9:00 p.m. MT Monday through Friday to request
verification of the above amount.

**Please see important disclosures on the following page**

6.71  1004706217  11/08/13

 SLS

You have the right to cure or reinstate the account after any acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration. Additionally, your request for reinstatement figures does not stop any pending foreclosure action from proceeding or adverse credit reporting from occurring.

This letter is not intended to act as a payoff statement or demand for you to pay the account in full.  If you wish to obtain a payoff statement, please call us at 1-800-315-4757 from 6:00 a.m. until 6:00 p.m.  MT Monday through Friday or fax your request to 1-720-241-7218.

Sincerely,

Customer Resolution
Specialized Loan Servicing LLC

**BANKRUPTCY NOTICE** - If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan.  This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.  However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.  If you have questions, please contact us at 1-800-306-6057.

EXHIBIT "2"

Civil Case Access - Print Case Information                                    Page 1 of 2

Case Summary:

| Case Id: | 30-2013-00686182-CU-CO-CJC |
|---|---|
| Case Title: | GARY KOLLER VS. SPECIALIZED LOAN SERVICING, LLC |
| Case Type: | CONTRACT - OTHER |
| Filing Date: | 11/07/2013 |
| Category: | CIVIL - UNLIMITED |

Register Of Actions:

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 1 | E-FILING TRANSACTION 380628 RECEIVED ON 11/07/2013 04:43:03 PM. | 11/08/2013 | | NV | |
| 2 | COMPLAINT FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 11/07/2013 | 11/07/2013 | | 81 pages | ☐ |
| 3 | CIVIL CASE COVER SHEET FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 11/07/2013 | 11/07/2013 | | 2 pages | ☐ |
| 4 | SUMMONS ISSUED AND FILED FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 11/07/2013 | 11/07/2013 | | 2 pages | ☐ |
| 5 | PAYMENT RECEIVED BY FOR 194 - COMPLAINT OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 11493733 AND RECEIPT NUMBER 11317645. | 11/08/2013 | | 1 pages | ☐ |
| 6 | CASE ASSIGNED TO JUDICIAL OFFICER MONROE, WILLIAM ON 11/07/2013. | 11/07/2013 | | 1 pages | ☐ |
| 7 | CASE REASSIGNED TO WILLIAM CLASTER EFFECTIVE 01/06/2014. | 12/16/2013 | | 2 pages | ☐ |
| 8 | E-FILING TRANSACTION 2297131 RECEIVED ON 12/18/2013 01:37:36 PM. | 12/18/2013 | | NV | |
| 9 | EX PARTE APPLICATION - OTHER FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 12/18/2013 | 12/18/2013 | | 2 pages | ☐ |
| 10 | PROPOSED ORDER RECEIVED ON 12/18/2013. | 12/18/2013 | | 3 pages | ☐ |
| 11 | MEMORANDUM OF POINTS AND AUTHORITIES FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 12/18/2013 | 12/18/2013 | | 8 pages | ☐ |
| 12 | DECLARATION IN SUPPORT (OF LAURA DASSORI) FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 12/18/2013 | 12/18/2013 | | 4 pages | ☐ |
| 13 | DECLARATION IN SUPPORT (OF GARY KOLLER) FILED BY KOLLER, GARY; KOLLER, CYNTHIA ON 12/18/2013 | 12/18/2013 | | 3 pages | ☐ |
| 14 | PAYMENT RECEIVED BY FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING IN THE AMOUNT OF 60.00, TRANSACTION NUMBER 11514108 AND RECEIPT NUMBER 11337916. | 12/18/2013 | | 1 pages | ☐ |
| 15 | EX PARTE SCHEDULED FOR 12/19/2013 AT 08:30:00 AM IN C16 AT CENTRAL JUSTICE CENTER. | 12/18/2013 | | NV | |
| 16 | MINUTES FINALIZED FOR EX PARTE 12/19/2013 | 12/20/2013 | | 1 pages | ☐ |

Civil Case Access - Print Case Information                                      Page 2 of 2

| | | | | | | |
|---|---|---|---|---|---|---|
| | 08:30:00 AM. | | | | | |
| 17 | E-FILING TRANSACTION 4124767 RECEIVED ON 12/23/2013 09:05:04 AM. | 12/24/2013 | | *NV* | | |
| 18 | DECLARATION - OTHER (OF NON-MONETARY STATUS) FILED BY LAW OFFICES OF LES ZIEVE ON 12/23/2013 | 12/23/2013 | | 4 pages | | |

Participants:

| Name | Type | Assoc | Start Date | End Date |
|---|---|---|---|---|
| CONSUMER LITIGATION LAW CENTER, APC | ATTORNEY | | 11/08/2013 | |
| U.S. BANK NATIONAL ASSOCIATION AS TRUS | DEFENDANT | | 11/08/2013 | |
| CYNTHIA KOLLER | PLAINTIFF | | 11/08/2013 | |
| LAW OFFICES OF LES ZIEVE | DEFENDANT | | 11/08/2013 | |
| SPECIALIZED LOAN SERVICING, LLC | DEFENDANT | | 11/08/2013 | |
| GARY KOLLER | PLAINTIFF | | 11/08/2013 | |
| B.F. SAUL MORTGAGE CCOMPANY | DEFENDANT | | 11/08/2013 | |

Hearings:

| Description | Date | Time | Department | Judge |
|---|---|---|---|---|

Print this page

EXHIBIT "3"

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**12/23/2013** at 09:05:00 AM

Clerk of the Superior Court
By Diana A Norman, Deputy Clerk

1   LAW OFFICES OF LES ZIEVE
2   Timothy M. Ryan, Bar No. 178059
    Stephen D. Britt, Bar No. 279793
3   30 Corporate Park, Suite 450
    Irvine, California 92606
4   Telephone (714) 848-7920
    Fax (714) 848-7650
5

6   Attorneys for Defendant Law Offices of Les Zieve

7

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
            FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER
10

11

12  GARY KOLLER, an individual, and      )   CASE NO.:   30-2013-00686182-CU-CO-CJC
    CYNTHIA KOLLER, an individual,        )
13                                        )   Unlimited Jurisdiction
                Plaintiffs,               )   Date Action Filed:   November 7, 2013
14                                        )
    vs.                                   )   Assigned for All Purposes to
15                                        )   Hon. William M. Monroe
                                          )   Dept. C16
16  SPECIALIZED LOAN SERVICING,           )
    LLC, a Delaware Limited Liability     )   **DEFENDANT LAW OFFICES OF LES**
17  Company; B.F. SAUL MORTGAGE           )   **ZIEVE'S DECLARATION OF NON-**
    COMPANY, a Maryland Limited           )   **MONETARY STATUS**
18  Liability Company; U.S. BANK          )
    NATIONAL ASSOCIATION AS               )   **[ Civil Code §2924I ]**
19  TRUSTEE RELATING TO CHEVY             )
    CHASE FUNDING LLC                     )   Trial Date: None Set
20  MORTGAGE BACKED                       )
    CERTIFICATES SERIES 2007-2;           )
21  LAW OFFICES OF LES ZIEVE; and         )
    all persons or entities unknown       )
22  claiming any legal or equitable right,)
    title, estate, lien or interest in the)
23  property described in this complaint  )
    adverse to plaintiff's title thereto, and )
24  DOES 1 through 25, inclusive,         )
                                          )
25                                        )
                Defendants.               )
26                                        )
                                          )
27                                        )
                                          )
28  _____       )

                                          1

                          Declaration of Non-Monetary Status

1      I, TIMOTHY M. RYAN hereby declare:

2      1.     I am an attorney with the Law Offices of Les Zieve, and am the attorney of

3 record for defendant Law Offices of Les Zieve ("LOLZ"). I am a custodian of records

4 for LOLZ. LOLZ is a defendant in this action, apparently having been sued in its capacity

5 as non-judicial foreclosure trustee. I am competent to testify of my own personal

6 knowledge, to the best of my recollection, as to the matters set forth in this Declaration.

7      2. LOLZ is the trustee by substitution of the deed of trust executed by plaintiffs

8 Gary R. Koller and Cynthia D. Koller ("Plaintiffs"), as trustor, in favor of B.F. Saul

9 Mortgage Company, as Lender, Mortgage Electronic Registration Systems, Inc. as

10 nominee for Lender and Lender's successors and assigns.

11      3. It is my belief that LOLZ has been named as a defendant in this case solely in

12 LOLZ's capacity as trustee under the deed of trust which is the subject of Plaintiffs'

13 action. For example, Plaintiffs allege that on September 22, 2012, a Substitution of

14 Trustee was recorded, substituting "Zieve" for the prior trustee, Chevy Chase Bank, F.S.

15 B. *See*, Complaint, ¶ 6. Plaintiff in turn asserts causes of action with respect to alleged

16 acts undertaken by LOLZ in the performance of its duties as trustee under the subject

17 deed of trust. *See*, Complaint, generally.

18      4. I am not aware of any acts or omissions on the part of LOLZ or any of LOLZ's

19 officers, employees or agents in the performance of its duties as trustee that would cause

20 LOLZ to be a defendant in this action. The only acts undertaken by LOLZ in connection

21 with the deed of trust, which is the subject of this action, is the filing and recording of

22 documents in accordance with California Civil Code Section 2924, et. seq. LOLZ simply

23 performed ministerial duties as trustee pursuant to the deed of trust and the relevant

24 portions of the California Civil Code. LOLZ performed these acts at the behest of the

25 beneficiary of the deed of trust. LOLZ has no monetary interest in this matter.

26 ///

27 ///

28 ///

2

---

Declaration of Non-Monetary Status

1        6.  LOLZ agrees to be bound by whatever order or judgment is issued by the court

2    regarding the subject deed of trust.

3

4        Executed this 20th day of December, 2013, at Irvine, California

5

6    _____

7                TIMOTHY M. RYAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Declaration of Non-Monetary Status

1

**PROOF OF SERVICE**

2

  I am over the age of eighteen years and not a party to the within action.  I am

3
employed by Law Offices of Les Zieve, whose business address is: 30 Corporate Park, Suite 450, Irvine, CA 92606

4

  On December 20, 2013 I served the within document(s) described as:

5
**DEFENDANT LAW OFFICES OF LES ZIEVE'S DECLARATION OF NON-MONETARY STATUS** on the interested parties in this action:

6

7
☐  by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

8

9
☒  by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

10

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| September J. Katje Consumer Litigation Law Center, APC 100 North Citrus Ave., Suite 408 West Covina, CA 91791 | Tel:  (800) 787-5616 Fax: (888) 909-7947 | Attorney for Plaintiffs Gary Koller and Cynthia Koller |

11

12

13

14

15
☒  **BY MAIL** (Code Civ. Proc. § 1013(a))—I deposited such envelope(s) for

16
processing in the mailroom in our offices.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited

17
with the U.S. Postal Service on that same day with postage thereon fully prepaid at Huntington Beach, California, in the ordinary course of business.  I am aware that

18
on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in

19
affidavit.

20

21
☒  (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

  Executed on December 20, 2013, at Huntington Beach, California.

23

24

25
MICHELE POLLOCK - DECLARANT

26

27

28

EXHIBIT "4"

Entity Detail

//

Entity Name: B. F. SAUL MORTGAGE COMPANY
Dept ID #: D01802974

General Information    Amendments    Personal Property    Certificate of Status

| | |
|---|---|
| **Principal Office (Current):** | 7501 WISCONSIN AVENUE<br>BETHESDA, MD 20814 |
| **Resident Agent (Current):** | CSC-LAWYERS INCORPORATING SERVICE COMPA<br>7 ST. PAUL STREET, SUITE 1660<br>BALTIMORE, MD 21202 |
| **Status:** | **INCORPORATED** |
| Good Standing: | Does Not Apply    What does it mean when a business is not in good standing or forfeited? |
| Business Code: | Financial Institution |
| **Date of Formation or Registration:** | 10/24/1984 |
| **State of Formation:** | MD |
| **Stock/Nonstock:** | Stock |
| **Close/Not Close:** | Unknown |

**Link Definition**

| | |
|---|---|
| General Information | General information about this entity |
| Amendments | Original and subsequent documents filed |
| Personal Property | Personal Property Return Filing Information and Property Assessments |
| Certificate of Status | Get a Certificate of Good Standing for this entity |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| GARY KOLLER, an individual, and CYNTHIA KOLLER, an individual | SPECIALIZED LOAN SERVICING, LLC, a Delaware Limited Liability Company; B.F. SAUL MORTGAGE COMPANY, a Maryland Limited Liability Company; U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2; LAW OFFICES OF LES ZIEVE |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br>September J. Katje, Esq. (227896)<br>CONSUMER LITIGATION LAW CENTER, APC<br>100 North Citrus Ave., Suite 408<br>West Covina, CA 91791, (800) 787-5616 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br>T. Robert Finlay, Esq. (167580); Nicole S. Dunn, Esq. (213550)<br>WRIGHT, FINLAY & ZAK, LLP<br>4665 MacArthur Court, Suite 280, Newport Beach, CA 92660<br>Tel: 949) 477-5050; Fax: (949) 608-9142 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES-**For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☒ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: ~~SACV14-00031 JVS (JPRx)~~

| CV-71 (09/13) | CIVIL COVER SHEET | Page 1 of 3 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [x] Yes   [ ] No | [ ] Los Angeles | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [x] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes   [x] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [x] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [x] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [x] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [x] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [x] | [ ] | [ ] | [ ] |

| C.1.  Is either of the following true?  If so, check the one that applies: | C.2.  Is either of the following true?  If so, check the one that applies: |
|---|---|
| [x] 2 or more answers in Column C | [ ] 2 or more answers in Column C |
| [ ] only 1 answer in Column C and no answers in Column D | [ ] only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION.<br>Enter "Southern" in response to Question D, below.<br>If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the EASTERN DIVISION.<br>Enter "Eastern" in response to Question D, below.<br>If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   _____   DATE:   1 | 8 | 14

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ James V. Selna _____ and the assigned Magistrate Judge is _____ Jean P. Rosenbluth _____ .

The case number on all documents filed with the Court should read as follows:

## SACV14-00031 JVS (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

January 8, 2014                     By   Lori Wagers
_____                          _____
Date                                     Deputy Clerk

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)          NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES